Case No. 21-56292

In the United States Court of Appeals
for the Ninth Circuit

MIRANDA WALLINGFORD, et al.,
*Plaintiffs-Appellants,*

v.

ROBERT BONTA, et al.,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Central District of California
(CV 8:21-01412 DOC (KESx))

**APPELLANTS' OPENING BRIEF**

C. D. Michel
Sean A. Brady
Anna M. Barvir
Alexander A. Frank
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Facsimile: (562) 216-4445
Email: abarvir@michellawyers.com

*Counsel for Plaintiffs-Appellants*

January 28, 2022

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs-Appellants request oral argument. This case provides an opportunity for the Court to analyze an often misapplied and widely misunderstood procedural and jurisdictional doctrine in an important fundamental rights context. Counsel's responses to inquiries from the Court may aid the Court in its decisional process. *See* Fed. R. App. P. 34(a)(1).

# TABLE OF CONTENTS

**Page**

Statement Regarding Oral Argument ........................................................................ i

Table of Contents ...................................................................................................... ii

Table of Authorities ................................................................................................. iv

Jurisdictional Statement ........................................................................................... 1

Statement Regarding Addendum ............................................................................. 1

Statement of the Issues Presented .......................................................................... 2

Statement of the Case .............................................................................................. 2

I.      Factual Background ........................................................................................ 2

        A.      California's Statutory Scheme ........................................................... 2

        B.      History of the Dispute ....................................................................... 3

II.     Procedural History and the Ruling on Review ............................................ 8

Summary of Argument ............................................................................................. 9

Standard of Review ................................................................................................. 10

Argument ................................................................................................................. 10

I.      The District Court Erred When It Dismissed the Wallingfords' Complaint
        Under the *Rooker-Feldman* Doctrine ............................................................ 10

        A.      The *Rooker-Feldman* Doctrine ......................................................... 10

        B.      The Wallingfords' Federal Action Is Not a De Facto Appeal of the State
                Court's Restraining Orders Against Them ...................................... 12

        C.      The "Inextricably Intertwined Test" Is Unworkable Here ........... 17

        D.      The District Court Should Have Granted Leave to Amend ......... 20

II.   The *Younger* Factors Do Not Support Abstention ...................................................21

    A.   There Is No Ongoing State Judicial Proceeding.........................................23

    B.   This Case Does Not Implicate Any Important State Interest .................24

    C.   The Wallingfords Had No Meaningful Opportunity to Litigate Their Second Amendment Claim in the State Court Proceeding......................26

    D.   This Case Does Not Implicate a Criminal Enforcement Action or the State's Interest in Enforcing the Orders and Judgments of Its Courts...27

    E.   The Court Should Not Abstain from This Case Under *Younger* Because the Wallingfords Will Continue to Suffer Great Irreparable Harm.........29

Conclusion.................................................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AmerisourceBergen Corp. v. Roden*,
 495 F.3d 1143 (9th Cir. 2007) ........................................................23

*Bell v. City of Boise*,
 709 F.3d 890 (9th Cir. 2013) .........................................................11

*Bookout v. Nielsen*,
 155 Cal. App. 4th 1131 (2007) ......................................................27

*Busick v. Workmen's Comp. Appeals. Bd.*,
 7 Cal. 3d 967 (1972) ......................................................................20

*Catlin v. United States*,
 324 U.S. 229 (1945) .........................................................................1

*Cervantes v. United States*,
 330 F.3d 1186 (9th Cir. 2003) .......................................................10

*Citizens for Free Speech, LLC v. Cnty. of Alameda*,
 953 F.3d 655 (9th Cir. 2014) .........................................................22

*Cook v. Harding*,
 879 F.3d 1035 (9th Cir. 2018) ..................................................28, 29

*Cook, Perkiss & Liehe, Inc. v. N. Cal. Coll. Serv. Inc.*,
 911 F.2d 242 (9th Cir. 1990) .........................................................10

*Cooper v. Ramos*,
 704 F.3d 772 (9th Cir. 2012) .........................................................11

*D.C. Ct. of Appeals v. Feldman*,
 460 U.S. 462 (1983) .................................................. 10, 14, 18, 21

*District of Columbia v. Heller*,
 554 U.S. 570 (2008) .......................................................................25

iv

*Doe v. Mann,*
　45 F.3d 1038 (9th Cir. 2005) ................................................................ 11, 18

*Dubinka v. Judges of the Super. Ct.,*
　23 F.3d 218 (9th Cir. 1994) ........................................................................ 11

*Duncan v. Becerra,*
　742 F. App'x 218 (9th Cir. 2018) ............................................................... 30

*Edenfield v. Fane,*
　507 U.S. 761 (1993) .................................................................................... 26

*Elrod v. Burns,*
　427 U.S. 347 (1976) .................................................................................... 30

*Fontana Empire Ctr., LLC v. City of Fontana,*
　307 F.3d 987 (9th Cir. 2002) ...................................................................... 17

*Forman v. Davis,*
　371 U.S. 178 (1962) .................................................................................... 20

*Frigard v. United States,*
　862 F.2d 201 (9th Cir. 1988) ...................................................................... 20

*GASH Associates v. Village of Rosemont,*
　995 F.2d 726 (7th Cir. 1993) ...................................................................... 12

*Gilbertson v. Albright,*
　381 F.3d 965 (9th Cir. 2004) ...................................................................... 22

*Hirsh v. Justices of the Sup. Ct.,*
　67 F.3d 708 (9th Cir. 1995) ........................................................................ 22

*Hishon v. King & Spalding,*
　467 U.S. 69 (1984) ...................................................................................... 10

*Kougasian v. TMSL, Inc.,*
　359 F.3d 1136 (9th Cir. 2004) ............................................................... 17, 19

*Kugler v. Helfant,*
　421 U.S. 117 (1975) .................................................................................... 29

*Liggins v. People*,
    No. ED 09-cv-00339, 2009 U.S. Dist. LEXIS 98448 (C.D. Cal. Feb.
    24, 2009) ....................................................................................................22

*Maldonado v. Harris*,
    370 F.3d 945 (2004) ...........................................................................*passim*

*McDonald v. City of Chicago*,
    561 U.S. 742 (2010) ................................................................................30

*Melendres v. Arpaio*,
    695 F.3d 990 (9th Cir. 2012) ................................................................30

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*,
    457 U.S. 423 (1982) ................................................................................28

*Monterey Mech. Co. v. Wilson*,
    125 F.3d 702 (9th Cir. 1997) ................................................................30

*Noel v. Hall*,
    341 F.3d 1148 (9th Cir. 2003) ...........................................................*passim*

*Pennzoil v. Texaco, Inc.*,
    481 U.S. 1 (1987) ....................................................................................17

*ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*,
    754 F.3d 754 (9th Cir. 2014) ......................................................... 22, 26

*Robinson v. Ariyoshi*,
    753 F.2d 1468 (9th Cir. 1985) ....................................................... 18, 19

*Rooker v. Fidelity Tr. Co.*,
    263 U.S. 413 (1923) ................................................................................10

*Rynearson v. Ferguson*,
    903 F.3d 920 (9th Cir. 2018) ......................................................... 28, 29

*Sharkey v. O'Neal*,
    778 F.3d 767 (9th Cir. 2015) ................................................................20

*Sprint Commcns., Inc. v. Jacobs*,
    571 U.S. 69 (2013) ......................................................................... 22, 28

*United States v. Chovan,*
    735 F.3d 1127 (9th Cir. 2013) .......................................................26

*United States v. Holler,*
    411 F.3d 1061 (9th Cir. 2005) .......................................................10

*Worldwide Church of God v. McNair,*
    805 F.2d 888 (9th Cir. 1986) .........................................................11

*Younger v. Harris,*
    401 U.S. 37 (1971) ...................................................................*passim*

**Statutes**

28 U.S.C. § 1291 .................................................................................1

28 U.S.C. § 1331 .................................................................................1

28 U.S.C. § 1343 .................................................................................1

28 U.S.C. § 1738 ...............................................................................20

42 U.S.C. § 1983 .................................................................................1

Cal. Code Civ. Proc., § 527.6 ...................................................*passim*

Cal. Code Civ. Proc., § 527.9 .......................................................3, 9, 30

Cal. Pen. Code, § 653m .......................................................................2

Cal. Pen. Code, § 27500.................................................................. 3, 16

Cal. Pen. Code, § 27540.................................................................. 3, 16

Cal. Pen. Code, § 29825.................................................................. 3, 16

Cal. Pen. Code, § 29830........................................................................3

Cal. Pen. Code, § 30305.................................................................. 3, 16

Cal. Pen. Code, § 30306.................................................................. 3, 16

Cal. Pen. Code, § 30370.................................................................. 3, 16

**Other Authorities**

11A Charles Alan Wright, Federal Practice & Procedures § 2948.1 ...............................30

Ninth Cir. R. 3-1 ..........................................................................................................1

Ninth Cir. R. 3-2 ..........................................................................................................1

Fed. R. App. P. 3 ..........................................................................................................1

Fed. R. App. P. 4 ..........................................................................................................1

Fed. R. Civ. P. 12......................................................................................................1, 8

Fed. R. Civ. P. 15........................................................................................................20

U.S. Const., amend. I .............................................................................................14, 30

U.S. Const., amend. II ........................................................................8, 18, 25, 26, 30

U.S. Const., amend. XIV.......................................................................................8, 18

## JURISDICTIONAL STATEMENT

Because this suit arises under the Constitution and laws of the United States, the district court had original jurisdiction under 28 U.S.C. § 1331. 4-ER-670. Because this is a 42 U.S.C. § 1983 action, brought to redress the deprivation of constitutional rights under color of law, the district court also had jurisdiction under 28 U.S.C. § 1343(a)(3). *Id.*

This Court has jurisdiction over this appeal under 28 U.S.C. § 1291 because the order on review is an appealable final decision. *See Catlin v. United States*, 324 U.S. 229, 233 (1945). On October 28, 2021, the district court granted the State's motion to dismiss Miranda and Richard Wallingfords' complaint under Federal Rule of Civil Procedure 12(b)(1). Two ambiguities arose, however. First, when the district court granted and dismissed the Wallingfords' complaint with prejudice, the Wallingfords' motion for preliminary injunction was pending. Second, the district court did not make an express docket entry for final judgment. So, to avoid missing any applicable appeal deadline, the Wallingfords filed a notice of appeal on November 29, 2021, under Federal Rules of Appellate Procedure 3 and 4 and Ninth Circuit Rules 3-1–3-2. 4-ER-682-84.

