21-56292

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

**MIRANDA WALLINGFORD and
RICHARD WALLINGFORD,**

Plaintiffs-Appellants,

**v.**

**ROB BONTA, in his official capacity as
Attorney General of the State of California,**

Defendant-Appellee.

---

On Appeal from the United States District Court
for the Central District of California

No. 8:21-cv-01412-DOC-KES
The Honorable David O. Carter, Judge

### ANSWERING BRIEF

Rob Bonta
Attorney General of California
Thomas S. Patterson
Senior Assistant Attorney General
P. Patty Li
Supervising Deputy Attorney General
Rita B. Bosworth
Deputy Attorney General
State Bar No. 234964
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 510-3592
  Fax: (415) 703-5480
  Email: Rita.Bosworth@doj.ca.gov
*Attorneys for Defendant-Appellee Rob
Bonta, Attorney General of California*

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................ 1

Jurisdictional Statement ............................................................................ 2

Statement Regarding Addendum ............................................................... 3

Issues Presented ........................................................................................ 3

Statement of the Case ................................................................................ 3

I.      California Law Governing Restraining Orders ......................... 3

II.     The State Court Litigation and Restraining Orders
Against Plaintiffs ..................................................................... 5

        A.    First Petition for Restraining Order ............................... 5

        B.    Second Petition for Restraining Order ........................... 6

III.    Federal Procedural History ...................................................... 9

Standard of Review .................................................................................. 12

Summary of the Argument ....................................................................... 13

Argument .................................................................................................. 14

I.      The District Court Properly Held that the *Rooker-
Feldman* Doctrine Bars Consideration of Plaintiffs'
Claims ..................................................................................... 14

        A.    Plaintiffs' Federal Action Is a De Facto Appeal of
the State Court Judgment and Is Therefore Barred ...... 15

               1.    Plaintiffs Pursue a De Facto Appeal by
Challenging the State Court's Decision to
Impose Restraining Orders Containing the
Firearm Prohibition .......................................... 16

               2.    Plaintiffs' As-Applied Challenge Is Not a
General Constitutional Challenge ..................... 20

        B.    Plaintiffs' Federal Action Is Barred Because It Is
"Inextricably Intertwined" with the State Court
Judgment ...................................................................... 24

i

# TABLE OF CONTENTS
## (continued)

Page

1. Plaintiffs' Claim Is Barred Outright Because It Is a De Facto Appeal ...................................... 25

2. Plaintiffs' Claim Is Inextricably Intertwined with the State Court Judgment and Therefore Barred ................................................ 26

3. Whether or Not the Constitutional Issue Was Litigated in State Court Is Irrelevant .................. 27

II. The District Court Could Have Abstained Under *Younger* .... 30

A. The State Court Proceeding Is Ongoing ....................... 31

B. The State Proceeding Implicates Important State Interests ........................................................... 33

C. Plaintiffs Had a Meaningful Opportunity to Raise a Constitutional Challenge ............................... 34

D. The State Proceeding Involves the State's Interest in Enforcing the Orders and Judgments of Its Courts ........................................................... 37

E. Federal Intervention Would Have the Practical Effect of Enjoining the State Proceeding .................... 39

III. The District Court Properly Dismissed the Case Without Leave to Amend ................................................... 40

Conclusion ............................................................... 41

Statement of Related Cases ............................................ 42

Certificate of Compliance ............................................. 43

Addendum to Answering Brief ........................................... 44

# TABLE OF AUTHORITIES

**Page**

## CASES

*AmerisourceBergen Corp. v. Roden*
  495 F.3d 1143 (9th Cir. 2007) .................................................. 33

*Baffert v. Cal. Horse Racing Bd.*
  332 F.3d 613 (9th Cir. 2003) .................................................. 33

*Benavidez v. Cty. of San Diego*
  993 F.3d 1134 (9th Cir. 2021) ................................................ 12

*Benavidez v. Eu*
  34 F.3d 825 (9th Cir. 1994) .................................................... 37

*Bianchi v. Rylaarsdam*
  334 F.3d 895 (9th Cir. 2003) ................................ 12, 19, 27, 28

*Bookout v. Nielsen*
  155 Cal. App. 4th 1131 (2007) ............................................... 36

*Brekke v. Wills*
  125 Cal. App. 4th 1400 (2005) ...............................................3

*Cooper v. Ramos*
  704 F.3d 772 (9th Cir. 2012) ............................................ 2, 14

*Diaz-Stellwagon v. White*
  No. A126747, 2010 WL 4816156 (Cal. Ct. App. 2010) ........................ 29

*Dist. of Columbia Ct. of Appeals v. Feldman*
  460 U.S. 462 (1983)......................................... 14, 15, 22, 24, 25

*District Property Associates v. District of Columbia*
  743 F.2d 21 (D.C. Cir. 1984)................................................. 31

*Doe & Assocs. Law Offices v. Napolitano*
  252 F.3d 1026 (9th Cir. 2001) ............................................... 15

iii

## TABLE OF AUTHORITIES
### (continued)

Page

*Dubinka v. Judges of Superior Court of State of Cal. for County of Los Angeles*
 23 F.3d 218 (9th Cir. 1994) ............................................................. 20, 22

*Ensworth v. Mullvain*
 224 Cal. App. 3d 1105 (1990) ...................................................... 4, 11, 18

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*
 544 U.S. 280 (2005)........................................................................ 15

*Fontana Empire Ctr., LLC v City of Fontana*
 307 F.3d 987 (9th Cir. 2002) ................................................................ 24

*Gilbertson v. Albright*
 381 F.3d 965 (9th Cir. 2004) ............................................................... 34

*Hanson v. Firmat*
 272 Fed.Appx. 571 (9th Cir. 2008) ....................................................... 19

*Hawaii Housing Auth. v. Midkiff*
 467 U.S. 229 (1984)........................................................................... 30

*Kougasian v. TMSL, Inc.*
 359 F.3d 1136, 1141 (9th Cir. 2004) ..................................................... 29

*Lebbos v. Judges of Superior Court*
 883 F.2d 810 (9th Cir. 1989) ........................................................... 35, 38

*Maldonado v. Harris*
 370 F.3d 945 (9th Cir. 2004) ........................................................... 23, 28

*Manufactured Home Communities Inc. v. City of San Jose*
 420 F.3d 1022 (9th Cir. 2005) ...............................................................2

*Middlesex County Ethics Committee v. Garden State Bar Ass'n*
 457 U.S. 423 (1982)........................................................................... 35

iv

# TABLE OF AUTHORITIES
## (continued)

Page

*Mitchell v. Mitchell*
  No. A131632, 2012 WL 2510051 (Cal. Ct. App. 2012) ......................... 29

*Noel v. Hall*
  341 F.3d 1148 (9th Cir. 2003) .................................................... 15, 24, 25

*Ohio Civil Rights Comm'n, Inc. v. Dayton Christian Schools, Inc.*
  477 U.S. 619 (1986) ................................................................................ 37

*Parisi v. Mazzaferro*
  5 Cal.App.5th 1219 (2016) ..................................................................... 30

*Penzoil Co. v. Texaco, Inc.*
  481 U.S. 1 (1987) ............................................................................ *passim*

*People ex rel. Gallo v. Acuna*
  14 Cal.4th 1090 (1997) .......................................................................... 30

*People v. Flores*
  169 Cal.App.4th 568 (2008) .................................................................. 30

*Prather v. AT&T, Inc.*
  847 F.3d 1097 (9th Cir. 2017) ............................................................... 12

*R.D. v. P.M.*
  202 Cal.App.4th 181 (2011) ................................................................... 30

*Readylink Healthcare, Inc., v. State Compensation Ins. Fund*
  754 F.3d 754 (9th Cir. 2014) ........................................................... 31, 39

*Reusser v. Wachovia Bank, N.A.*
  525 F.3d 855 (9th Cir. 2008) ................................................................. 40

*Robinson v. Ariyoshi*
  753 F.2d 1468 (9th Cir. 1985) ............................................................... 28

v

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Rooker v. Fidelity Trust Co.*
263 U.S. 413 (1923)............................................................ 14, 27

*Rutman Wine Co. v. E. & J. Gallo Winery*
829 F.2d 729 (9th Cir. 1987) ............................................ 12, 40

*Rynearson v. Ferguson*
903 F.3d 920 (9th Cir. 2018) .................................................. 38

*Sareen v. Sareen*
356 Fed.Appx. 977 (9th Cir. 2009) ........................................ 19

*Schmier v. U.S. Court of Appeals for Ninth Circuit*
279 F.3d 817 (9th Cir. 2002) .................................................. 41

*Schraer v. Berkeley Property Owners' Assn*
207 Cal. App. 3d 719 (1989) ....................................................4

*Thompson v. Paul*
547 F.3d 1055 (9th Cir. 2008) ............................................ 13, 31

*Watison v. Carter*
668 F.3d 1108 (9th Cir. 2012) ................................................ 13

*Worldwide Church of God v. McNair*
805 F.2d 888 (9th Cir. 1986) .......................................... *passim*

*Yost v. Forestiere*
51 Cal. App. 5th 509 (2020) ............................................ 32, 33

*Younger v. Harris*
401 U.S. 31 (1971)........................................................... *passim*

# TABLE OF AUTHORITIES
## (continued)

**Page**

**STATUTES**

United States Code, Title 28
§ 1291 ...............................................................................2
§ 1331 ...............................................................................2

California Code of Civil Procedure
§ 527.6 ....................................................................... *passim*
§ 527.6(i)............................................................................ 3, 4
§ 527.6(h).............................................................................. 35
§ 527.6(j)............................................................................... 32
§ 527.6(j)(1) ....................................................................... 3, 5
§ 527.6(u)..................................................................... 4, 10, 39
§ 527.9 .......................................................................... 5, 10, 39

California Outdoor Advertising Act ........................................... 23

California Penal Code
§ 27500 ....................................................................... 5, 10, 11, 39
§ 27540 ....................................................................... 5, 10, 11, 39
§ 29825 ............................................................................. 4,11, 39
§ 30305 .............................................................................. 4, 10, 39
§ 30306 ....................................................................... 5, 10, 11, 39
§ 30370 ....................................................................... 4, 10, 11, 39

Stats. 1978, ch. 1307, § 1, p. 4294 ................................................4

**CONSTITUTIONAL PROVISIONS**

California Constitution ..............................................................4

United States Constitution
First Amendment .............................................................. 23, 30
Second Amendment ...................................................... *passim*
Fifth Amendment............................................................. 10, 30

# TABLE OF AUTHORITIES
## (continued)

**Page**

**COURT RULES**

Ninth Circuit Rule 28-2.7 ..................................................................3

**INTRODUCTION**

Plaintiffs Richard and Miranda Wallingford have been engaged in a longstanding feud with their neighbor since 2013. The dispute has escalated over the years, with both parties ultimately filing for restraining orders against one another in Orange County Superior Court. After reviewing an extensive record and holding a trial, the Superior Court judge determined there was sufficient evidence for the entry of a three-year restraining order against each Plaintiff ("the orders"). The orders prohibit Plaintiffs from, among other things, owning or possessing firearms or ammunition while they are in effect.