## STATEMENT REGARDING ADDENDUM

An addendum reproducing relevant constitutional and statutory provisions is bound with this brief.

## STATEMENT OF THE ISSUES PRESENTED

1.     Did the district court err when it dismissed the Wallingfords' complaint for lack of subject matter jurisdiction under *Rooker-Feldman*?

2.     Did the district court err in dismissing the Wallingfords' complaint with prejudice, and thus incorrectly deny them leave to amend their complaint to state other plausible causes of action?

## STATEMENT OF THE CASE

## I.   FACTUAL BACKGROUND

### A.     California's Statutory Scheme

California law allows any person who alleges to have suffered "harassment" to petition the state court for an order prohibiting the persons allegedly causing the "harassment" from continuing to do so. Cal. Civ. Proc. Code § 527.6(a), (g), (i). "If the judge finds by clear and convincing evidence that unlawful harassment exists, an order shall issue prohibiting the harassment." *Id.* § 527.6(i). This includes any

> order enjoining a party from harassing, intimidating, molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, abusing, telephoning, including, but not limited to, making annoying telephone calls, as described in Section 653m of the Penal Code, destroying personal property, contacting, either directly or indirectly, by mail or otherwise, or coming within a specified distance of, or disturbing the peace of, the petitioner.

*Id.* § 527.6(b)(6)(A). In this context, "harassment" is defined as:

> unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner.

*Id.* § 527.6(b)(3). In short, for a restraining order based on "harassment" under section 527.6 to issue, there need not be any finding that the person subject to that order has engaged in any act of violence or even made a threat of such against the restraining order applicant (or anyone else). They need only have "annoyed" the applicant, reasonably causing her emotional distress. *Id.*

California bars any person subject to an order issued under section 527.6 from acquiring, owning, or possessing a firearm or ammunition. Cal. Penal Code §§ 29825, 30305. Courts must thus order persons subject to such orders to relinquish any firearms they own or possess, either by surrendering the firearm to the control of local law enforcement officials, by selling the firearm to a licensed gun dealer, or giving it to such a dealer for storage. Cal. Civ. Proc. Code § 527.9(b),(c); Cal. Penal Code § 29830(a),(b). California also generally prohibits the sale, delivery, transfer, or giving possession or control of any firearm or ammunition to a person subject to such an order. Cal. Penal Code §§ 27500, 27540, 29825, 30305-30306, 30370.[1]

## B. History of the Dispute

Appellants Miranda and Richard Wallingford have lived at the same residence in Huntington Beach, California, for over 50 years. 4-ER-651, 659, 667, 673. In 2013, a new neighbor, Jessica Nguyen, moved in next-door. 4-ER-651, 659, 667, 673. Nguyen soon began complaining about the Wallingfords' more-than-30-year-old Melaleuca tree. 4-ER-651, 659, 673. At first, the Wallingfords tried to appease their

---

[1] For ease of reference, Code of Civil Procedure sections 527.6(u) and 527.9, as well as Penal Code sections 27500, 27540, 29825, 30305-30306, and 30370 will be referred to, collectively, as "the Challenged Statutes").

new neighbor by regularly trimming the tree. 2-ER-73-74; 4-ER-651, 659-60. These efforts proved futile. Nguyen ultimately the tree's removal. 4-ER-651, 660, 673. Having lived on their property for decades without issue and having designed their front lawn's landscaping around the Melaleuca tree, the Wallingfords refused. 4-ER 651, 673. Apparently angered by their refusal, Nguyen soon launched two unsuccessful civil actions against the Wallingfords and a petition for a restraining order against Mr. Wallingford, falsely alleging that he assaulted her. 2-ER-73-74; 4-ER-651-52, 660, 673-74; *see also* 2-ER-75-84 (declaration of private investigator finding no corroboration of Nguyen's claim that Mr. Wallingford assaulted her, instead finding that she herself had a history of, among other things, alleged domestic violence, criminal threats against a neighbor, and perjuring herself in court filings).

Ms. Wallingford then had security cameras installed on their property in the case Nguyen made false allegations of violence by the Wallingfords in the future, as well as to record Nguyen's aggressive behavior toward them. 2-ER-74; 4-ER-652, 660, 674. Before the hearing on Nguyen's restraining order petition against Mr. Wallingford, the security cameras captured images of Nguyen making rude gestures, damaging their property, and making verbal threats. 2-ER-86-92 (selected images from security footage captured between July 19, 2018, and August 14, 2018); 4-ER-652, 660, 674.

The Orange County court heard Nguyen's petition against Mr. Wallingford on August 17, 2018. 2-ER-95; 4-ER-674. The court ultimately held there was no "clear and convincing" evidence that Mr. Wallingford had harassed—let alone assaulted— Ms. Nguyen. 2-ER-162-63; 4-ER-660-61, 674. Thus, the court denied the petition. 2-

ER-162-63; 4-ER-660-61, 674. With Nguyen's petition for a restraining order dismissed, and the temporary order dissolved, Mr. Wallingford was no longer prohibited from acquiring, owning, or possessing firearms under the Challenged Statutes. Unfortunately, Nguyen's abusive behavior toward the Wallingfords was far from over.

In January 2019, the Wallingfords' front-door security camera recorded Nguyen yelling from her yard, "old [expletive] white trash, next time you'll be dead. I'll be lucky this time, white trash. I [sic] going [sic] be lucky. You'll be dead, [expletive] white trash." 4-ER-652, 661. Throughout May 2019, the Wallingfords' cameras recorded images of Nguyen pouring bleach on their Melaleuca tree and other nearby plants, damaging their property, and making rude gestures. 2-ER-182-83; 4-ER-652-53, 661-62, 674-75. Several weeks later, a caregiver witnessed Nguyen shouting "pig, one shot, one shot, that's all I need, one shot." 2-ER-182; 4-ER-653, 661, 674. That incident, too, was captured by the Wallingfords' security cameras. 2-ER-182; 4-ER-653, 661, 674. On at least three separate occasions, Nguyen made throat slitting gestures while looking directly at the Wallingfords' cameras. 2-ER-183; 4-ER-653, 661, 675. Alarmed by the resurgence of Nguyen's bizarre and increasingly threatening behavior toward them, Ms. Wallingford filed a restraining order petition against Nguyen in state court, seeking protection for her and her husband. 2-ER-176-183; 4-ER-653, 662, 674. The court issued a temporary restraining order pending a formal hearing. 4-ER-653, 662, 674.

However, on September 5, 2019, before the hearing on Ms. Wallingford's petition, Nguyen filed two new restraining order petitions against the Wallingfords. 2-

ER-22-63; 4-ER-653, 662, 675. In support of one petition, Nguyen alleged that the Wallingfords' security cameras constituted "harassment" because they intruded into her privacy. 2-ER-23-24; 4-ER-653-54, 662, 675. In support of the second petition against Mr. Wallingford, Nguyen recycled the same false assault allegation she made in her August 2018 petition. 2-ER-23-24; 4-ER-653, 662, 675. The court, however, granted a temporary restraining order against Mr. Wallingford until a hearing could be held. 2-ER-52-63; 4-ER-662, 675. Under California law, Mr. Wallingford had to—and did—immediately transfer his firearms to a licensed firearms dealer for storage and notified the court. 4-ER-662, 675.

At the hearing on whether to dissolve the temporary restraining order against him, the state court recognized that it mistakenly construed Nguyen's assault allegation as a new and distinct allegation from that which it had rejected in August 2018. 4-ER-662, 675. The court added that had it realized that was the case, it would not have issued the temporary restraining order against Mr. Wallingford. 4-ER-662, 675. Even so, the court did not dissolve the temporary order while the case proceeded. 4-ER-662, 675.

Another hearing was held in October 2019. 4-ER-437, 654, 662-63, 662-63. At that hearing, Ms. Wallingford testified that her cameras continued to capture Nguyen engaging in rude and threatening behavior toward them. 4-ER-488-99, 520-21, 654, 676. She also testified to the lengths she went to position her cameras to avoid infringing Nguyen's privacy rights. 4-ER-499-506, 654, 0676. The state court ultimately granted the Wallingfords' petitions, holding that Ms. Wallingford had

established by "clear and convincing evidence" that Nguyen was harassing her without a legitimate purpose. 4-ER-640-41, 654, 663, 676-77.