Plaintiffs allege that the orders' prohibition on firearm possession is unconstitutional as applied to them. Rather than challenging the orders in state court, which still has oversight over enforcement of those orders, Plaintiffs have improperly filed a de facto appeal in federal court. The district court held that Plaintiffs' case is barred by the *Rooker-Feldman* doctrine because Plaintiffs are requesting review of a state court decision. Plaintiffs attempt to sidestep this doctrine by arguing that they are not challenging the underlying orders, only the constitutionality of the firearm prohibition contained within those orders, as it has been applied to Plaintiffs. However, the firearm prohibition *is part of* the orders, and Plaintiffs' claim

1

is that in issuing the restraining orders as to Plaintiffs, the state court lacked an adequate basis to prohibit Plaintiffs from possessing firearms. Thus, Plaintiffs' as-applied challenge to the firearm prohibition is a challenge to the application of the orders themselves to Plaintiffs, and that challenge is barred. Furthermore, because Plaintiffs' claim could have been presented in the state proceedings, it would have been proper for the district court to abstain from exercising jurisdiction under *Younger*. Because there are no circumstances under which Plaintiffs can challenge the underlying state court order, the district court properly dismissed Plaintiffs' claims without leave to amend. This Court should affirm.

## JURISDICTIONAL STATEMENT

With respect to all claims for relief in Plaintiffs' Complaint, the district court lacked subject matter jurisdiction under 28 U.S.C. § 1331 because federal district courts lack jurisdiction to hear both direct and de facto appeals of state court judgments. *See Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012); *Manufactured Home Communities Inc. v. City of San Jose*, 420 F.3d 1022, 1029 (9th Cir. 2005).

This Court has jurisdiction over this appeal in accordance with 28 U.S.C. § 1291.

2

## STATEMENT REGARDING ADDENDUM

Except for the following, all applicable statutes, etc., are contained in Plaintiffs' opening brief or addendum: Cal. Code Civ. Proc. §§ 527.6(i), (j)(1). (Ninth Circuit Rule 28-2.7).

## ISSUES PRESENTED

1. Whether the district court properly granted Defendant's Motion to Dismiss the Complaint based on the *Rooker-Feldman* doctrine because the Complaint is a de facto appeal of a final judgement of the Orange County Superior Court.

2. Whether Plaintiffs' Complaint could have been dismissed on the alternative independent ground of *Younger* abstention.

3. Whether the district court correctly dismissed the Complaint without granting leave to amend.

## STATEMENT OF THE CASE

### I. CALIFORNIA LAW GOVERNING RESTRAINING ORDERS

California Code of Civil Procedure section 527.6 sets forth a framework for people who suffer "harassment" to obtain a restraining order and injunction prohibiting further harassment. *Brekke v. Wills*, 125 Cal. App. 4th 1400, 1412 (2005). The statute was enacted "to protect the individual's right to pursue safety, happiness and privacy as guaranteed by

3

the California constitution." *Schraer v. Berkeley Property Owners' Assn*, 207 Cal. App. 3d 719, 729 (1989) (citing Stats. 1978, ch. 1307, § 1, p. 4294; Cal. Const., art. I, §1).

The statute was designed to supplement existing law by providing an expedited procedure for harassment victims. *Schraer*, 207 Cal. App. 3d at 730. All parties have access to due process protections before a permanent restraining order is issued, including the ability to submit evidence and testify at trial. Cal. Code Civil Proc. § 527.6(i). If a court finds "by clear and convincing evidence that unlawful harassment exists," then "an order shall issue prohibiting the harassment." *Id.* Notably, "[section 527.6] does not require the court to make a specific finding on the record that harassment exists, nor does it require specific findings of the statutory elements of harassment." *Ensworth v. Mullvain*, 224 Cal. App. 3d 1105, 1112 (1990). "The granting of the injunction itself necessarily implies" that the trial court found all the necessary elements of unlawful harassment. *Id.*

Both the California Code of Civil Procedure and Penal Code provide that a person subject to a restraining order "shall not own, possess, purchase, receive, or attempt to purchase or receive a firearm or ammunition while the protective order is in effect." Cal. Code Civ. Proc. § 527.6(u); Cal. Pen. Code §§ 29825, 30305, 30370 (prohibiting anyone subject to a restraining

order from possessing or purchasing firearms or ammunition); Cal. Pen.

Code §§ 27500, 27540, 30306 (prohibiting dealers from selling or delivering

firearms or ammunition to anyone subject to a restraining order). Prohibited

persons must relinquish any firearms they own or possess within 24 hours of

being served with the order. Cal. Code Civ. Proc. § 527.9. The court has

discretion to issue the restraining order for no more than five years, and the

order is "subject to termination or modification by further order of the court

either on written stipulation filed with the court or on the motion of a party."

*Id.* § 527.6(j)(1).

## II. THE STATE COURT LITIGATION AND RESTRAINING ORDERS AGAINST PLAINTIFFS

### A. First Petition for Restraining Order

Beginning in or around 2013, Plaintiffs had a dispute with their

neighbor, Jessica Nguyen, over a tree in front of their home. 4-ER-673

(Compl. ¶ 25). The dispute escalated, and on June 25, 2018, Ms. Nguyen

filed a petition for restraining order against Plaintiff Richard Wallingford.

*Id.* ¶ 26. In the petition, Ms. Nguyen made assault allegations against Mr.

Wallingford, claiming that he physically attacked her and made racial slurs

toward her. 2-ER-11-12. Specifically, Ms. Nguyen asserted that Mr.

Wallingford "pulled my hair, pushed me down to the ground," and said

5

"stupid immigrant, go back to your country." *Id*. The court granted the temporary restraining order, and Mr. Wallingford relinquished his firearms to a California licensed firearms dealer the following day pursuant to California Code of Civil Procedure § 527.6. 4-ER-660 (Decl. of Richard Wallingford, ¶ 12). Plaintiffs subsequently had several security cameras installed, which captured portions of Ms. Nguyen's property and recorded her statements. *Id*. ¶ 10; 4-ER-569, 10/21/19 Tr. 133:3-12.

The court held a hearing on August 17, 2018. 2-ER-95-163 (8/17/18 Tr.). At the hearing, Ms. Nguyen represented herself pro se. *Id.* At no point did Plaintiff Richard Wallingford—either in filings or during the court hearing—raise any constitutional challenges to the firearm prohibition in the restraining order. The court denied Ms. Nguyen's petition for restraining order. 4-ER-674 (Compl. ¶ 30).

## B. Second Petition for Restraining Order

The following year, on June 17, 2019, Plaintiff Miranda Wallingford filed a petition for a temporary restraining order against Ms. Nguyen, which was granted. 2-ER-176-183; 4-ER-675 (Compl. ¶ 37). Prior to the hearing, on September 5, 2019, Ms. Nguyen filed two new petitions seeking temporary restraining orders against both Plaintiffs. 2-ER-22-63. Ms. Nguyen alleged that the security cameras were positioned toward private

6

areas of her home and yard not visible to the public, which made her "feel unsafe in my own residence," and alleged that the cameras constituted harassment. 2-ER-24. As to Plaintiff Richard Wallingford, Ms. Nguyen re-alleged the 2018 assault, stating: "He grabbed my hair so hard that a patch came out. He then hit me on the back of my neck, and forced me to the ground. I had injuries to my knee, neck and hand." 2-ER-24. The court also granted Ms. Nguyen's petitions, and the next day, Plaintiff Richard Wallingford again transferred his firearms to a California licensed firearms dealer for storage. 4-ER-662, 675 (Compl. ¶¶ 23, 38).

The court held a trial over the course of two full days. 3-ER-373-429 (9/30/19 Tr.); 4-ER-437-638 (10/21/19 Tr.). At the trial, Ms. Nguyen testified to several incidents of harassment by Plaintiffs. She testified that the cameras installed by Plaintiffs pointed to private areas of her home. 4-ER-569, 10/21/19 Tr. 133:3-12. She testified that she did not know the cameras had audio capability that were recording what she said around the cameras, and that she was not directing any statements toward Plaintiffs. 4-ER-570, 10/21/19 Tr. 134: 7-13. She testified that Mr. Wallingford got angry at her for putting up a barrier on her side of the yard and threatened to call the city on her to report a code violation, and that Mrs. Wallingford did in fact call the city. 4-ER-573-574, 10/21/19 Tr. 137:23-138:5. She testified

that Mrs. Wallingford "came out and broke my plants" and "stuffed all the leaves that fell onto the common middle wall . . . down into my yard." 4-ER-575, 10/21/19 Tr. 139:12-16. She contested a number of Plaintiffs allegations, stating for example that while Plaintiffs accused her of spraying water on their cameras, she was actually watering her plants. 4-ER-620, 10/21/19 Tr. 184:3-11. She also stated that, while Plaintiffs complained her clothing was intentionally "vulgar," she was not intending to offend anyone by wearing short shorts and bending over while gardening. 4-ER-592, 10/21/19 Tr. 156:4-18. Ms. Nguyen testified that she suffered emotional harm and that she began taking "depression medication for anxiety" because, as she stated, "I don't have freedom in my own home anymore." 4-ER-617, 10/21/19 Tr. 181:1-7.