The court also held, however, that the Wallingfords' cameras at first constituted harassment under section 527.6. 4-ER-640-41, 0670. It also expressly recognized that the cameras had "since been repositioned such that they point only at areas of the Nguyen's residence in public view, which the court finds acceptable." 4-ER-640, 0663, 668. Even so, the court granted Nguyen's petitions against the Wallingfords—despite no other findings of harassing behavior or that either is a danger to the public or themselves. 4-ER-640-41, 654, 673, 677. There were no further proceedings in the state courts.

The restraining orders took effect on November 1, 2019, and they are set to expire on November 1, 2022. 4-ER-641. They may, however, be renewed for up to five more years even "without a showing of any further harassment since the issuance of the original order." Cal. Civ. Proc. Code § 527.6(j)(1). While the restraining orders are in effect, the Wallingfords are prohibited from acquiring, owning, or possessing firearms under the Challenged Statutes.

Nguyen, however, continues to act erratically and threatening. 4-ER-655, 663. Since December 2020, Mrs. Wallingford as called the police to report Nguyen's harassing behavior on at least 12 separate occasions. 4-ER-655. Yet the police have taken no action against Nguyen (aside from issuing a warning) for violating the terms of the restraining order against her. 4-ER-655. The Wallingfords have thus come to fear that Nguyen's aggressive and violent behavior against them will only escalate. 4-ER-655.

7

## II.   PROCEDURAL HISTORY AND THE RULING ON REVIEW

The Wallingfords sued in federal court, alleging that California's restraining order regime, which bars anyone subject to a restraining order from acquiring, owning, or possessing firearms, impermissibly violates the Second and Fourteenth Amendments to the United States Constitution. 4-ER-677-81 (seeking a declaration that, as applied to the Wallingfords, the Challenged Statutes are unconstitutional, and an injunction against the continued enforcement of the laws against them). The Wallingfords also promptly moved to preliminarily enjoin enforcement of the Challenged Statutes while the case was pending. Pls. Mot. Prelim. Inj., *Wallingford v. Bonta*, No. 21-1412 (Sept. 17, 2021), ECF No. 12-1.

The State, in turn, moved to dismiss the Wallingfords' complaint under rule 12(b)(1) on two grounds. First, the State argued that the complaint failed jurisdictionally under the *Rooker-Feldman* doctrine. Defs.' Mot. Dismiss at 6-8, *Wallingford v. Bonta*, No. 21-1412 (Oct. 4, 2021), ECF No. 16-1. Second, the State requested that the district court abstain from hearing the case under *Younger*. *Id.* at 8-11. In their opposition, the Wallingfords argued that *Rooker-Feldman* did not preclude jurisdiction over their lawsuit because they were not seeking to have the federal court reverse a state court error. Pls.' Oppn. to Defs.' Mot. Dismiss at 3-5, *Wallingford v. Bonta*, No. 21-1412 (Oct. 11, 2021), ECF No. 21.

On October 28, 2021, the court issued an order vacating oral argument and granting the State's motion to dismiss the Wallingfords' complaint with prejudice. 1-ER-5. The district court's order discussed *Rooker-Feldman* only and did not address the State's *Younger* argument. 1-ER-4-5. In short, the district court construed the

Wallingfords' complaint as an attack on the state court's restraining orders against them. 1-ER-4-5. But it ignored the broader constitutional nature of the complaint. *See* 1-ER-4-5. Nor did the order rule on the Wallingfords' motion for preliminary injunction—though it seems that motion was implicitly denied. 1-ER-2-05.

The Wallingfords now appeal the district court's order dismissing their complaint with prejudice on *Rooker-Feldman* grounds. 4-ER-682-84.

## SUMMARY OF ARGUMENT

The *Rooker-Feldman* doctrine bars actions that are essentially appeals to the federal district courts from state court judgments. The Wallingfords are not guilty of appealing a state court loss to the district court because they do not complain that the state court erred in entering restraining orders against them. Instead, they challenge a consequence that automatically attached to those orders by operation of law. It's a subtle but critical difference.

Because the Wallingfords do not challenge the legal or factual basis for the underlying restraining orders or ask for an order dissolving them, *they are not bringing a "forbidden de facto appeal."* And because courts may approach broader constitutional questions in the *Rooker-Feldman* context without breaching the "inextricably intertwined" test, if that test even applies here (it does not), the district court erred in dismissing the Wallingfords' complaint under *Rooker-Feldman*.

Further, even though the district court did not expressly address the State's *Younger* argument, if this Court considers that argument, it too must fail. For the Wallingfords' federal claims meet none of the five elements the State must prove before *Younger* applies in civil cases like this one.

Even if this Court disagrees, and finds that the district court's dismissal was proper, the district court's failure to grant leave to amend was *still* reversible error because it denied the Wallingfords' any chance to plead a facial constitutional challenge. This Court should reverse.

## STANDARD OF REVIEW

This Court reviews a district court's order granting a motion to dismiss de novo. *United States v. Holler*, 411 F.3d 1061, 1065 (9th Cir. 2005). When ruling on a motion to dismiss, the Court must accept all factual allegations in the complaint as true and construe the pleadings favorably to the nonmovant. *Cervantes v. United States*, 330 F.3d 1186, 1187 (9th Cir. 2003). This Court must reverse dismissal unless " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegation.' " *Cook, Perkiss & Liehe, Inc. v. N. Cal. Coll. Serv. Inc.*, 911 F.2d 242, 244 (9th Cir. 1990) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

## ARGUMENT

## I. THE DISTRICT COURT ERRED WHEN IT DISMISSED THE WALLINGFORDS' COMPLAINT UNDER THE *ROOKER-FELDMAN* DOCTRINE

### A. The *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine, which emerged from a pair of Supreme Court cases, bars lower federal courts from hearing direct challenges to the decisions of state courts. *See Rooker v. Fidelity Tr. Co.,* 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983). The doctrine acknowledges "that 'a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of

a state court." *Maldonado v. Harris*, 370 F.3d 945, 949 (2004) (citing *Noel v. Hall*, 341 F.3d 1148, 1163 (9th Cir. 2003)). When considering whether *Rooker-Feldman* bars a federal claim, the courts turn to a two-step analysis that first asks whether the federal plaintiff is attempting to bring a "forbidden de facto appeal." *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013). If—and only if—the federal lawsuit is a "forbidden de facto appeal,"[2] the court may then determine whether it may dismiss any claims that are " 'inextricably intertwined' with an issue resolved by the state court in its decision." *Doe v. Mann*, 45 F.3d 1038, 1042 (9th Cir. 2005); *see also Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012) (The "inextricably intertwined test . . . allows courts to dismiss claims closely related to claims that are themselves barred under *Rooker-Feldman*.")

Furthermore, "[a]lthough a federal district court does not have jurisdiction to review constitutional challenges to a state court's decision, the court does have jurisdiction over a general constitutional challenge that does not require review of a final state court decision in a particular case." *Dubinka v. Judges of the Super. Ct.*, 23 F.3d 218, 221 (9th Cir. 1994). "This distinction between a permissible general constitutional challenge and an impermissible appeal of a state court determination may be subtle, and difficult to make." *Worldwide Church of God v. McNair*, 805 F.2d 888, 891 (9th Cir. 1986). The difference is between challenging the "validity" of a rule versus the "application" of it. *Noel*, 341 F.3d at 1157.

---

[2] "Our circuit has emphasized that '[o]nly when there is already a forbidden de facto appeal in federal court does the 'inextricably intertwined' test come into play'." *Noel*, 341 F.3d at 1158.

Put simply, the "*Rooker-Feldman* doctrine asks whether federal plaintiffs are seeking to set aside a state judgment, or whether they are presenting some independent claim—albeit one that denies a legal conclusion that a state court has reached in a case to which they were a party. If it is the latter, the federal court has jurisdiction, and state law determines whether the defendant prevails under principles of preclusion." *Noel*, 341 F.3d at 1164 (citing *GASH Associates v. Village of Rosemont*, 995 F.2d 726, 728-29 (7th Cir. 1993)).

### B. The Wallingfords' Federal Action Is Not a De Facto Appeal of the State Court's Restraining Orders Against Them

Under the first step of the *Rooker-Feldman* analysis, the court considers whether the federal plaintiff has brought a de facto appeal to a state court's orders. A plaintiff has brought a forbidden de facto appeal if they "assert[] as a legal wrong an allegedly erroneous decision by a state court and seek[] relief from a state court judgment based on that decision." *Id.* at 1164. The Wallingfords' federal court action does neither.

The district court's explanation for why it found the Wallingfords' action barred by *Rooker-Feldman* is very brief. After highlighting a handful of complaint averments about the sparse factual showing on which the state court entered the restraining orders, the court held that "[t]o the extent that Plaintiffs seek to challenge the state court's findings of fact, and the state court's legal conclusion that Plaintiffs were therefore prohibited from owning firearms, they are effectively requesting review and possible reversal of state court rulings." 1-ER-4-5.