At the end of the trial, Plaintiffs' counsel requested that the court issue a ruling that same day. 4-ER-622, 10/21/19 Tr. 186:12-14. The court declined, stating:

> I am inclined to hear closing arguments and take the whole
> ball of wax under submission . . . . And then, you know,
> review my notes, which now consist of almost an entire
> yellow pad, as well as the declarations and responses and
> requests and so forth that the court has before it. It's going
> to take some effort. I can't just rule on the fly.

4-ER-624, 10/21/19 Tr. 188:1-9.

8

On November 1, 2019, the court issued a written judgment granting the restraining orders as to both Plaintiffs and Ms. Nguyen for a period of three years. 4-ER-640-642 (11/1/19 Minute Order). The court found that Plaintiffs' security cameras captured "private areas" of Ms. Nguyen's property, though it acknowledged that they had since been repositioned. *Id.* The court further held:

> The court finds Nguyen has established by clear and convincing evidence harassment by Miranda and Richard within the meaning of CCP § 527.6. The court finds Miranda and Richard engaged in a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses that person, and that serves no legitimate purpose; that there is a reasonable probability future [harassment would] occur absent a protective order; and that Nguyen has suffered substantial emotional distress and a reasonable person would suffer substantial emotional distress if subjected to Miranda's and Richard's conduct.

4-ER-641 (11/1/19 Minute Order).

Plaintiffs did not seek to modify, terminate, or appeal the restraining order, nor did they raise any constitutional claims in state court. Pl. Br. at 7. The restraining orders against both Plaintiffs expire on November 1, 2022. 4-ER-641(11/1/19 Minute Order).

## III. FEDERAL PROCEDURAL HISTORY

On August 30, 2021, Plaintiffs filed a complaint against Defendant Rob Bonta, in his official capacity as Attorney General of the State of California,

in federal district court, alleging that "California's complete restriction on firearm or ammunition possession and acquisition by any person subject to a civil restraining order, regardless of the basis for the order, is unconstitutional *as applied* to Plaintiffs." 4-ER-670 (Compl. ¶ 8); Pl. Br. at 8 (emphasis added). Specifically, Plaintiffs alleged that California Civil Procedure and Penal Code statutes instructing that a person subject to a restraining order "shall not own, possess, purchase, receive, or attempt to purchase or receive a firearm or ammunition while the protective order is in effect" violate the Second Amendment of the United States Constitution and the Due Process Clause, as applied to Plaintiffs. 4-ER-672 (Compl. ¶¶ 18-19); Cal. Code Civ. Proc. § 527.6(u); Cal. Pen. Code §§ 29825, 30305, 30370 (prohibiting anyone subject to a restraining order from possessing or purchasing firearms or ammunition); Cal. Pen. Code §§ 27500, 27540, 30306 (prohibiting dealers from selling or delivering firearms or ammunition to anyone subject to a restraining order). Plaintiffs also challenged California's requirement that prohibited persons must relinquish any firearms they own or possess within 24 hours of being served with the order. 4-ER-672 (Compl. ¶ 19); Cal. Code Civ. Proc. § 527.9. They sought "a judicial declaration that the Challenged Provisions violate Plaintiffs'

constitutional rights," as well as injunctive relief to prevent enforcement of the challenged statutes.  4-ER-678 (Compl. ¶¶ 54, 56).

On September 17, 2021, Plaintiffs filed a motion for preliminary injunction, requesting that the Court enjoin enforcement of California Penal Code sections 29825, 27500, 27540, 30306, and 30370 as applied to Plaintiffs pending resolution of their case on the merits.  Pl. Br. at 8.  On October 4, 2021, Defendant filed a motion to dismiss the case for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* and *Younger* doctrines.  *Id.*

On October 28, 2021, the district court granted Defendant's motion to dismiss.  1-ER-2-5 (Dist. Ct. Order).  It noted that despite Plaintiffs' argument that the state court did not make findings supporting issuance of a restraining order, "under California law, a court granting a restraining order 'necessarily implies that the trial court found [the defendant] knowingly and willfully engaged in a course of conduct that seriously alarmed, annoyed, or harassed' the petitioning party."  1-ER-4 (quoting *Ensworth*, 224 Cal. App. 3d at 1112).  The court held: "To the extent that Plaintiffs seek to challenge the state court's findings of fact, and the state court's legal conclusion that Plaintiffs were therefore prohibited from owning firearms, they are effectively requesting review and possible reversal of state court rulings."  1-

ER-4-5.  The court concluded that because "'the injury alleged by the federal plaintiff resulted from the state court judgment itself,' this Court has no jurisdiction to undertake such a review."  1-ER-5 (quoting *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003)).  The court granted the motion to dismiss in accordance with the *Rooker-Feldman* doctrine, and it did not address Defendant's *Younger* argument.  *Id.*  The court also noted that while "[t]he Ninth Circuit has a liberal policy favoring amendments . . . a court need not grant leave to amend when permitting a plaintiff to amend would be an exercise in futility."  1-ER-2 (citing *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987).  Accordingly, the court granted the motion to dismiss with prejudice.  1-ER-5.  The court did not explicitly rule on the motion for preliminary injunction.

On November 29, 2021, Plaintiffs filed a Notice of Appeal.  4-ER-682.

## STANDARD OF REVIEW

This Court reviews a dismissal for lack of subject matter jurisdiction de novo.  *See Prather v. AT&T, Inc.*, 847 F.3d 1097, 1102 (9th Cir. 2017).  "[A] district court's jurisdictional determination under the *Rooker-Feldman* doctrine" also receives de novo review.  *Benavidez v. Cty. of San Diego*, 993 F.3d 1134, 1141 (9th Cir. 2021).  This Court can affirm on any basis fairly

supported by the record. *See Thompson v. Paul*, 547 F.3d 1055, 1058-59 (9th Cir. 2008).

Dismissal without leave to amend is appropriate when the court "determines that the pleading could not possibly be cured by the allegation of other facts." *Watison v. Carter*, 668 F.3d 1108, 1117 (9th Cir. 2012) (citation omitted).

## SUMMARY OF THE ARGUMENT

The district court correctly held that Plaintiffs' as-applied constitutional challenge is barred under the *Rooker-Feldman* doctrine. That challenge is a collateral attack on, and a de facto appeal of, a state court judgment. In issuing the restraining orders, the state court necessarily found that Plaintiffs' conduct warranted the issuance of the restraining orders, including the provisions containing firearm prohibitions. Plaintiffs' attempt to relieve themselves of those firearm prohibitions by challenging the state court's fact-specific determinations in federal court must fail.

The district court's decision may also be affirmed based on *Younger* abstention, which permits district courts to abstain from hearing cases involving federal issues that could have already been litigated in state forums. Plaintiffs could have raised this claim in state court, where their proceedings are ongoing. The state has an important interest in enforcing

13

the judgments of its courts, and federal intervention would undermine the state court's judgment.  Thus, abstention is appropriate.

Finally, the district court properly dismissed the case without leave to amend.  Because the federal courts lack subject matter jurisdiction over any challenge to the state court judgment that would be based on facts specific to Plaintiffs, any attempt to amend the complaint in this regard would be futile. This Court should affirm the district court's judgment in all respects.

## ARGUMENT

## I. THE DISTRICT COURT PROPERLY HELD THAT THE *ROOKER-FELDMAN* DOCTRINE BARS CONSIDERATION OF PLAINTIFFS' CLAIMS

Plaintiffs assert that the state court did not make findings to support its determination that the firearm prohibition was appropriately imposed as part of the restraining orders.  Their assertion challenges the state court's decision to issue restraining orders containing the firearm prohibition.  And such challenges to a state court judgment are barred.

The *Rooker-Feldman* doctrine "instructs that federal district courts are without jurisdiction to hear direct appeals from the judgments of state courts."  *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012); *see also Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415-16 (1923); *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 486-87 (1983).  "The

14

purpose of the [*Rooker-Feldman*] doctrine is to protect state judgments from collateral federal attack. Because district courts lack power to hear direct appeals from state court decisions, they must decline jurisdiction whenever they are 'in essence called upon to review the state court decision.'" *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001) (quoting *Feldman*, 460 U.S. at 482 n.16).

The doctrine bars a district court from exercising jurisdiction not only over direct appeals, but also over the "de facto equivalent" of an appeal. *Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003). It also bars federal courts from adjudicating issues that are "inextricably intertwined" with those adjudicated by the state court. *Feldman*, 460 U.S. at 486-87. Importantly, the *Rooker-Feldman* doctrine "applies even when the challenge to the state court decision involves constitutional issues." *Worldwide Church of God v. McNair*, 805 F.2d 888, 891 (9th Cir. 1986).

## A. Plaintiffs' Federal Action Is a De Facto Appeal of the State Court Judgment and Is Therefore Barred

The *Rooker-Feldman* doctrine prohibits "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic*

*Industries Corp.*, 544 U.S. 280, 284 (2005). Here, Plaintiffs received an adverse ruling in state court, and they subsequently sought relief from one part of that ruling—the firearm prohibitions—in federal court. Because they are directly challenging the state court's orders, *Rooker-Feldman* bars their claims.

### 1. Plaintiffs Pursue a De Facto Appeal by Challenging the State Court's Decision to Impose Restraining Orders Containing the Firearm Prohibition

Plaintiffs challenge the imposition of the firearm prohibition as part of the restraining orders, arguing that the lack of an adequate factual basis for the firearm prohibition violates the Second Amendment and due process. Plaintiffs frame this as a constitutional challenge untethered from the state court judgment, but it is indisputable that Plaintiffs seek to overturn the state court's imposition of the firearm prohibition as part of the restraining orders issued against them. This makes Plaintiffs' federal lawsuit a prohibited de facto appeal of a state court judgment.

Although Plaintiffs assert throughout their brief that they are not challenging the state court judgment,[1] a challenge to one portion of the state

---

[1] See Pl. Br. at 12-13 ("The Wallingfords do not contend that the state court's decision to impose restraining orders on them was unlawful or otherwise improper. Nor do they challenge the state court's underlying

16

court judgment still constitutes a challenge to the judgment. The firearm

prohibition is plainly specified on the face of the orders, in bold language, in

two different locations. 2-ER-53, 55, 59, 61. Paragraph seven of the

temporary restraining orders, which were made permanent with the entry of

the restraining orders, states: "**No Guns or Other Firearms and**

**Ammunition.**" 2-ER-53, 59 (emphasis in original). The admonition is

reiterated at the other end of the orders: "**You Cannot Have Guns or**

**Firearms**." 2-ER-55, 61 (emphasis in original). Thus, in asking a federal

court to invalidate the portion of the state court judgment containing the

firearm prohibition, Plaintiffs are doing exactly what they claim not to do.