This characterization of the Wallingfords' challenge is simply wrong. The Wallingfords do not contend that the state court's decision to impose restraining

orders on them was unlawful or otherwise improper. 4-ER-678-80. Nor do they

challenge the state court's underlying findings. 4-ER-678-80. Quite the opposite, in

fact. Of course, the Wallingfords are not happy the state court saw fit to impose

restraining orders against them. But they do not ask the federal court to overturn

those orders because they acknowledge that the evidentiary showing for their issuance

under California law is exceedingly low. Instead, they ask the federal court to enjoin

only the state-law firearm prohibitions that attach to all restraining orders because

they are unconstitutional as applied to the Wallingfords—if not on their face. 4-ER-

678-81. Thus, the Wallingfords do not commit the core *Rooker-Feldman* sin of asking a

federal court to find that the state court erred and grant relief from that error.

　　To be certain, there is an important difference between the standard for

issuance of a restraining order and the consequences of its issuance in this case.

Indeed, there is a clear mismatch between the low standard that a petitioner must

satisfy to obtain a restraining order (that, by law, imposes firearm restrictions on its

subject) and the heightened standard the state must meet before it may strip away the

right of law-abiding citizens to possess firearms for self-defense. But whether it was a

legal error to issue restraining orders against the Wallingfords in the first place is not a

question the Wallingfords posed to the district court. They are thus not appealing the

propriety of the state court's entry of a restraining order against them. The question

they pose is whether the flat restriction of their firearms rights, imposed by operation

of the Challenged Statutes, passes constitutional muster.

　　This Court's decision in *Maldonado v. Harris*, 370 F.3d 945 (9th Cir. 2004) is

instructive. Mr. Maldonado owned a building with billboards atop that viewable from

13

the abutting highway. *Id.* at 948. Because Maldonado leased the billboards to

businesses not located on the premises of the building in violation of the California

Outdoor Advertising Act, Caltrans brought a nuisance action against him. *Id.*

Maldonado did not raise federal constitutional claims in his defense. *Id.* It was only

after losing the state-court nuisance action, when he filed a federal lawsuit, that he

alleged the Act violated his First Amendment rights facially and as applied. *Id.* at 949.

The district court dismissed under *Rooker-Feldman*. *Id.* at 948.

> The Ninth Circuit reversed, reasoning that:

> > [I]f a federal plaintiff asserts as a legal wrong an allegedly erroneous
> > decision by a state court, and seeks relief from a state court judgment
> > based on that decision, *Rooker-Feldman* bars subject matter jurisdiction
> > in federal district court. If, on the other hand, a federal plaintiff asserts
> > as a legal wrong an allegedly illegal act or omission by an adverse
> > party, *Rooker-Feldman* does not bar jurisdiction.

*Maldonado*, 370 F.3d at 950 (quoting *Noel*, 341 F.3d at 1164). The Court then held that

"[t]he legal wrong that Maldonado asserts in this action is not an erroneous decision

by the state court in the nuisance suit brought against Maldonado by Caltrans, *but the*

*continued enforcement by Caltrans of a statute Maldonado asserts is unconstitutional.* In other

words, Maldonado asserts as a legal wrong 'an allegedly illegal act . . . by an adverse

party.' " *Id.* (emphasis added).

> Similarly, and perhaps ironically, *Feldman* is itself on point. In *Feldman*, the D.C.

Circuit refused to admit Mr. Feldman to the D.C. bar because he apprenticed with a

law firm instead of graduating from an accredited law school. 460 U.S. at 465.

Feldman sued in federal court, arguing that the refusal to admit him deprived him of

constitutional rights. *Id.* The Supreme Court held that the federal district court could

14

decide the constitutionality of the bar rule because doing so would not involve reviewing "a final state-court judgment in a particular case." *Id.* at 486-88. Indeed, "the difference between seeking review in a federal district court of a state court's final judgment . . .. and challenging the validity of [a law] has been recognized in the lower courts and, at least implicitly, in the opinions of th[e Supreme] Court." *Id.* at 483-84.

Here, like both Mr. Maldonado and Mr. Feldman, the Wallingfords do not allege that the state court erred. Rather, they allege as a legal wrong the continued unconstitutional enforcement of the Challenged Statutes, which automatically require restraining order subjects to forfeit their firearm rights regardless of the circumstances justifying the order's issuance. 4-ER-677-81. They do not allege that the state court misapplied applicable legal standards. Pls.' Oppn. to Defs.' Mot. to Dismiss at 3-4, *Wallingford*, No. 21-1412, ECF No. 21. Nor do they challenge the state court's underlying factual findings. *Id.* To the contrary, the Wallingfords *rely on*—they do not wrestle with—those findings. *See* Pls.' Mot. Prelim. Inj. at 13-16, *Wallingford*, No. 21-1412, ECF No. 12-1; Pls.' Oppn. to Defs' Mot. to Dismiss at 11-14, *Wallingford*, No. 21-1412, ECF No. 21. For the state court's minimal findings about the Wallingfords' non-violent harassment cement the claim that the Challenged Statutes are unconstitutional as applied.

Recall, the state court found only that the placement of security cameras had, at first, constituted "harassment" of Ms. Nguyen. 4-ER-640-41, 674. It did *not* find that the Wallingfords posed any violent threat to their neighbor (or anyone else for that matter). 4-ER-640-41, 674. The court also held that Ms. Wallingford's repositioning of

her cameras was "acceptable," ostensibly issuing the restraining orders simply to prevent either of the Wallingfords from returning them to their earlier "harassing" positions. 4-ER-641, 663, 668. These findings need not be disturbed because they establish that the State's justification for stripping the Wallingfords of their fundamental right to bear arms via the Challenged Statutes rests on the thinnest of reeds. It certainly would not satisfy heightened scrutiny—whether it is intermediate or strict. *See* Pls.' Mot. Prelim. Inj. at 13-16, *Wallingford*, No. 21-1412, ECF No. 12-1; Pls.' Oppn. to Defs' Mot. to Dismiss at 11-14, *Wallingford*, No. 21-1412, ECF No. 21. In short, the Wallingfords allege that the Challenged Statutes fail to distinguish those who probably should have their firearms rights forfeited from those who *cannot* because their disarmament serves no sufficient government interest. This is a *general* challenge to how the rule operates, which is permissible, not a *specific* challenge to the restraining order court's ruling, which is not.

The analysis does not change even if it could be said that the Wallingfords seek relief directly from the restraining orders entered against them.[3] As this Court has regularly held, "even when a federal plaintiff is expressly seeking to set aside a state court judgment, *Rooker-Feldman* may not apply." *Maldonado*, 360 F.3d at 950 (citing *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004)). Again, that is because

---

[3] The Wallingfords maintain that they do not seek relief from the restraining orders they are bound by. Rather, they seek to enjoin only the enforcement of California's one-size-fits-all firearm restrictions that attach to all restraining orders (i.e., Cal. Civ. Proc. Code § 527.6(u), Cal. Civ. Proc. Code § 527.9, and Cal. Penal Code §§ 27500, 27540, 29825, 30305-30306, 30370). 4-ER-680-81. But even if the Court finds there is no appreciable difference between seeking relief from the enforcement of these statewide laws and seeking relief from the restraining orders themselves, as will be shown, *Rooker Feldman* requires more.

*Rooker-Feldman* only acts to bar federal jurisdiction when the federal plaintiff "seek[s] not only to set aside a state court judgment," but "*also* allege[s] a legal error by the state court as the basis for that relief." *Id.* (quoting *Kougasian*, 359 F.3d at 1140). Because, as established above, the Wallingfords do not (and need not) allege that the state court made any legal or factual error to obtain the relief they seek, *Rooker Feldman* simply does not apply.

### C.    The "Inextricably Intertwined Test" Is Unworkable Here

Moving to the second part of the *Rooker-Feldman* analysis, the courts consider whether any federal claim is " 'inextricably intertwined' with an issue resolved by the state court in its decision." *Doe*, 45 F.3d at 1042. A claim is "inextricably intertwined" "if the relief requested . . . would effectively reverse the state court decision or void its ruling." *Fontana Empire Ctr., LLC v. City of Fontana*, 307 F.3d 987 (9th Cir. 2002). Another formulation posits that "a federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Pennzoil v. Texaco, Inc.,* 481 U.S. 1, 25 (1987). But because the Wallingfords are "not bringing a de facto appeal [in the first place] . . . the 'inextricably intertwined' test does not come into play." *Maldonado*, 370 F.3d at 950.

Aside from this reason, however, there are issues with the "inextricably intertwined" test that make its application here difficult and its utility questionable. Indeed, because the Wallingfords only state two causes of action that both target and challenge the constitutionality of the Challenged Statutes, there are no other "closely related" claims to treat as "inextricably intertwined." Additionally, the core

constitutional questions presented in the Wallingfords' two causes of action—
violation of the right to bear arms under the Second Amendment and of substantive
due process under the Fourteenth Amendment—were never adjudicated in the state
court proceedings. For this reason, the Wallingfords' suit falls under a nuanced
exception to the *Rooker-Feldman* doctrine described in *Robinson v. Ariyoshi*, 753 F.2d
1468 (9th Cir. 1985), *judgment vacated and remanded on other grounds*, 477 U.S. 902 (1986).