The firearm prohibition *is itself part of the orders*.

Moreover, the state court judgment reflects a determination that the

standards for imposition of a restraining order—which includes the firearms

prohibition—were satisfied. This is the determination that Plaintiffs

improperly seek to contest in federal court. This is made plain by the

considerable effort Plaintiffs make to point out what they believe to be

---

findings."); *id.* at 13 ("they do not ask the federal court to overturn those
orders"); *id.* ("whether it was a legal error to issue the restraining orders
against the Wallingfords in the first place is not a question the Wallingfords
posed to the district court"); *id.* at 15 ("They do not allege that the state court
misapplied applicable legal standards"); *id.* at 16, n.3 ("they do not seek
relief from the restraining orders they are bound by").

17

factual deficiencies in the state court's judgment, deficiencies that ostensibly give rise to Second Amendment and due process violations. Pl. Br. at 6-7, 15-16. They argue that because the state court judgment did not explicitly state that Plaintiffs posed a violent threat to their neighbor, the ruling must have been based on nothing more than the camera placement—and so lacked a sufficient basis for prohibiting firearm possession. Pl. Br. at 15-16 (speculating that the court "ostensibly" issued the restraining orders to prevent Plaintiffs from moving the cameras again).[2]

Plaintiffs therefore object to the merits of the state court's decision to impose restraining orders that include firearms prohibitions. And in that way, their federal action is a direct challenge to the state court's decision. To the extent that Plaintiffs would have a federal court overturn the state court's rulings, or have a federal court determine that the state court's rulings were erroneous, Plaintiffs' claims are barred under *Rooker-Feldman*.

---

[2] The state court was not required to make specific findings as to the basis of its ruling. Section 527.6 "does not require a statement of the court's findings of fact," it "does not require the court to make a specific finding on the record that harassment exists, nor does it require specific findings of the statutory elements of harassment." *Ensworth*, 224 Cal. App. 3d at 1112. "The granting of the injunction itself necessarily implies that the trial court found [the defendant] knowingly and willfully engaged in a course of conduct that seriously alarmed, annoyed, or harassed" plaintiff, and that plaintiff "actually suffered emotional distress." *Id.*

*See Hanson v. Firmat*, 272 Fed.Appx. 571, 572 (9th Cir. 2008) (*Rooker-Feldman* doctrine barred Section 1983 action challenging state child custody proceedings and constitutionality of state child custody statutes); *Sareen v. Sareen*, 356 Fed.Appx. 977 (9th Cir. 2009) (*Rooker-Feldman* doctrine barred Section 1983 action alleging constitutional violations in connection with child custody proceedings because it was a "forbidden de facto appeal" of a state court decision).

Furthermore, whether the state court ruled correctly or incorrectly is of no concern here. All that matters is that Plaintiffs allege an injury that stems from the state court judgment. "The *Rooker-Feldman* doctrine does not require us to determine whether or not the state court fully and fairly adjudicated the constitutional claim." *Bianchi*, 334 F.3d at 900. "If the injury alleged resulted from the state court judgment itself, *Rooker-Feldman* directs that the lower federal courts lack jurisdiction." *Id.* at 901 (citation omitted). Indeed, even if the state court's ruling was based on a factual error, Plaintiffs still cannot challenge such a ruling in federal court. *Rooker-Feldman* bars an action when "the plaintiffs' injury stemmed from the state judgment—an erroneous judgment, perhaps, entered after procedures said to be unconstitutional, but a judgment nonetheless." *Bianchi*, 334 F.3d at 901 (citation omitted). Because Plaintiffs' claims are predicated on the injury

allegedly resulting from the purported unconstitutionality of the state court judgment, *Rooker-Feldman* bars Plaintiffs from seeking relief in federal court.

### 2.   Plaintiffs' As-Applied Challenge Is Not a General Constitutional Challenge

While a federal court may review a "general constitutional challenge that does not require review of a final state court decision in a particular case," it "does not have jurisdiction to review constitutional challenges to a state court's decision." *Dubinka v. Judges of Superior Court of State of Cal. for County of Los Angeles*, 23 F.3d 218 (9th Cir. 1994). "If, in order to resolve the claim, the district court would have to go beyond mere review of the state rule as *promulgated,* to an examination of the rule *as applied* by the state court to the particular factual circumstances of [the plaintiff's] case, then the court lacks jurisdiction." *Worldwide Church of God v. McNair*, 805 F.2d 888, 892 (9th Cir. 1986) (citations omitted) (emphasis in original).

There is no dispute that Plaintiffs have brought an as-applied challenge. 4-ER-668, 670 (Compl. ¶¶ 6,8); Pl. Br. at 13 (asking the court to enjoin "the state-law firearms prohibitions that attach to all restraining orders because they are unconstitutional *as applied* to the Wallingfords") (emphasis added). As-applied challenges necessarily hinge on findings of fact, and this simple

truth defeats Plaintiffs' case. As they are required to do for an as-applied challenge, Plaintiffs rely heavily on the application of the law to the facts of their specific case to argue that the portion of the orders containing the firearm prohibitions should not stand as applied to them only. Pl. Br. at 15-16, 25. They allege that "the state court found only that the placement of security cameras had, at first, constituted 'harassment' of Ms. Nguyen. It did *not* find that the Wallingfords posed any violent threat to their neighbor (or anyone else for that matter)." Pl. Br. at 15. Plaintiffs go on to speculate: "The court also held that Ms. Wallingford's repositioning of her cameras was 'acceptable,' ostensibly issuing the restraining orders simply to prevent either of the Wallingfords from returning them to their earlier 'harassing' positions." Pl. Br. at 15-16. In essence, they assert that based on these facts, the state court did not have grounds to impose the portion of the orders containing the firearm prohibition on them, and they ask this Court to overturn the state court's findings as to them only. While they claim that the state court findings "need not be disturbed," invalidating the portion of the orders containing the firearm prohibition would necessarily be invalidating the court's finding that the restraining orders were justified. That is precisely what is barred.

The *Feldman* case itself establishes the pivotal jurisdictional distinction between facial and as-applied challenges.  In *Feldman*, the plaintiffs brought both facial and as-applied constitutional challenges to a D.C. Bar rule. *Feldman,* 460 U.S. at 487.  The Supreme Court held that the district court *did not* have jurisdiction over plaintiffs' as-applied challenge, but it *did* have jurisdiction over the general constitutional challenge.  *Id.*

In line with *Feldman,* this Circuit has consistently distinguished between facial and as-applied challenges in the jurisdictional context.  In *Dubinka*, the plaintiffs challenged the general constitutionality of California's Proposition 115.  This Court held that the *Rooker-Feldman* doctrine did not bar the district court from hearing the case because plaintiffs' complaint did "not require the district court to review a state court decision," rather, it was a "facial challenge[] to the constitutionality of Proposition 115." *Dubinka*, 23 F.3d 218 at 222.  In contrast, in *Worldwide Church of God v. McNair*, 805 F.2d 888, 889 (9th Cir. 1986), a wife sued her husband for defamation in state court, and a jury found in her favor.  The husband challenged the verdict in district court, arguing that his allegedly defamatory statements against his wife were constitutionally protected.  This Court held that *Rooker-Feldman* barred the claims because "the district court would be required to review the state court's decision regarding application

22

of the plaintiff's federal constitutional theories to the particular factual circumstances of this case." *Id*. The same is true here.

Plaintiffs' reliance on *Maldonado v. Harris* is misplaced. Mr. Maldonado sought to use a billboard he owned adjacent to a freeway for advertising. However, the California Outdoor Advertising Act generally "prohibits advertisements along landscaped freeways." *Maldonado v. Harris*, 370 F.3d 945, 948 (9th Cir. 2004). Maldonado persisted in the prohibited advertising, and after a bench trial, the state court entered judgment against him. *Id.* Maldonado did not raise any constitutional claims in state court, but he filed in district court alleging that the statute violated the First Amendment, both on its face and as-applied. *Id.* This Court held that Maldonado's claim was not barred by *Rooker-Feldman* because he was "not alleging as a legal wrong an erroneous decision from the state court." *Id.* It noted that, for *Rooker-Feldman* to apply, "a plaintiff must seek not only to set aside a state court judgment; he or she must also allege a legal error by the state court as a basis for that relief." *Id.* (citation omitted).

Here, Plaintiffs are alleging that the state court made a legal error when it imposed the restraining orders because, they argue, the facts in their case did not warrant a firearm prohibition. For Plaintiffs to succeed, this Court

23

would have to determine that the state court erred when it found that the facts warranted a restraining order including a firearm prohibition. This is not a facial challenge of the law generally; it is an as-applied, fact-specific challenge, and it is prohibited.

### B. Plaintiffs' Federal Action Is Barred Because It Is "Inextricably Intertwined" with the State Court Judgment

Enshrined in the *Rooker-Feldman* doctrine is the proposition that a district court may not adjudicate issues that are "inextricably intertwined" with issues adjudicated in state court. *Feldman*, 460 U.S. at 486-87. Claims are "inextricably intertwined" if "the relief requested in the federal action would effectively reverse the state court's decision or void its ruling." *Fontana Empire Ctr., LLC v City of Fontana,* 307 F.3d 987, 992 (9th Cir. 2002) (quotation omitted). While the doctrine does not prevent plaintiffs from bringing "independent claims," if the constitutional claims presented to a district court are inextricably intertwined with the state court's judgment, the district court is "in essence being called upon the review a state court decision," which it "may not do." *Feldman*, 460 U.S. at 482 n.16.