 In *Robinson*, the Ninth Circuit held that *Rooker-Feldman* does not bar a plaintiff's
federal action if the plaintiff's prior state court action did not consider the plaintiff's
federal constitutional claims. *Id.* at 1472-73. As the court put it,

> We view the res judicata requirement of full and fair opportunity to
> litigate, and the *Feldman* "inextricably intertwined" barrier to federal
> jurisdiction as two sides of the same coin. *Under the rubric of either*
> *"jurisdiction" or "res judicata," the crux of the question is whether there has*
> *already been actual consideration of and a decision on the issue presented.* If
> consideration and decision have been accomplished, action in federal
> court is an impermissible "appeal" from the state court decision. If no
> consideration has been given, or any decision on the matter is
> ambiguous, it is unlikely that the issues presented to the state high
> court are so "inextricably intertwined" that the federal court cannot
> take jurisdiction.

*Id.* at 1468 (emphasis added). With *Robinson* in mind, it is apparent that the
Wallingfords' claims do not constitute a de facto appeal or peripheral claims that are
"inextricably intertwined."

 The Wallingfords simply did not have a reasonable opportunity to litigate the
constitutionality of the Challenged Statutes as applied to them in the restraining order
proceedings. Unless the respondent is a "peace officer," the restraining order court
has no discretion to grant an exemption to the firearm prohibition just because the
order was based on non-violent harassment or because the respondent poses no

threat of violence.[4] Indeed, the court may only grant an exemption to the firearm ban "if the respondent can show that a particular firearm is necessary as a condition of continued employment and that the current employer is unable to reassign the respondent to another position where a firearm is unnecessary." Cal. Civ. Proc. § 527.9(f). What's more, those opposing a restraining order petition are limited to raising argument and evidence "that explains, excuses, justifies, or denies the alleged harassment." Cal. Code Civ. Proc., § 527.6, subd. (h). There is thus no procedure for litigating a constitutional challenge to the firearm restrictions in the context of the restraining order proceedings. Thus, under *Robinson*, the *Rooker-Feldman* doctrine cannot deny the Wallingfords a chance to present their constitutional claims in the federal forum.

Last, even if a federal claim is "inextricably intertwined" with an issue resolved by a state court decision, it does not necessarily follow that the issue may not be raised in federal court. *Kougasian*, 359 F.3d at 1142-43. Otherwise, "*Rooker-Feldman* would give greater preclusive effect to state court judgments than the states themselves would give [them]. Such super-preclusive effect would violate the requirement of 28 U.S.C. § 1738 that federal courts give the same (not more and not less) preclusive effect the rendering state courts would give to those judgments." *Id.* And under

---

[4] *See* Cal. Civ. Proc. § 527.9(f) ("In any case involving a peace officer who as a condition of employment and whose personal safety depends on the ability to carry a firearm, a court may allow the peace officer to continue to carry a firearm, either on duty or off duty, if the court finds by a preponderance of the evidence that the officer does not pose a threat of harm. Prior to making this finding, the court shall require a mandatory psychological evaluation of the peace officer and may require the peace officer to enter into counseling or other remedial treatment program to deal with any propensity for domestic violence.")

California preclusion law, a prior judgment is res judicata only as to matters that were *actually* litigated, or that *could have been litigated* in the earlier proceeding. *Busick v. Workmen's Comp. Appeals. Bd.*, 7 Cal. 3d 967, 975 (1972). Here, as explained above, the Wallingfords' firearms prohibition was neither litigated nor reasonably able to be litigated in the restraining order proceedings.

For these reasons, the "inextricably intertwined" test of *Rooker-Feldman* does not apply here. But even if the Wallingfords' claims were so intertwined, that fact would not support dismissal under *Rooker-Feldman* because the Wallingfords had no reasonable opportunity to test the constitutionality of the Challenge Statues through the restraining order proceedings.

**D. The District Court Should Have Granted Leave to Amend**

Should this Court hold that *Rooker-Feldman* bars the Wallingfords' "as applied" claims, the Court should still reverse the order on appeal as much as it denies the Wallingfords leave to amend. Ordinarily, leave to amend is freely given, so "a case dismissed for lack of subject matter jurisdiction should be dismissed *without* prejudice." *Frigard v. United States*, 862 F.2d 201, 204 (9th Cir. 1988) (emphasis added); *see also* Fed. R. Civ. P. 15(a)(2). A court abuses its discretion when it denies leave to amend absent some showing of "undue delay, bad faith . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of amendment." *Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015) (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962)). The record does not support any finding that the grounds for denying leave apply. Dismissal of the Wallingfords' complaint with prejudice was thus in error.

There is simply no factual predicate to argue that the Wallingfords were guilty of undue delay or bad faith or that amendment would unduly prejudice the State. There had been no past failure to cure deficiencies; the operative complaint was the first and only complaint the Wallingfords have filed in this action. And the State did not argue—nor the district court expressly hold—that amendment would be futile. *See generally* Defs.' Mot. to Dismiss, *Wallingford*, No. 21-1412, ECF No. 16-1; 1-ER-2-5. Even so, the district court denied the Wallingfords leave to amend. 1-ER-5. But the Wallingfords can surely amend to allege a facial constitutional challenge to the Challenged Statutes not barred by *Rooker-Feldman*. And in the Ninth Circuit, courts observe the rule that, when dismissal is based on *Rooker-Feldman*, leave to amend should be freely granted if it is plausible that the plaintiff could allege a facial challenge to an allegedly unconstitutional law. *See, e.g.*, *Noel*, 341 F.3d at 1157, n.6; *Feldman*, 460 U.S. at 487.

For this reason, if the Court holds that *Rooker-Feldman* defeats the Wallingfords' "as applied" challenge, the Court should reverse the district court's decision to withhold leave to amend.

## II. THE *YOUNGER* FACTORS DO NOT SUPPORT ABSTENTION

The State's alternative argument, that the district court should abstain from hearing the Wallingfords' claims under *Younger*, should fare no better.[5] Indeed, *Younger* abstention is inapplicable here. The doctrine, emerging from *Younger v. Harris*, 401

---

[5] Although the district court did not expressly rule on the State's *Younger* defense, the Wallingfords understand that this Court may wish to do so on appeal. *See Citizens for Free Speech, LLC v. Cnty. of Alameda*, 953 F.3d 655, 658 (9th Cir. 2014). So they reiterate the opposition to *Younger* abstention that they raised in the court below.

U.S. 37(1971), does direct federal courts to abstain from hearing cases involving federal issues already being litigated in state forums. But the State incorrectly described the *Younger* test as follows:

> Absent "extraordinary circumstances," abstention in favor of state judicial proceedings is required if the state proceedings (1) are ongoing, (2) implicate important state interests, and (3) provide the plaintiff an adequate opportunity to litigate federal claims.

Defs.' Mot. to Dismiss at 8, *Wallingford*, No. 21-1412, ECF No. 16-1 (citing *Hirsh v. Justices of the Sup. Ct.*, 67 F.3d 708, 712 (9th Cir. 1995)). This is not the complete test applicable here. To the contrary, the State cited the test for *Younger* abstention that is used in *criminal* cases. *See, e.g.*, *Liggins v. People*, No. ED 09-cv-00339, 2009 U.S. Dist. LEXIS 98448, at *6 (C.D. Cal. Feb. 24, 2009). In civil cases, like this one, the *Younger* test requires more.

Aside from the three elements described above, the case must also be a "quasi-criminal enforcement action[] or involve a state's interest in enforcing the orders and judgments of its courts." *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014) (citing *Sprint Commcns., Inc. v. Jacobs*, 571 U.S. 69, 79-80 (2013)). *If* those four "threshold" elements are met, *then* courts consider a *fifth* element—whether the federal action "would have the practical effect of enjoining the state proceedings and whether an exception to *Younger* applies." *ReadyLink,* 754 F.3d at 759 (citing *Gilbertson v. Albright*, 381 F.3d 965, 983-984 (9th Cir. 2004)). No element is met here. The Court should thus refrain from reviving the State's *Younger* argument here.

A.      There Is No Ongoing State Judicial Proceeding

The beginning of this analysis is also its end. The Wallingfords' state action is not ongoing. It ended once the court issued orders against them. The State argued that because the Wallingfords' restraining orders will be in effect for at least three years, the state court matter is "ongoing." Defs.' Mot. to Dismiss at 9, *Wallingford*, No. 21-1412, ECF No. 16-1. Tellingly, the State cites no authority to support this argument. That is because it does not make practical sense. Unless one of the parties petitions to restart the action to seek a modification of an order, nothing more will happen in the state court. Cal. Code Civ. Proc. § 527.6(j). There are no pending hearings or filing deadlines. The matter is over.

Because there is no ongoing state court proceeding here, there necessarily does not exist any proceeding that could be enjoined. The fifth inquiry for *Younger* abstention—whether the federal action "would have the practical effect of enjoining the state proceedings"—thus militates against its application here. *See AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1151 (9th Cir. 2007). The result would be the same even if the State were correct that the continued enforcement of the restraining orders is the same as an ongoing proceeding. That is because the relief the Wallingfords seek in federal court does not ask for—nor does it require—that any state court proceeding be enjoined. Again, the Wallingfords do not challenge the validity of their restraining orders. *See* Argument, Part I.A., *supra*. Nor do they seek to have them overturned. *Id.* Rather, they seek only to have the enforcement of the Challenged Statutes against them enjoined. *Id.* So even if they receive the relief they seek from this Court, the restraining orders, exactly how the state court issued them, would remain in effect.

**B.      This Case Does Not Implicate Any Important State Interest**

Even if there were an ongoing matter, there still would be no important state interest implicated here.