A claim that is a de facto appeal is barred outright; it need not undergo an "inextricably intertwined" analysis. *Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003). If a court finds that a claim raised in federal court is barred

because it is a de facto appeal, it must then examine if any *additional* claims

asserted in federal court are "inextricably intertwined" with the barred de

facto appeal, and therefore also barred. *Id.* As this Court explained:

> [t]he premise for the operation of the "inextricably
> intertwined" test . . . is that the federal plaintiff is seeking to
> bring a forbidden de facto appeal. The federal suit is not a
> forbidden appeal because it is "inextricably intertwined"
> with something. Rather, it is simply a forbidden de facto
> appeal. Only when there is already a de facto appeal in
> federal court does the "inextricably intertwined" test come
> into play: Once a federal plaintiff seeks to bring a forbidden
> de facto appeal, as in *Feldman*, the federal plaintiff may not
> seek to litigate an issue that is "inextricably intertwined"
> with the state judicial decision from which the forbidden de
> facto appeal is brought.

*Id.* Simply put, if a claim is a de facto appeal, it is barred by the *Rooker-*

*Feldman* doctrine, and the analysis is over. Additional claims related to the

de facto appeal may also be barred if they are "inextricably intertwined"

with the de facto appeal.

## 1. Plaintiffs' Claim Is Barred Outright Because It Is a De Facto Appeal

Here, because both of the claims in the Complaint challenge the

underlying state court judgment as-applied, this is a de facto appeal, and the

analysis ends—*Rooker-Feldman* bars their claims. Plaintiffs attempt to

confuse the issue, claiming that their two causes of action "both target and

challenge the constitutionality of the Challenged Statutes." Pl. Br. at 17.

However, their attempt to dress up their claims as anything other than a de facto appeal is defeated by their own pleadings, where they make clear that this is an as-applied challenge. 4-ER-677 (Compl. ¶ 52) ("Plaintiffs contend that the Challenged Provisions, as applied to Plaintiffs, infringe on their rights"); *see also* Pl. Br. at 20 (referring to Plaintiff's claims as "as applied"). Plaintiffs assert that they "do not ask the federal court to overturn [the restraining] orders," only to enjoin the state-law firearm prohibitions that "attach to all restraining orders." Pl. Br. at 13. But their own pleadings confirm that this is not a general constitutional challenge against "all restraining orders," it is a fact-specific, as-applied challenge to the state court's finding that a firearm prohibition was warranted in their case. For that reason, Plaintiffs' challenge is barred.

## 2. Plaintiffs' Claim Is Inextricably Intertwined with the State Court Judgment and Therefore Barred

Plaintiffs challenge the underlying facts of a state court judgment, and their federal court claim is therefore a prohibited de facto appeal. To the extent Plaintiffs try to argue it is not a direct or de facto appeal because they are challenging the constitutionality of the law, they are similarly prohibited from bringing their claim because it is "inextricably intertwined" with the state court judgment.

26

The *Rooker-Feldman* doctrine "applies even when the challenge to the state court decision involves constitutional issues." *Worldwide Church of God,* 805 F.2d at 891. As this Court has explained:

> It is immaterial that [Plaintiff] frames his federal complaint as a constitutional challenge to the state courts' decisions rather than as a direct appeal of those decisions. The *Rooker-Feldman* doctrine prevents lower federal courts from exercising jurisdiction over any claim that is "inextricably intertwined" with the decisions of a state court, *even where the party does not directly challenge the merits of the state court's decision but rather brings an indirect challenge based on constitutional principles*. Thus, *Rooker-Feldman* bars federal adjudication of any suit in which a plaintiff alleges an injury based on a state court judgment and seeks relief from that judgment, not only direct appeals from a state court's decision.

*Bianchi*, 334 F.3d at 900, n.4 (emphasis added) (citations omitted).

Plaintiffs are challenging the factual findings of a state court judgment, and their case falls squarely into the category of prohibited de facto appeals. But even if it did not, there is no question that their challenge to the firearm prohibition in the state judgment is "inextricably intertwined" with the decisions of the state court, and for that additional reason, it is prohibited.

### 3. Whether or Not the Constitutional Issue Was Litigated in State Court Is Irrelevant

Plaintiffs put forth the misguided assertion that their claims are not barred because the "firearms prohibition was neither litigated nor reasonably

27

able to be litigated in the restraining order proceedings." Pl. Br. at 20. This is a red herring. Plaintiffs rely on *Robinson v. Ariyoshi*, 753 F.2d 1468 (9th Cir. 1985), for what they assert to be the proposition that "*Rooker-Feldman* does not bar a plaintiff's federal action if the plaintiff's prior state court action did not consider the plaintiff's federal constitutional claims." Pl. Br. at 18. However, *Robinson* was decided "under the doctrinal umbrella of res judicata," not *Rooker-Feldman*. *Robinson*, 753 F.2d at 1473. As this Court has established, "the issue of claim preclusion [under res judicata] is distinct from the *Rooker-Feldman* question." *Maldonado*, 370 F.3d at 950. "[U]nlike res judicata, the *Rooker-Feldman* doctrine is not limited to claims that were actually decided by the state courts, but rather it precludes review of all state court decisions[,] in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *Bianchi*, 334 F.3d at 901 (internal quotations and citations omitted).[3]

---

[3] Furthermore, the *Robinson* court explicitly stated that the reason plaintiffs in that case did not satisfy the res judicata requirement of full and fair opportunity to litigate was because "the state court demonstrated inability or unwillingness to protect federal rights" when it refused to consider plaintiff's petition for rehearing. *Id.* at 1473. The same is not true here, where Plaintiffs never raised their constitutional claim, nor did they undertake any avenues of relief available to them in state court.

28

Plaintiff's reliance on *Kougasian v. TMSL, Inc.*, for the proposition that their claim is not precluded, is similarly misplaced. In *Kougasian*, the plaintiff was seeking to set aside a state court judgment obtained by extrinsic fraud. 359 F.3d 1136, 1141 (9th Cir. 2004). Though the causes of action were previously adjudicated by the state courts, they were not barred by *Rooker-Feldman* because plaintiff was alleging wrongful acts by the *defendants*, not legal errors by the state. Here, Plaintiffs are not alleging extrinsic fraud by a defendant. Rather, they are trying to directly overturn a legal determination of the state court. *Rooker-Feldman* prohibits this.

Whether or not the constitutional issue was "reasonably able to be litigated" in state court is irrelevant. However, even if it were, Plaintiffs' assertion that there is "no procedure for litigating a constitutional challenge to the firearm restriction in the context of the restraining order proceedings" is simply not true. Pl. Br. at 19. State litigants have brought federal constitutional challenges, including Second Amendment challenges, in the context of restraining orders. *See Mitchell v. Mitchell*, No. A131632, 2012 WL 2510051 at *5 (Cal. Ct. App. 2012) (plaintiffs argued on appeal that section 526.7 restraining order violated Second Amendment); *Diaz-Stellwagon v. White*, No. A126747, 2010 WL 4816156 at *7 (Cal. Ct. App. 2010) (plaintiff argued on appeal that domestic violence restraining order

29

violated Second Amendment); *R.D. v. P.M.*, 202 Cal.App.4th 181, 191

(2011) (plaintiffs argued on appeal that section 527.6 restraining order

violated First Amendment); *Parisi v. Mazzaferro,* 5 Cal.App.5th 1219, 1228

(2016) (plaintiffs argued on appeal that section 527.6 restraining order

violated First Amendment); *People v. Flores*, 169 Cal.App.4th 568, 573-577

(2008) (defendant argued on appeal that state firearm conviction violated the

Second Amendment); *People ex rel. Gallo v. Acuna*, 14 Cal.4th 1090, 1122

(1997) (holding that preliminary injunction violated First and Fifth

Amendment).   Plaintiffs could have brought their federal challenge in state

court, but they neglected or chose not to do so.

## II. THE DISTRICT COURT COULD HAVE ABSTAINED UNDER *YOUNGER*

The central premise of the *Younger* abstention doctrine is that

"[i]nterests of comity and federalism . . . counsel federal courts to abstain

from jurisdiction whenever federal claims have been or could be presented

in ongoing state judicial proceedings that concern important state interests."

*Hawaii Housing Auth. v. Midkiff,* 467 U.S. 229, 237 (1984).  *Younger*

abstention is required "when certain civil proceedings are pending, if the

State's interests in the proceedings are so important that the exercise of the

federal judicial power would disregard the comity between the States and

National Government." *Penzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 (1987); *see also District Property Associates v. District of Columbia*, 743 F.2d 21 (D.C. Cir. 1984) ("[G]iven the obligation of state and local courts (no less than federal courts) to enforce the constitution and federal laws, the federal plaintiff should be forced to raise his constitutional or other federal defenses to the state's action before the state or local court in which he is already a party").

A federal court should abstain when the state proceedings: (1) are ongoing, (2) implicate an important state interest, (3) allow litigants to raise federal challenges, and (4) are quasi-criminal enforcement actions *or* involve a state's interest in enforcing the orders and judgments of its courts. *Readylink Healthcare, Inc., v. State Compensation Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014). If these four threshold elements are met, the court must determine whether the federal action would have the practical effect of enjoining the state proceeding. *Id.* Here, all factors are met.[4]

## A.   The State Court Proceeding Is Ongoing

---

[4] Though the district court did not address the *Younger* doctrine in its dismissal, all elements of the *Younger* analysis were properly presented to the court, notwithstanding Plaintiffs' assertion to the contrary. Pl. Br. 22, 29. And this Court may affirm on any basis fairly supported by the record. *See Thompson*, 547 F.3d at 1058-59.

Plaintiffs make the curious argument that their state action "is not ongoing." Pl. Br. at 23. However, they do not cite a single case supporting this assertion, and they acknowledge that they are currently subject to the terms of the restraining orders. 4-ER-677 (Compl. ¶ 48). Indeed, if they were not still bound by state court orders, their alleged grievance would not exist. There is also no dispute that the state court continues to maintain jurisdiction over their case, and Plaintiffs have the ability right now to file a motion to modify the orders in state court, under section 527.6(j) of the California Code of Civil Procedure. *Yost v. Forestiere*, 51 Cal. App. 5th 509, 526 (2020) (holding that trial courts' potential bases for modifying civil harassment restraining orders extend further than the enumerated bases listed in section 533 of the California Code of Civil Procedure, which include material change in the facts, change in the law, or the ends of justice). Plaintiffs assert, again without authority, that "because there are no pending hearings or filing deadlines . . . . The matter is over." Pl. Br. at 23. But California's statute does not limit a superior court's ability to terminate or modify a restraining order simply because there are no pending hearings or deadlines. The statute plainly says, without such limitation, that a restraining order is "subject to termination or modification by further order of the court either on written stipulation filed with the court or on the motion

32

of a party." Code Civ. Proc., § 527.6. And courts can consider motions

years after restraining orders were first issued. E.g., *Yost*, 51 Cal. App. 5th

at 530 (reversing denial of request to modify civil harassment restraining

order that was brought three years after it was issued).