First, the privacy interest that the State raises, while admittedly important, is not at issue. Defs.' Mot. to Dismiss at 9, *Wallingford*, No. 21-1412, ECF No. 16-1. The Wallingfords did not dispute that they should have repositioned their security cameras to accommodate Nguyen's privacy. To the contrary, as soon as Nguyen complained about the cameras, Ms. Wallingford voluntarily repositioned them. 4-ER-639-41, 653-54. She has made no changes to the positioning of the security cameras since the issuance of the restraining orders. 4-ER-654. But most importantly, the Wallingfords are not seeking to undo their restraining orders through this lawsuit. 2-ER-678-79. So even if the Wallingfords prevail, the restraining orders will remain in effect, and their cameras will remain unmoved. Nguyen's privacy is simply not in jeopardy.

The State's other purported interest—a general interest in reducing gun violence—is hardly implicated either (if it is all). To be sure, "promoting policies and laws that reduce gun violence" generally advances an important state interest. Defs.' Oppn. to Pls.' Prelim. Inj. at 11, *Wallingford v. Bonta*, No. 21-1412 (Sept. 27, 2021), ECF No. 14. More specifically, attaching firearm restrictions to restraining orders issued because the subject has engaged in acts of violence, made credible threats of violence, or proven themselves to be a danger to themselves or others might also implicate the State's interest in public safety. But that is not the question here. Rather, the Wallingfords ask what public safety interest could possibly be served by stripping the Second Amendment rights of *all* people subject to restraining orders—even when

those orders are lawfully predicated on a minimal finding that they "alarmed," "annoyed," or "harassed" the petitioner without a legitimate reason. The obvious answer is none.

The Wallingfords have not been found to be dangerous in any respect. 4-ER-640-41. There have been no credible complaints that either of them was violent toward Ms. Nguyen. *See* 2-ER-73-84, 162-63; 4-ER-640-41, 651-52, 0656-58, 673-74. There have been no complaints that either made any threats of violence—credible or otherwise—against her. *See* 4-ER-640-41. And there has been no finding that the Wallingfords were any danger to themselves or others. *See* 4-ER-640-41. Indeed, the only grounds on which the state court issued the restraining orders against them was that Ms. Wallingford had, at one time, engaged in "harassment" of Ms. Nguyen through the placement of her security cameras. 4-ER-641. The State's generic platitudes about gun control are thus irrelevant. Defs.' Mot. to Dismiss at 9-10, *Wallingford*, No. 21-1412, ECF 16-1.

The Constitution provides California a "variety of tools" for combating the problem of gun violence, but "the enshrinement of constitutional rights necessarily takes certain policy choices off the table." *District of Columbia v. Heller*, 554 U.S. 570, 636 (2008). Denying firearms to non-dangerous, law-abiding adult citizens is no doubt one of those forbidden policies. *Id.* at 635. ("[W]hatever else [the Second Amendment] leaves to future evaluation, it surely elevates above all other interests the

right of law-abiding, responsible citizens to use arms in defense of hearth and home.")[6]

### C. The Wallingfords Had No Meaningful Opportunity to Litigate Their Second Amendment Claim in the State Court Proceeding

For *Younger* abstention to apply, the ongoing state court proceeding must allow litigants adequate opportunity to raise federal challenges. *ReadyLink*, 754 F.3d at 759. Even if this Court finds that the long completed restraining order proceedings are somehow ongoing, they provide no meaningful opportunity to raise a federal constitutional challenge. First, individuals responding to a petition that they be restrained are limited to raising argument and evidence "that explains, excuses, justifies, or denies the alleged harassment." Cal. Code Civ. Proc., § 527.6, subd. (h). There is *no* procedural mechanism for raising a constitutional challenge in these proceedings, and the State does not identify one. Instead, it suggests that the Wallingfords could seek a modification, termination, or appeal of their orders. State's Mot. to Dismiss at 10, ECF 16-1. But that argument misunderstands the law.

To begin with, exhaustion of state court remedies is not an element of the *Younger* abstention doctrine. *See ReadyLink*, 754 F.3d at 759 (listing *Younger* abstention elements). Thus, for purposes of *Younger*, the Wallingfords have no duty to take the steps that the State suggests. In any event, those steps would not provide the

---

[6] Interestingly, the analysis of the State's public safety interest here would seem to strip the Wallingfords' Second Amendment claim of the heightened scrutiny to which it is entitled. That is, the *Younger* analysis merely asks the State to identify a legitimate interest. It does not then require the State to establish that is purported interest is "important" and that the Challenged Statues are "substantially related" to it. *See Edenfield v. Fane*, 507 U.S. 761, 770-71 (1993) (discussing the test for intermediate scrutiny); *see United States v. Chovan*, 735 F.3d 1127, 1139-40 (9th Cir. 2013).

Wallingfords the relief they seek. Modification of the orders cannot do anything for them. Courts have no discretion to issue a restraining order without imposing a firearm prohibition because that prohibition is statutorily required to affix to *every* restraining order. Cal. Code Civ. Proc. § 527.6(u). And while termination of the order would provide the Wallingfords the relief they seek, they are aware of no mechanism to request termination of an otherwise valid restraining order on the grounds that it causes a constitutional violation in its effect but not its issuance, as here.

The State suggests, however, that the Wallingfords could have addressed the issue by appealing the state court ruling. Defs.' Mot. to Dismiss at 10, *Wallingford*, No. 21-1412, ECF 16-1. Under California authority, however, they would have been limited to arguing that the lower court's factual findings were unsupported by substantial evidence. *Bookout v. Nielsen*, 155 Cal. App. 4th 1131, 1137 (2007) (observing that injunctions under section 527.6 are reviewed to determine whether factual findings are supported by substantial evidence). Thus, to challenge the constitutionality of the firearm restrictions placed on them, they would have had to have filed a new case entirely. The state court proceeding here thus did not give them a chance to raise their federal claims.

### D. This Case Does Not Implicate a Criminal Enforcement Action or the State's Interest in Enforcing the Orders and Judgments of Its Courts

In any event, this is not the type of case to which *Younger* abstention exclusively applies. "After more than forty years of unchecked doctrinal expansion, the Supreme Court made clear that *Younger* abstention was appropriate only in the two 'exceptional categories of civil cases it had previously identified: (1) "civil enforcement

proceedings"; and (2) "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions.' " *Cook v. Harding*, 879 F.3d 1035, 1039 (9th Cir. 2018) (citing *Sprint Communs., Inc., supra,* 571 U.S. at 77)). This case is neither.

First, this case is not a "quasi-criminal enforcement action." "Such enforcement actions are characteristically initiated to sanction the federal plaintiff, i.e., the party challenging the state action, for some wrongful act. . .. In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action." *Sprint Communs.*, 571 U.S. at 79-80; *see also Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) (holding that *Younger* abstention is appropriate where "noncriminal proceedings bear a close relationship to proceedings criminal in nature").

The case of *Rynearson v. Ferguson*, 903 F.3d 920 (9th Cir. 2018), is on all fours. In *Rynearson*, the Ninth Circuit held that *Younger* did not apply to a constitutional challenge to Washington State's protection order proceedings because (1) the proceeding was initiated by a private party; (2) it required no involvement from any state actor; and (3) the purpose of the proceeding was to protect the petitioner, not to punish the respondent. *Id.* at 925-26. The situation is no different here. No state actor was party to the Wallingfords' state court proceeding; the only parties to those proceedings were the Wallingfords and Nguyen. 4-ER-640-41. The California restraining order proceeding required no involvement from any state actor—except the issuing court, which is of course the same sort of state involvement involved in the Washington State protection order proceeding. 4-ER-640-41. And finally, the state

court's order was designed to protect Nguyen's privacy, not to punish the Wallingfords. 4-ER-640-41.

Nor does this case challenge "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." *Cook*, 879 F.3d at 1039. Again, *Rynearson* is instructive. In "conclud[ing] that Rynearson's suit did not involve Washington's interest in enforcing the orders and judgments of its courts," the Ninth Circuit explained that his "challenge is solely to the constitutionality of a criminal statute" and that a challenge to a "statute's constitutionality does not bear on the validity of the state's protection orders or the procedures by which the state courts issue or enforce them." *Rynearson*, 903 F.3d at 927. There is no meaningful difference between the challenge at issue in *Rynearson* and the Wallingfords' challenge here.

In sum, the Ninth Circuit's refusal to apply *Younger* abstention in *Rynearson* compels the same result here. In any event, because the State relied on only the three elements of *Younger* that apply to criminal cases, thus failing to discuss this element altogether, the State did not prove that this case is a proper candidate for *Younger* abstention.

### E.    The Court Should Not Abstain from This Case Under *Younger* Because the Wallingfords Will Continue to Suffer Great Irreparable Harm

In any event, because the Wallingfords would continue to suffer "irreparable harm" that is both "great and immediate" if this Court declines to hear their case, the Court should not apply *Younger* here. *Kugler v. Helfant*, 421 U.S. 117, 123 (1975) (quoting *Younger*, 401 U.S. at 45) ("[I]n the absence of exceptional circumstances

29

creating a threat of irreparable injury 'both great and immediate,' a federal court must

not intervene . . . in a pending state criminal prosecution.") As explained in the

Wallingfords' motion for preliminary injunction, "[i]t is well established that

deprivation of constitutional rights 'unquestionably constitutes irreparable injury.' "

*Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S.