To find that Plaintiffs do not have an ongoing case in state court would

be to find that they are no longer subject to the state court orders, yet

Plaintiffs acknowledge that they remain subject to the orders until they

expire. There is no dispute the orders are still in effect, so this prong of

*Younger* is satisfied.

### B. The State Proceeding Implicates Important State Interests

The state court proceedings here clearly implicate important state

interests. Whether a proceeding implicates important state interests "is

measured by considering its significance broadly, rather than by focusing on

the state's interest in the resolution of an individual case." *Baffert v. Cal.*

*Horse Racing Bd.*, 332 F.3d 613, 618 (9th Cir. 2003); *AmerisourceBergen*

*Corp. v. Roden*, 495 F.3d 1143, 1150 (9th Cir. 2007). Plaintiffs are subject

to restraining orders in California state court, as specified by a California

statute. California has an interest in enforcing that statute, and it has an

interest in furthering the goals tied to the implementation of the statute. *See*

33

*Gilbertson v. Albright*, 381 F.3d 965, 977 (9th Cir. 2004) (en banc) ("[J]udicial proceedings or disciplinary proceedings which are judicial in nature are the type of proceeding that does implicate an important state interest.").

Plaintiffs entirely misconstrue the meaning of "important state interest." *Younger* abstention is concerned with "federal court interference with state court proceedings." *Younger v. Harris*, 401 U.S. 31, 43 (1971). The important state interest here is California's interest in imposing and enforcing restraining orders issued under its laws, not whether or how they apply to Plaintiffs. The Supreme Court "repeatedly has recognized that the States have important interests in administering certain aspects of their judicial systems." *Penzoil Co.*, 481 U.S. at 12-13. Because California clearly has an interest in administering these proceedings, this element is also satisfied.

### C. Plaintiffs Had a Meaningful Opportunity to Raise a Constitutional Challenge

Because Plaintiffs had the opportunity to appeal and raise their constitutional claim in state court, just as every litigant does, it is improper for them to instead raise this claim here. "Abstention is based on the theory that '[t]he accused should first set up and rely upon his defense in the state

courts, even though this involves a challenge to the validity of some statute, unless it plainly appears that this course would not afford adequate protection.'" *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982) (quoting *Younger v. Harris*, 401 U.S. at 45). The burden rests on Plaintiffs to show that they were "barred from raising [their] federal claims in the [state court] action." *Lebbos v. Judges of Superior Court,* 883 F.2d 810, 815 (9th Cir. 1989).

Plaintiffs attempt to explain why they did not raise their challenge in state court in a number of ways, all of which fail. First, they cite California Code of Civil Procedure § 527.6, subd. (h), to support their claim that there is "*no* procedural mechanism for raising a constitutional challenge in these proceedings." Pl. Br. at 26 (emphasis in original). However, section 527.6(h) simply gives a party the express ability to file a response that denies alleged harassment alleged in a petition or to file a cross-petition; neither this nor any other subdivision prohibits a constitutional challenge. Indeed, parties frequently bring federal constitutional challenges in California state court, including in cases involving restraining orders. *See* Section I.B.2, *supra*, (listing cases where state court litigants brought federal constitutional challenges in state court). Clearly, Plaintiffs were free and able to raise their constitutional challenge in state court.

Plaintiffs cite *Bookout v. Nielsen*, 155 Cal. App. 4th 1131, 1137 (2007) for the proposition that even if they could appeal the orders in state court, they would have been "limited to arguing that the lower court's factual findings were unsupported by substantial evidence." Pl. Br. at 27. But Plaintiffs are simply reciting the standard for reviewing section 527.6 restraining orders on appeal, as there is nothing in *Bookout* or elsewhere that prohibits constitutional challenges on appeal. Further, as noted in Section I, *supra*, because the firearm restriction is part of the restraining orders, Plaintiffs would necessarily be challenging the state court's findings of fact on appeal. Nothing about this is unusual or negates the well-established procedural avenue for bringing a constitutional challenge on appeal.

Plaintiffs next assert that in order "to challenge the constitutionality of the firearm restrictions placed on them, [Plaintiffs] would have had to have filed a new case entirely." Pl. Br. at 27. This is simply wrong. Typically, "when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Penzoil Co.,* 481 U.S. at 15. Plaintiffs have not attempted to present their claims in state court, nor have they presented authority that they are barred from doing so. Moreover, voluminous authority demonstrates

36

that federal constitutional challenges may be raised in state court. For each of these reasons, Plaintiffs' argument fails.

Plaintiffs' assertion that they are not required to exhaust their remedies, Pl. Br. at 26, is a strawman argument that avoids the relevant inquiry. The question is not whether they exhausted their remedies, it is whether the federal plaintiff "had a full and fair opportunity to litigate his or her federal claims during the ongoing state proceeding." *Benavidez v. Eu*, 34 F.3d 825, 831 (9th Cir. 1994) (citing *Ohio Civil Rights Comm'n, Inc*., 477 U.S. 619, 627 (1986)). In other words, it is not whether they *exhausted* their avenues for relief, it is whether avenues for relief *existed.* Plaintiffs did not avail themselves of an appeal, but they could have. This ends the inquiry.

### D. The State Proceeding Involves the State's Interest in Enforcing the Orders and Judgments of Its Courts

Federal courts generally abstain when asked to enjoin a party from enforcing a state court judgment because the state has an interest in ensuring "that its orders and judgments are not rendered nugatory." *Penzoil Co.,* 481 U.S. at 13-14. Federal injunctions would "challenge the very process" by which the state court judgment was obtained. *Id.* at 14. This includes state court proceedings ancillary to enforcement of a judgment. It is sufficient that the federal claims have been or could be presented in the state

37

proceedings. *Lebbos,* 883 F.2d at 815 (*Younger* abstention was proper in unlawful detainer proceeding by state court receiver as part of effort to enforce judgment).

There is no dispute that the restraining orders here are a judgment of a court in California. 4-ER-640-642. As detailed above (*supra* at Section II.B), the state has an interest in enforcing the judgments of its courts. *Penzoil Co.,* 481 U.S. at 13 ("So long as . . . challenges relate to pending state proceedings, proper respect for the ability of state courts to resolve federal questions presented in state-court litigation mandates that the federal court stay its hand."). Relying on *Rynearson v. Ferguson*, 903 F.3d 920 (9th Cir. 2018), Plaintiffs claim that this case does not impact California courts' "ability to perform their judicial functions." Pl. Br. at 29. However, the plaintiff in *Rynearson* was making a general constitutional challenge to Washington state's cyberstalking law. *Rynearson,* 903 F.3d at 927. ("Here, Rynearson's challenge is solely to the constitutionality of the criminal statute."). *Younger* abstention was not appropriate in that case because the plaintiff was not challenging his particular restraining order in federal court, so his "suit did not involve Washington's interest in enforcing the orders and judgments of its courts." *Id.* In contrast, Plaintiffs are directly challenging a state court judgment through an as-applied challenge based on the specific

facts of their case.  They are specifically seeking a material change in the terms of their restraining orders, which would disrupt the enforcement of the state court order.  Thus, this *Younger* factor is met.

### E. Federal Intervention Would Have the Practical Effect of Enjoining the State Proceeding

As discussed in Section I, *supra*, the firearm prohibition is part of the state court orders.  Thus, nullifying this prohibition would necessarily mean enjoining the orders.  Indeed, that is exactly the relief Plaintiffs seek in their Complaint: "Plaintiffs pray that the Court: . . . (3) Issue an injunction enjoining Defendants and their officers, agents, and employees from enforcing California Penal Code sections 29825, 30305, 27500, 27540, 30306, and 30370, and California Code of Civil Procedure sections 527.6(u) and 527.9, against Plaintiffs."  4-ER-680 (Compl.).  Not only would intervening have the "practical effect" of enjoining the state proceeding, *an injunction is the stated goal*.

Plaintiffs claim that *Younger* should not apply because they suffer irreparable harm, but irreparable harm is not one of the five considerations in the *Younger* analysis.  *ReadyLink*, 754 F.3d at 759; *see also* Pl. Br. at 22 (listing the five *Younger* factors, which do not include irreparable harm).  Even if irreparable harm were a consideration, it is difficult to take Plaintiffs

39

at their word that this harm is "irreparable-if-only-for-a-minute," Pl. Br. At 30, because they did not file this case until the restraining orders had been in place for almost two years. The orders were imposed on November 1, 2019. Plaintiffs did not file this case in district court until August 30, 2021. 4-ER-688 (Federal Docket). Indeed, the orders will expire, rendering the case moot, in just 8 months. This delay in filing is one of Plaintiffs' own making, and it defeats any assertion that they are suffering irreparable harm.

## III. THE DISTRICT COURT PROPERLY DISMISSED THE CASE WITHOUT LEAVE TO AMEND

A district court's denial of leave to amend is reviewed under the abuse of discretion standard. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). "Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile." *Id.* When a claim is barred by *Rooker-Feldman*, dismissal with prejudice is appropriate. *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 858 (9th Cir. 2008) (upholding dismissal with prejudice of § 1983 claim when district court lacked subject matter jurisdiction pursuant to *Rooker-Feldman*).

The district court noted that "a court need not grant leave to amend when permitting a plaintiff to amend would be an exercise in futility." 1-

ER-3.  Futility of amendment "frequently means that it was not factually possible for [plaintiff] to amend the complaint" to remedy the deficiency identified by the court.  *Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 824 (9th Cir. 2002) (citation omitted).  Here, there are no circumstances under which the *Rooker-Feldman* and *Younger* doctrines would permit a federal challenge to the firearm prohibition, based on factual allegations specific to Plaintiffs.  Permitting Plaintiffs to amend for this purpose would therefore be futile.  The district court did not abuse its discretion in dismissing the case without leave to amend.

## CONCLUSION

The Court should affirm the district court's order dismissing the case.