347, 373 (1976)); *see also* 11A Charles Alan Wright et al., Federal Practice and

Procedures § 2948.1 (2d ed. 1995) (In the preliminary injunction context, "[w]hen an

alleged deprivation of a constitutional right is involved, most courts hold that no

further showing of irreparable injury is necessary."). The Ninth Circuit has imported

the First Amendment "irreparable-if-only-for-a-minute" rule to other rights and, in

doing so, has held deprivation of those rights is irreparable harm per se. *Monterey Mech.*

*Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997). The Second Amendment should be

treated no differently. *See McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010); *see also*

*Duncan v. Becerra*, 742 F. App'x 218, 222 (9th Cir. 2018).

Under the Challenged Statutes, the Wallingfords have already been deprived of

their Second Amendment rights for over two years. 4-ER-654-55, 663, 677-79. And

they will continue to be so deprived until the state court lifts the restraining orders

against them. But their harm does not end there. Under the Challenged Statutes, the

Wallingfords must not only to surrender their firearms, they must also pay for their

storage by a third-party while the restraining order is in effect. Cal. Code Civ. Proc. §

527.9(c); 4-ER-654-55, 669, 677. Surrendering one's constitutional rights for years is

enough to establish "irreparable harm," but having to pay for that deprivation of

rights and property makes it undeniable.

30

Thus, even if this case qualified for *Younger* abstention, which it does not for the reasons explained above, this Court should refuse to apply it here in the interests of justice.

## CONCLUSION

The *Rooker-Feldman* doctrine does not deprive the district court of jurisdiction to hear this matter. Further, *Younger* does not compel the federal courts to abstain from hearing this matter. This Court should thus reverse the district court's order granting the State's motion to dismiss and remand the case for further proceedings.

Dated:  January 28, 2022                     Respectfully submitted,

                                                        **MICHEL & ASSOCIATES, P.C.**

                                                        s/ Anna M. Barvir
                                                        _____
                                                        Anna M. Barvir
                                                        *Attorneys for Plaintiffs-Appellants*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 21-56292

I am the attorney or self-represented party.

**This brief contains** | 8,513 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [ ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Anna M. Barvir | **Date** | January 28, 2022

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**      *Rev. 12/01/2018*

# ADDENDUM

# ADDENDUM

**U.S. Const. amend. II**

A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

**U.S. Const. amend. XIV, § 1**

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

**Cal. Code Civ. Proc. § 527.6(u)**

(1) A person subject to a protective order issued pursuant to this section shall not own, possess, purchase, receive, or attempt to purchase or receive a firearm or ammunition while the protective order is in effect.

(2) The court shall order a person subject to a protective order issued pursuant to this section to relinquish any firearms the person owns or possesses pursuant to Section 527.9.

(3) A person who owns, possesses, purchases, or receives, or attempts to purchase or receive, a firearm or ammunition while the protective order is in effect is punishable pursuant to Section 29825 of the Penal Code.

**Cal. Code Civ. Proc. § 527.9**

(a) A person subject to a temporary restraining order or injunction issued pursuant to Section 527.6, 527.8, or 527.85 or subject to a restraining order issued pursuant to Section 136.2 of the Penal Code, or Section 15657.03 of the Welfare and Institutions Code, shall relinquish the firearm pursuant to this section.

(b) Upon the issuance of a protective order against a person pursuant to subdivision (a), the court shall order that person to relinquish any firearm in that person's immediate possession or control, or subject to that person's immediate possession or control, within 24 hours of being served with the order, either by surrendering the firearm to the control of local law enforcement officials, or by selling the firearm to a licensed gun dealer, as specified in Article 1 (commencing with Section 26700) and Article 2 (commencing with Section 26800) of Chapter 2 of Division 6 of Title 4 of Part 6 of the Penal Code. A person ordered to relinquish any firearm pursuant to this subdivision shall file with the court a receipt showing the firearm was surrendered to the local law enforcement agency or sold to a licensed gun dealer within 48 hours after receiving the order. In the event that it is necessary to continue the date of any hearing due to a request for a relinquishment order pursuant to this section, the court shall ensure that all applicable protective orders described in Section 6218 of the Family Code remain in effect or bifurcate the issues and grant the permanent restraining order pending the date of the hearing.

(c) A local law enforcement agency may charge the person subject to the order or injunction a fee for the storage of any firearm relinquished pursuant to this section. The fee shall not exceed the actual cost incurred by the local law enforcement agency for the storage of the firearm. For purposes of this subdivision, "actual cost" means expenses directly related to taking possession of a firearm,

storing the firearm, and surrendering possession of the firearm to a licensed dealer as defined in Section 26700 of the Penal Code or to the person relinquishing the firearm.

(d) The restraining order requiring a person to relinquish a firearm pursuant to subdivision (b) shall state on its face that the respondent is prohibited from owning, possessing, purchasing, or receiving a firearm while the protective order is in effect and that the firearm shall be relinquished to the local law enforcement agency for that jurisdiction or sold to a licensed gun dealer, and that proof of surrender or sale shall be filed with the court within a specified period of receipt of the order. The order shall also state on its face the expiration date for relinquishment. Nothing in this section shall limit a respondent's right under existing law to petition the court at a later date for modification of the order.

(e) The restraining order requiring a person to relinquish a firearm pursuant to subdivision (b) shall prohibit the person from possessing or controlling any firearm for the duration of the order. At the expiration of the order, the local law enforcement agency shall return possession of any surrendered firearm to the respondent, within five days after the expiration of the relinquishment order, unless the local law enforcement agency determines that (1) the firearm has been stolen, (2) the respondent is prohibited from possessing a firearm because the respondent is in any prohibited class for the possession of firearms, as defined in Chapter 2 (commencing with Section 29800) and Chapter 3 (commencing with Section 29900) of Division 9 of Title 4 of Part 6 of the Penal Code and Sections 8100 and 8103 of the Welfare and Institutions Code, or (3) another successive restraining order is issued against the respondent under this section. If the local law enforcement agency determines that the respondent is the legal owner of any firearm deposited with the local law enforcement agency and is prohibited from possessing any firearm, the respondent shall be entitled to sell or transfer the firearm to a licensed dealer as defined in Section 26700 of the Penal Code. If the firearm has been stolen, the firearm shall be restored to the lawful owner upon his or her identification of the firearm and proof of ownership.

(f) The court may, as part of the relinquishment order, grant an exemption from the relinquishment requirements of this section for a particular firearm if the respondent can show that a particular firearm is necessary as a condition of continued employment and that the current employer is unable to reassign the respondent to another position where a firearm is unnecessary. If an exemption is granted pursuant to this subdivision, the order shall provide that the firearm shall be in the physical possession of the respondent only during scheduled work hours and during travel to and from his or her place of employment. In any case involving a peace officer who as a condition of employment and whose personal safety depends on the ability to carry a firearm, a court may allow the peace officer to continue to carry a firearm, either on duty or off duty, if the court finds by a preponderance of the evidence that the officer does not pose a threat of harm. Prior to making this finding, the court shall require a mandatory psychological evaluation of the peace officer and may require the peace officer to enter into counseling or other remedial treatment program to deal with any propensity for domestic violence.

(g) During the period of the relinquishment order, a respondent is entitled to make one sale of all firearms that are in the possession of a local law enforcement agency pursuant to this section. A licensed gun dealer, who presents a local law enforcement agency with a bill of sale indicating that all firearms owned by the respondent that are in the possession of the local law enforcement agency have been sold by the respondent to the licensed gun dealer, shall be given possession of those firearms, at the location where a respondent's firearms are stored, within five days of presenting the local law enforcement agency with a bill of sale.

## Cal. Penal Code § 27500

 (a) No person, corporation, or firm shall knowingly sell, supply, deliver, or give possession or control of a firearm to any person within any of the classes prohibited by Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9.

(b) No person, corporation, or dealer shall sell, supply, deliver, or give possession or control of a firearm to anyone whom the person, corporation, or dealer has cause to believe is within any of the classes prohibited by Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code.

## Cal. Penal Code § 27540

A dealer, whether or not acting pursuant to Chapter 5 (commencing with Section 28050), shall not deliver a firearm to a person, as follows:

(a) Within 10 days of the application to purchase, or, after notice by the department pursuant to Section 28220, within 10 days of the submission to the department of any correction to the application, or within 10 days of the submission to the department of any fee required pursuant to Section 28225, whichever is later.

(b) Unless unloaded and securely wrapped or unloaded and in a locked container.

(c) Unless the purchaser, transferee, or person being loaned the firearm presents clear evidence of the person's identity and age to the dealer.

(d) Whenever the dealer is notified by the Department of Justice that the person is prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm.

(e) A firearm, including a handgun, shall not be delivered unless the purchaser, transferee, or person being loaned the firearm presents a firearm safety certificate to the dealer, except that in the case of a handgun, an unexpired handgun safety certificate may be presented.

(f) Until July 1, 2021, a handgun shall not be delivered whenever the dealer is notified by the Department of Justice that within the preceding 30-day period the purchaser has made another application to purchase a handgun and that the previous application to purchase did not involve any of the entities or circumstances specified in subdivision (b) of Section 27535.