Dated:  February 28, 2022             Respectfully submitted,


ROB BONTA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
P. PATTY LI
Supervising Deputy Attorney General


s/ Rita B. Bosworth


RITA B. BOSWORTH
Deputy Attorney General
*Attorneys for Defendant-Appellee Rob Bonta, Attorney General of California*

41

21-56292

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**MIRANDA WALLINGFORD and RICHARD WALLINGFORD,**

Plaintiffs-Appellants,

**v.**

**ROB BONTA, in his official capacity as Attorney General of the State of California; and DOES 1-10,**

Defendant-Appellee.

**STATEMENT OF RELATED CASES**

To the best of our knowledge, there are no related cases.

Dated: February 28, 2022      Respectfully submitted,

ROB BONTA
Attorney General of California
THOMAS S. PATTERSON
Senior Assistant Attorney General
P. PATTY LI
Supervising Deputy Attorney General

S/ Rita B. Bosworth

RITA B. BOSWORTH
Deputy Attorney General
*Attorneys for Defendant-Appellee Rob Bonta,*
*Attorney General of California*

42

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)**  | 21-56292

I am the attorney or self-represented party.

**This brief contains** | 8,944 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [            ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Rita B. Bosworth | **Date** | Feb 28, 2022

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

# ADDENDUM

21-56292

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**MIRANDA WALLINGFORD and**
**RICHARD WALLINGFORD,**

                             Plaintiffs-Appellants,

   **v.**

**ROB BONTA, in his official capacity as**
**Attorney General of the State of California,**

                        Defendant-Appellee.

**ADDENDUM TO ANSWERING BRIEF**

| Description | Page |
|---|---|
| Cal. Code Civ. Proc. § 527.6 | A-1 |

KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

West's Annotated California Codes
  Code of Civil Procedure (Refs & Annos)
    Part 2. Of Civil Actions (Refs & Annos)
      Title 7. Other Provisional Remedies in Civil Actions (Refs & Annos)
        Chapter 3. Injunction (Refs & Annos)

West's Ann.Cal.C.C.P. § 527.6

§ 527.6. Harassment; temporary restraining order and order after hearing; procedure; allegations or threats of violence; support person; costs and attorney fees; punishment; confidentiality of information relating to minors

Effective: January 1, 2022
Currentness

(a)(1) A person who has suffered harassment as defined in subdivision (b) may seek a temporary restraining order and an order after hearing prohibiting harassment as provided in this section.

(2) A minor, under 12 years of age, accompanied by a duly appointed and acting guardian ad litem, shall be permitted to appear in court without counsel for the limited purpose of requesting or opposing a request for a temporary restraining order or order after hearing, or both, under this section as provided in Section 374.

(b) For purposes of this section, the following terms have the following meanings:

(1) "Course of conduct" is a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including following or stalking an individual, making harassing telephone calls to an individual, or sending harassing correspondence to an individual by any means, including, but not limited to, the use of public or private mails, interoffice mail, facsimile, or email. Constitutionally protected activity is not included within the meaning of "course of conduct."

(2) "Credible threat of violence" is a knowing and willful statement or course of conduct that would place a reasonable person in fear for the person's safety or the safety of the person's immediate family, and that serves no legitimate purpose.

(3) "Harassment" is unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner.

(4) "Petitioner" means the person to be protected by the temporary restraining order and order after hearing and, if the court grants the petition, the protected person.

(5) "Respondent" means the person against whom the temporary restraining order and order after hearing are sought and, if the petition is granted, the restrained person.

(6) "Temporary restraining order" and "order after hearing" mean orders that include any of the following restraining orders, whether issued ex parte or after notice and hearing:

(A) An order enjoining a party from harassing, intimidating, molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, abusing, telephoning, including, but not limited to, making annoying telephone calls, as described in Section 653m of the Penal Code, destroying personal property, contacting, either directly or indirectly, by mail or otherwise, or coming within a specified distance of, or disturbing the peace of, the petitioner. On a showing of good cause, in an order issued pursuant to this subparagraph in connection with an animal owned, possessed, leased, kept, or held by the petitioner, or residing in the residence or household of the petitioner, the court may do either or both of the following:

(i) Grant the petitioner exclusive care, possession, or control of the animal.

(ii) Order the respondent to stay away from the animal and refrain from taking, transferring, encumbering, concealing, molesting, attacking, striking, threatening, harming, or otherwise disposing of the animal.

(B) An order enjoining a party from specified behavior that the court determines is necessary to effectuate orders described in subparagraph (A).

(7) "Unlawful violence" is any assault or battery, or stalking as prohibited in Section 646.9 of the Penal Code, but does not include lawful acts of self-defense or defense of others.

(c) In the discretion of the court, on a showing of good cause, a temporary restraining order or order after hearing issued under this section may include other named family or household members.

(d) Upon filing a petition for orders under this section, the petitioner may obtain a temporary restraining order in accordance with Section 527, except to the extent this section provides an inconsistent rule. The temporary restraining order may include any of the restraining orders described in paragraph (6) of subdivision (b). A temporary restraining order may be issued with or without notice, based on a declaration that, to the satisfaction of the court, shows reasonable proof of harassment of the petitioner by the respondent, and that great or irreparable harm would result to the petitioner.

(e) A request for the issuance of a temporary restraining order without notice under this section shall be granted or denied on the same day that the petition is submitted to the court. If the petition is filed too late in the day to permit effective review, the order shall be granted or denied on the next day of judicial business in sufficient time for the order to be filed that day with the clerk of the court.

(f) A temporary restraining order issued under this section shall remain in effect, at the court's discretion, for a period not to exceed 21 days, or, if the court extends the time for hearing under subdivision (g), not to exceed 25 days, unless otherwise modified or terminated by the court.

(g) Within 21 days, or, if good cause appears to the court, 25 days from the date that a petition for a temporary order is granted or denied, a hearing shall be held on the petition. If a request for a temporary order is not made, the hearing shall be held within 21 days, or, if good cause appears to the court, 25 days, from the date that the petition is filed.

(h) The respondent may file a response that explains, excuses, justifies, or denies the alleged harassment, or may file a cross-petition under this section.

(i) At the hearing, the judge shall receive any testimony that is relevant, and may make an independent inquiry. If the judge finds by clear and convincing evidence that unlawful harassment exists, an order shall issue prohibiting the harassment.

(j)(1) In the discretion of the court, an order issued after notice and hearing under this section may have a duration of no more than five years, subject to termination or modification by further order of the court either on written stipulation filed with the court or on the motion of a party. The order may be renewed, upon the request of a party, for a duration of no more than five additional years, without a showing of any further harassment since the issuance of the original order, subject to termination or modification by further order of the court either on written stipulation filed with the court or on the motion of a party. A request for renewal may be brought any time within the three months before the order expires.

(2) The failure to state the expiration date on the face of the form creates an order with a duration of three years from the date of issuance.

(3) If an action is filed for the purpose of terminating or modifying a protective order before the expiration date specified in the order by a party other than the protected party, the party who is protected by the order shall be given notice, pursuant to subdivision (b) of Section 1005, of the proceeding by personal service or, if the protected party has satisfied the requirements of Chapter 3.1 (commencing with Section 6205) of Division 7 of Title 1 of the Government Code, by service on the Secretary of State. If the party who is protected by the order cannot be notified before the hearing for modification or termination of the protective order, the court shall deny the motion to modify or terminate the order without prejudice or continue the hearing until the party who is protected can be properly noticed and may, upon a showing of good cause, specify another method for service of process that is reasonably designed to afford actual notice to the protected party. The protected party may waive the protected party's right to notice if the protected party is physically present in court and does not challenge the sufficiency of the notice.

(k) This section does not preclude either party from representation by private counsel or from appearing on the party's own behalf.

(l) In a proceeding under this section, if there are allegations of unlawful violence or credible threats of violence, a support person may accompany a party in court and, if the party is not represented by an attorney, may sit with the party at the table that is generally reserved for the party and the party's attorney. The support person is present to provide moral and emotional support for a person who alleges they are a victim of violence. The support person is not present as a legal adviser and may not provide legal advice. The support person may assist the person who alleges they are a victim of violence in feeling more confident that they will not be injured or threatened by the other party during the proceedings if the person who alleges the person is a victim of violence and the other party are required to be present in close proximity. This subdivision does not preclude the court from exercising its discretion to remove the support person from the courtroom if the court believes the support person is prompting, swaying, or influencing the party assisted by the support person.

A-3

(m)(1) Except as provided in paragraph (2), upon the filing of a petition under this section, the respondent shall be personally served with a copy of the petition, temporary restraining order, if any, and notice of hearing of the petition. Service shall be made at least five days before the hearing. The court may for good cause, on motion of the petitioner or on its own motion, shorten the time for service on the respondent.

(2) If the court determines at the hearing that, after a diligent effort, the petitioner has been unable to accomplish personal service, and that there is reason to believe that the respondent is evading service or cannot be located, then the court may specify another method of service that is reasonably calculated to give actual notice to the respondent and may prescribe the manner in which proof of service shall be made.

(n) A notice of hearing under this section shall notify the respondent that if the respondent does not attend the hearing, the court may make orders against the respondent that could last up to five years.

(*o*) The respondent shall be entitled, as a matter of course, to one continuance, for a reasonable period, to respond to the petition.

(p)(1) Either party may request a continuance of the hearing, which the court shall grant on a showing of good cause. The request may be made in writing before or at the hearing, or orally at the hearing. The court may also grant a continuance on its own motion.

(2) If the court grants a continuance, any temporary restraining order that has been granted shall remain in effect until the end of the continued hearing, unless otherwise ordered by the court. In granting a continuance, the court may modify or terminate a temporary restraining order.

(q)(1) If a respondent named in a restraining order issued after a hearing has not been served personally with the order but has received actual notice of the existence and substance of the order through personal appearance in court to hear the terms of the order from the court, additional proof of service is not required for enforcement of the order.

(2) If the respondent named in a temporary restraining order is personally served with the order and notice of hearing with respect to a restraining order or protective order based on the temporary restraining order, but the respondent does not appear at the hearing, either personally or by an attorney, and the terms and conditions of the restraining order or protective order issued at the hearing are identical to the temporary restraining order, except for the duration of the order, the restraining order or protective order issued at the hearing may be served on the respondent by first-class mail sent to the respondent at the most current address for the respondent available to the court.