(g) Commencing July 1, 2021, a handgun or semiautomatic centerfire rifle shall not be delivered whenever the dealer is notified by the Department of Justice that within the preceding 30-day period, the purchaser has made another application to purchase either a handgun or semiautomatic centerfire rifle and that the previous application to purchase did not involve any of the entities or circumstances specified in subdivision (b) of Section 27535.

## Cal. Penal Code § 29825

(a) A person who purchases or receives, or attempts to purchase or receive, a firearm knowing that the person is prohibited from doing so in any jurisdiction by a temporary restraining order or injunction issued pursuant to Section 527.6, 527.8, or 527.85 of the Code of Civil Procedure, a protective order as defined in Section 6218 of the Family Code, a protective order issued pursuant to Section 136.2 or 646.91 of this code, a protective order issued pursuant to Section 15657.03 of the Welfare and Institutions Code, or by a valid order issued by an out-of-state jurisdiction that is similar or equivalent to a temporary restraining order, injunction, or protective order specified in this subdivision, that includes a prohibition from owning or possessing a firearm, is guilty of a public offense, punishable by imprisonment in a county jail not exceeding one year or in the state prison, by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine.

(b) A person who owns or possesses a firearm knowing that the person is prohibited from doing so in any jurisdiction by a temporary restraining order or injunction issued pursuant to Section 527.6, 527.8, or 527.85 of the Code of Civil Procedure, a protective order as defined in Section 6218 of the Family Code, a protective order issued pursuant to Section 136.2 or 646.91 of this code, a protective order issued pursuant to Section 15657.03 of the Welfare and Institutions Code, or by a valid order

3

issued by an out-of-state jurisdiction that is similar or equivalent to a temporary restraining order, injunction, or protective order specified in this subdivision, that includes a prohibition from owning or possessing a firearm, is guilty of a public offense, punishable by imprisonment in a county jail not exceeding one year, by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine.

(c) If probation is granted upon conviction of a violation of this section, the court shall impose probation consistent with Section 1203.097.

(d) The Judicial Council shall provide notice on all protective orders issued within the state that the respondent is prohibited from owning, possessing, purchasing, receiving, or attempting to purchase or receive a firearm while the protective order is in effect. The order shall also state that a firearm owned or possessed by the person shall be relinquished to the local law enforcement agency for that jurisdiction, sold to a licensed firearms dealer, or transferred to a licensed firearms dealer pursuant to Section 29830 for the duration of the period that the protective order is in effect, and that proof of surrender or sale shall be filed within a specified time of receipt of the order. The order shall state the penalties for a violation of the prohibition. The order shall also state on its face the expiration date for relinquishment.

## Cal. Penal Code § 30305

(a) (1) No person prohibited from owning or possessing a firearm under Chapter 2 (commencing with Section 29800) or Chapter 3 (commencing with Section 29900) of Division 9 of this title, or Section 8100 or 8103 of the Welfare and Institutions Code, shall own, possess, or have under custody or control, any ammunition or reloaded ammunition.

(2) A violation of this subdivision is punishable by imprisonment in a county jail not to exceed one year or in the state prison, by a fine not to exceed one thousand dollars ($1,000), or by both the fine and imprisonment.

(b) (1) A person who is not prohibited by subdivision (a) from owning, possessing, or having under the person's custody or control, any ammunition or reloaded ammunition, but who is enjoined from engaging in activity pursuant to an injunction issued pursuant to Section 3479 of the Civil Code against that person as a member of a criminal street gang, as defined in Section 186.22, may not own, possess, or have under the person's custody or control, any ammunition or reloaded ammunition.

(2) A violation of this subdivision is a misdemeanor.

(c) A violation of subdivision (a) or (b) is justifiable where all of the following conditions are met:

(1) The person found the ammunition or reloaded ammunition or took the ammunition or reloaded ammunition from a person who was committing a crime against the person who found or took the ammunition or reloaded ammunition.

(2) The person possessed the ammunition or reloaded ammunition no longer than was necessary to deliver or transport the ammunition or reloaded ammunition to a law enforcement agency for that agency's disposition according to law.

(3) The person is prohibited from possessing any ammunition or reloaded ammunition solely because that person is prohibited from owning or possessing a firearm only by virtue of Chapter 2 (commencing with Section 29800) of Division 9 or ammunition or reloaded ammunition because of subdivision (b).

(d) Upon the trial for violating subdivision (a) or (b), the trier of fact shall determine whether the defendant is subject to the exemption created by subdivision (c). The defendant has the burden of proving by a preponderance of the evidence that the defendant is subject to the exemption provided by subdivision (c).

**Cal. Penal Code § 30306**

(a) Any person, corporation, firm, or other business enterprise who supplies, delivers, sells, or gives possession or control of, any ammunition to any person who he or she knows or using reasonable care should know is prohibited from owning, possessing, or having under custody or control, any ammunition or reloaded ammunition pursuant to subdivision (a) or (b) of Section 30305, is guilty of a misdemeanor, punishable by imprisonment in a county jail not exceeding one year, or a fine not exceeding one thousand dollars ($1,000), or by both that fine and imprisonment.

(b) Any person, corporation, firm, or other business enterprise who supplies, delivers, sells, or gives possession or control of, any ammunition to any person whom the person, corporation, firm, or other business enterprise knows or has cause to believe is not the actual purchaser or transferee of the ammunition, with knowledge or cause to believe that the ammunition is to be subsequently sold or transferred to a person who is prohibited from owning, possessing, or having under custody or control any ammunition or reloaded ammunition pursuant to subdivision (a) or (b) of Section 30305, is guilty of a misdemeanor, punishable by imprisonment in a county jail not exceeding one year, or a fine not exceeding one thousand dollars ($1,000), or by both that fine and imprisonment.

(c) The provisions of this section are cumulative and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by this section and another provision of law shall not be punished under more than one provision.

**Cal. Penal Code § 30370**

(a) Commencing July 1, 2019, the department shall electronically approve the purchase or transfer of ammunition through a vendor, as defined in Section 16151, except as otherwise specified. This approval shall occur at the time of purchase or transfer, prior to the purchaser or transferee taking possession of the ammunition. Pursuant to the authorization specified in paragraph (1) of subdivision (c) of Section 30352, the following persons are authorized to purchase ammunition:

(1) A purchaser or transferee whose information matches an entry in the Automated Firearms System (AFS) and who is eligible to possess ammunition as specified in subdivision (b).

(2) A purchaser or transferee who has a current certificate of eligibility issued by the department pursuant to Section 26710.

(3) A purchaser or transferee who is not prohibited from purchasing or possessing ammunition in a single ammunition transaction or purchase made pursuant to the procedure developed pursuant to subdivision (c).

(b) To determine if the purchaser or transferee is eligible to purchase or possess ammunition pursuant to paragraph (1) of subdivision (a), the department shall cross-reference the ammunition purchaser's or transferee's name, date of birth, current address, and driver's license or other government identification number, as described in Section 28180, with the information maintained in the AFS. If the purchaser's or transferee's information does not match an AFS entry, the transaction shall be denied. If the purchaser's or transferee's information matches an AFS entry, the department shall determine if the purchaser or transferee falls within a class of persons who are prohibited from owning or possessing ammunition by cross-referencing with the Prohibited Armed Persons File. If the purchaser or transferee is prohibited from owning or possessing a firearm, the transaction shall be denied.

(c) The department shall develop a procedure in which a person who is not prohibited from purchasing or possessing ammunition may be approved for a single ammunition transaction or purchase. The department shall recover the cost of processing and regulatory and enforcement activities related to this section by charging the ammunition transaction or purchase applicant a fee

not to exceed the fee charged for the department's Dealers' Record of Sale (DROS) process, as described in Section 28225 and not to exceed the department's reasonable costs.

(d) A vendor is prohibited from providing a purchaser or transferee ammunition without department approval. If a vendor cannot electronically verify a person's eligibility to purchase or possess ammunition via an Internet connection, the department shall provide a telephone line to verify eligibility. This option is available to ammunition vendors who can demonstrate legitimate geographical and telecommunications limitations in submitting the information electronically and who are approved by the department to use the telephone line verification.

(e) The department shall recover the reasonable cost of regulatory and enforcement activities related to this article by charging ammunition purchasers and transferees a per transaction fee not to exceed one dollar ($1), provided, however, that the fee may be increased at a rate not to exceed any increases in the California Consumer Price Index as compiled and reported by the Department of Industrial Relations, not to exceed the reasonable regulatory and enforcement costs.

(f) A fund to be known as the "Ammunition Safety and Enforcement Special Fund" is hereby created within the State Treasury. All fees received pursuant to this section shall be deposited into the Ammunition Safety and Enforcement Special Fund and, notwithstanding Section 13340 of the Government Code, are continuously appropriated for purposes of implementing, operating, and enforcing the ammunition authorization program provided for in this section and Section 30352 and for repaying the start-up loan provided for in Section 30371.

(g) The Department of Justice is authorized to adopt regulations to implement this section.

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2022, an electronic PDF of APPELLANTS' OPENING BRIEF was uploaded to the Court's CM/ECF system, which will automatically generate and send by electronic mail a Notice of Docket Activity to all registered attorneys participating in the case. Such notice constitutes service on those registered attorneys.

Dated:  January 28, 2022

Respectfully submitted,

**MICHEL & ASSOCIATES, P.C.**

s/ Anna M. Barvir
_____

Anna M. Barvir
*Attorneys for Plaintiffs-Appellants*