(3) The Judicial Council form for temporary orders issued pursuant to this subdivision shall contain a statement in substantially the following form:

"If you have been personally served with this temporary restraining order and notice of hearing, but you do not appear at the hearing either in person or by a lawyer, and a restraining order that is the same as this temporary restraining order except for the expiration date is issued at the hearing, a copy of the restraining order will be served on you by mail at the following address: _____.

If that address is not correct or you wish to verify that the temporary restraining order was converted to a restraining order at the hearing without substantive change and to find out the duration of that order, contact the clerk of the court."

(4) If information about a minor has been made confidential pursuant to subdivision (v), the notice shall identify the information, specifically, that has been made confidential and shall include a statement that disclosure or misuse of that information is punishable as a contempt of court.

(r)(1) Information on a temporary restraining order or order after hearing relating to civil harassment issued by a court pursuant to this section shall be transmitted to the Department of Justice in accordance with either paragraph (2) or (3).

(2) The court shall order the petitioner or the attorney for the petitioner to deliver a copy of an order issued under this section, or reissuance, extension, modification, or termination of the order, and any subsequent proof of service, by the close of the business day on which the order, reissuance, extension, modification, or termination was made, to a law enforcement agency having jurisdiction over the residence of the petitioner and to any additional law enforcement agencies within the court's discretion as are requested by the petitioner.

(3) Alternatively, the court or its designee shall transmit, within one business day, to law enforcement personnel all information required under subdivision (b) of Section 6380 of the Family Code regarding any order issued under this section, or a reissuance, extension, modification, or termination of the order, and any subsequent proof of service, by either one of the following methods:

(A) Transmitting a physical copy of the order or proof of service to a local law enforcement agency authorized by the Department of Justice to enter orders into the California Law Enforcement Telecommunications System (CLETS).

(B) With the approval of the Department of Justice, entering the order or proof of service into CLETS directly.

(4) Each appropriate law enforcement agency shall make available information as to the existence and current status of orders issued under this section to law enforcement officers responding to the scene of reported harassment.

(5) An order issued under this section shall, on request of the petitioner, be served on the respondent, whether or not the respondent has been taken into custody, by any law enforcement officer who is present at the scene of reported harassment involving the parties to the proceeding. The petitioner shall provide the officer with an endorsed copy of the order and a proof of service that the officer shall complete and send to the issuing court.

(6) Upon receiving information at the scene of an incident of harassment that a protective order has been issued under this section, or that a person who has been taken into custody is the subject of an order, if the protected person cannot produce a certified copy of the order, a law enforcement officer shall immediately attempt to verify the existence of the order.

(7) If the law enforcement officer determines that a protective order has been issued but not served, the officer shall immediately notify the respondent of the terms of the order and shall at that time also enforce the order. Verbal notice of the terms of the order shall constitute service of the order and is sufficient notice for purposes of this section and for purposes of Section 29825 of the Penal Code. Verbal notice shall include the information required pursuant to paragraph (4) of subdivision (q).

(s) The prevailing party in an action brought pursuant to this section may be awarded court costs and attorney's fees, if any.

(t) Willful disobedience of a temporary restraining order or order after hearing granted pursuant to this section is punishable pursuant to Section 273.6 of the Penal Code.

(u)(1) A person subject to a protective order issued pursuant to this section shall not own, possess, purchase, receive, or attempt to purchase or receive a firearm or ammunition while the protective order is in effect.

(2) The court shall order a person subject to a protective order issued pursuant to this section to relinquish any firearms the person owns or possesses pursuant to Section 527.9.

(3) A person who owns, possesses, purchases, or receives, or attempts to purchase or receive, a firearm or ammunition while the protective order is in effect is punishable pursuant to Section 29825 of the Penal Code.

(v)(1) A minor or the minor's legal guardian may petition the court to have information regarding the minor that was obtained in connection with a request for a protective order pursuant to this section, including, but not limited to, the minor's name, address, and the circumstances surrounding the request for a protective order with respect to that minor, be kept confidential.

(2) The court may order the information specified in paragraph (1) be kept confidential if the court expressly finds all of the following:

(A) The minor's right to privacy overcomes the right of public access to the information.

(B) There is a substantial probability that the minor's interest will be prejudiced if the information is not kept confidential.

(C) The order to keep the information confidential is narrowly tailored.

(D) No less restrictive means exist to protect the minor's privacy.

(3)(A) If the request is granted, except as provided in paragraph (4), information regarding the minor shall be maintained in a confidential case file and shall not become part of the public file in the proceeding or any other civil proceeding involving the parties. Except as provided in subparagraph (B), if the court determines that disclosure of confidential information has been made without a court order, the court may impose a sanction of up to one thousand dollars ($1,000). A minor who has alleged harassment, as defined in subdivision (b), shall not be sanctioned for disclosure of the confidential information. If the court imposes a sanction, the court shall first determine whether the person has or is reasonably likely to have the ability to pay.

(B) Confidential information may be disclosed without a court order only in the following circumstances:

(i) By the minor's legal guardian who petitioned to keep the information confidential pursuant to this subdivision or the protected party in an order pursuant to this division, provided that the disclosure is necessary to prevent harassment or is in the minor's best interest. A legal guardian or a protected party who makes a disclosure under this clause is subject to the sanction in subparagraph (A) only if the disclosure was malicious.

(ii) By a person to whom confidential information is disclosed, provided that the disclosure is necessary to prevent harassment or is in the best interest of the minor, no more information than necessary is disclosed, and a delay would be caused by first obtaining a court order to authorize the disclosure of the information. A person who makes a disclosure pursuant to this clause is subject to the sanction in subparagraph (A) if the person discloses the information in a manner that recklessly or maliciously disregards these requirements.

(4)(A) Confidential information shall be made available to both of the following:

(i) Law enforcement pursuant to subdivision (r), to the extent necessary and only for the purpose of enforcing the order.

(ii) The respondent to allow the respondent to comply with the order for confidentiality and to allow the respondent to comply with and respond to the protective order. A notice shall be provided to the respondent that identifies the specific information that has been made confidential and shall include a statement that disclosure is punishable by a monetary fine.

(B) At any time, the court on its own may authorize a disclosure of any portion of the confidential information to certain individuals or entities as necessary to prevent harassment, as defined under subdivision (b), including implementation of the protective order, or if it is in the best interest of the minor.

(C) The court may authorize a disclosure of any portion of the confidential information to any person that files a petition if necessary to prevent harassment, as defined under subdivision (b), or if it is in the best interest of the minor. The party who petitioned the court to keep the information confidential pursuant to this subdivision shall be served personally or by first-class mail with a copy of the petition and afforded an opportunity to object to the disclosure.

(w) This section does not apply to any action or proceeding covered by Title 1.6C (commencing with Section 1788) of Part 4 of Division 3 of the Civil Code or by Division 10 (commencing with Section 6200) of the Family Code. This section does not preclude a petitioner from using other existing civil remedies.

(x)(1) The Judicial Council shall develop forms, instructions, and rules relating to matters governed by this section. The petition and response forms shall be simple and concise, and their use by parties in actions brought pursuant to this section is mandatory.

(2) A temporary restraining order or order after hearing relating to civil harassment issued by a court pursuant to this section shall be issued on forms adopted by the Judicial Council and that have been approved by the Department of Justice pursuant to subdivision (i) of Section 6380 of the Family Code. However, the fact that an order issued by a court pursuant to this section was not issued on forms adopted by the Judicial Council and approved by the Department of Justice shall not, in and of itself, make the order unenforceable.

(y) There is no filing fee for a petition that alleges that a person has inflicted or threatened violence against the petitioner, stalked the petitioner, or acted or spoken in any other manner that has placed the petitioner in reasonable fear of violence, and that seeks a protective or restraining order restraining stalking, future violence, or threats of violence, in an action brought pursuant to this section. A fee shall not be paid for a subpoena filed in connection with a petition alleging these acts. A fee shall not be paid for filing a response to a petition alleging these acts.

(z)(1) Subject to paragraph (4) of subdivision (b) of Section 6103.2 of the Government Code, there shall not be a fee for the service of process by a sheriff or marshal of a protective or restraining order to be issued, if either of the following conditions apply:

(A) The protective or restraining order issued pursuant to this section is based upon stalking, as prohibited by Section 646.9 of the Penal Code.

(B) The protective or restraining order issued pursuant to this section is based upon unlawful violence or a credible threat of violence.

(2) The Judicial Council shall prepare and develop forms for persons who wish to avail themselves of the services described in this subdivision.

**Credits**

(Added by Stats.2013, c. 158 (A.B.499), § 2, operative July 1, 2014. Amended by Stats.2015, c. 401 (A.B.494), § 1, eff. Jan. 1, 2016; Stats.2015, c. 411 (A.B.1081), § 1.5, eff. Jan. 1, 2016; Stats.2016, c. 86 (S.B.1171), § 24, eff. Jan. 1, 2017; Stats.2017, c. 384 (A.B.953), § 1, eff. Jan. 1, 2018; Stats.2019, c. 294 (A.B.925), § 1, eff. Jan. 1, 2020; Stats.2021, c. 156 (A.B.1143), § 1, eff. Jan. 1, 2022.)

**Editors' Notes**

## OFFICIAL FORMS

### 2022 Electronic Pocket Part Update

<Mandatory and optional Forms adopted and approved by the Judicial Council are set out in West's California Judicial Council Forms Pamphlet.>

Notes of Decisions (152)

West's Ann. Cal. C.C.P. § 527.6, CA CIV PRO § 527.6
Current with urgency legislation through Ch. 6 of 2022 Reg.Sess. Some statute sections may be more current, see credits for details.

**End of Document**                                          © 2022 Thomson Reuters. No claim to original U.S. Government Works.

## CERTIFICATE OF SERVICE

Case Name: __*Miranda Wallingford, et al. v. Rob Bonta, et al.*__

Case No. __**21-56292**__

I hereby certify that on <u>February 28, 2022</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

## ANSWERING BRIEF

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct.

This declaration was executed on <u>February 28, 2022</u>, at San Francisco, California.

| Vanessa Jordan | s/ Vanessa Jordan |
|:---:|:---:|
| Declarant | Signature |

SA2021305878
43105046.docx