Case No. 21-56292

In the United States Court of Appeals
for the Ninth Circuit

MIRANDA WALLINGFORD, et al.,
*Plaintiffs-Appellants,*

v.

ROBERT BONTA, et al.,
*Defendants-Appellees.*

On Appeal from the United States District Court
for the Central District of California
(CV 8:21-01412 DOC (KESx))

**APPELLANTS' REPLY BRIEF**

C. D. Michel
Sean A. Brady
Anna M. Barvir
Alexander A. Frank
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Facsimile: (562) 216-4445
Email: abarvir@michellawyers.com

*Counsel for Plaintiffs-Appellants*

April 20, 2022

# TABLE OF CONTENTS

**Page**

Table of Contents ................................................................................... i

Table of Authorities ............................................................................ iii

Introduction .......................................................................................... 1

Argument .............................................................................................. 1

I.    The Wallingfords' Claims Are Not Barred by *Rooker Feldman*; Dismissing Them Extends the Doctrine Beyond Its Narrow Application ............................ 1

    A.    The Wallingfords Do Not Bring a Forbidden De Facto Appeal; the State's Arguments Otherwise Reflect a Misunderstanding of this Court's Precedents and Mischaracterize the Wallingfords' Claims .......... 2

    B.    The "Inextricably Intertwined" Analysis Does Not Come Into Play Here; Even If It Did, It Would Not Bar the Wallingfords' Claims ........ 11

        1.    The Wallingfords did not bring a de facto appeal, so the "inextricably intertwined" analysis is a non-sequitur here. ........... 11

        2.    Assuming this case is a "de facto appeal," *Rooker Feldman* still would not bar the Wallingfords' claims because the state court proceedings did not provide a full and fair opportunity to litigate them. ..................................................................................... 12

II.    None of the *Younger* Factors Are Satisfied Here .................................................... 18

    A.    The State Restraining Order Proceedings Are Not Ongoing ................. 18

    B.    This Case Does Not Implicate an Important State Interest ................... 18

    C.    The Wallingfords Did Not Have a Meaningful Opportunity to Litigate Constitutional Issues ..................................................................... 20

    D.    The State's Interest in Enforcing Court Orders Is Not Enough .......... 21

    E.    Federal Intervention Would Not Enjoin Any State Proceeding Because There Is No Ongoing State Judicial Proceeding ...................... 22

III.   The District Court Should Have Granted Leave to Amend ............................... 23

Conclusion .......................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. McCurry*,
  449 U.S. 90 (1980) ................................................................. 19

*AmerisourceBergen Corp. v. Roden*,
  495 F.3d 1143 (9th Cir. 2007) ............................................... 22

*Bell v. City of Boise*,
  709 F.3d 890 (9th Cir. 2013) ..........................................*passim*

*Bianchi v. Rylarsdaam*,
  334 F.3d 895 (9th Cir. 2003) ..........................................*passim*

*Columbus Bd. of Educ. v. Penick*,
  443 U.S. 449 (1979) ................................................................. 19

*Cooper v. Ramos*,
  704 F.3d 772 (9th Cir. 2012) ................................................... 2

*D.C. Ct. of Apps. v. Feldman*,
  460 U.S. 462 (1983) ............................................................... 23

*Diaz-Stellwagen v. White*,
  No. A126747, 2010 WL 4816156 (Cal. Ct. App. 2010) ........... 14

*Doe v. Mann*,
  45 F.3d 1038 (9th Cir. 2005) ................................................... 2

*Dubinka v. Judges of the Super. Ct.*,
  23 F.3d 218 (9th Cir. 1994) ................................................. 6, 7

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
  544 U.S. 280 (2005) ............................................................. 1, 2

*Fontana Empire Ctr., LLC v. City of Fontana*,
  307 F.3d 987 (9th Cir. 2002) ............................................ 11, 12

*People ex rel. Gallo v. Acuna*,
    14 Cal.4th 1090 (1997) ................................................................................... 15

*GASH Assoc. v. Vill. of Rosemont*,
    334 F.3d 895 (7th Cir. 1993) ......................................................................... 16

*Hepner v. Franchise Tax Bd.*,
    52 Cal.App.4th 1475 (1997) ......................................................................... 14

*Juidice v. Vail*,
    430 U.S. 327 (1977) ...................................................................................... 19

*Kenman Eng'g v. City of Union*,
    314 F.3d 468 (10th Cir. 2002) ...................................................................... 16

*KH Outdoor, LLC v. City of Trussville*,
    458 F.3d 1261 (11th Cir. 2006) .................................................................... 19

*Kougasian v. TMSL, Inc.*,
    359 F.3d 1136 (9th Cir. 2004) ................................................................. 3, 10

*Lebbos v. Judges of Super. Ct.*,
    883 F.2d 810 (9th Cir. 1989) ........................................................................ 21

*Maldonado v. Harris*,
    370 F.3d 945 (2004) ...............................................................................*passim*

*Mfrd. Home Cmtys. Inc. v. City of San Jose*,
    420 F.3d 1022 (9th Cir. 2005) ....................................................................... 3

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Assn.*,
    457 U.S. 423 (1982) ................................................................................ 19, 21

*Mitchell v. Mitchell*,
    No. A131632, 2012 WL 2510051 (Cal. Ct. App. 2012) ......................... 14, 15

*Mothershed v. Justices of Sup. Ct.*,
    410 F.3d 602 (9th Cir. 2005) ....................................................................... 23

*Noel v. Hall*,
    341 F.3d 1148 (9th Cir. 2003) ...............................................................*passim*

*Parisi v. Mazzaferro*,
    5 Cal.App.5th 1219 (2016) ...................................................................... 14, 15

*Pennzoil Co v. Texaco,*
481 U.S. 1 (1987) .................................................................................................. 21

*People v. Flores,*
169 Cal.App.4th 568 (2008) ................................................................................. 15

*R.D. v. P.M,*
202 Cal.App.4th 181 (2011) ............................................................................ 14, 15

*Read v. Haley,*
650 F. App'x 492 (9th Cir. 2016) ........................................................................ 23

*Robinson v. Ariyoshi,*
753 F.2d 1468 (9th Cir. 1985) .......................................................................*passim*

*Rooker v. Fid. Tr. Co.,*
263 U.S. 413 (1923) .............................................................................................. 17

*Rynearson v. Ferguson,*
903 F.3d 920 (9th Cir. 2018) .......................................................................... 21, 22

*Skinner v. Switzer,*
562 U.S. 521 (2011) ............................................................................................... 2

*Trainor v. Hernandez,*
431 U.S. 434 (1977) .............................................................................................. 19

*Worldwide Church of God v. McNair,*
805 F.2d 888 (9th Cir. 1986) ........................................................................ 6, 7, 8

*Younger v. Harris,*
401 U.S. 37 (1971) .........................................................................................*passim*

## Statutes

Cal. Code Civ. Proc. § 527.6 .........................................................................*passim*

Cal. Code Civ. Proc. § 527.9 ........................................................................ 4, 8, 14

Cal. Pen. Code § 27500 ........................................................................................... 4

Cal. Pen. Code § 27540 ........................................................................................... 4

Cal. Pen. Code § 29825 ....................................................................................... 4, 5

Cal. Pen. Code § 29830 ........................................................................ 4, 8, 14

Cal. Pen. Code § 30305 ............................................................................ 4, 5

Cal. Pen. Code § 30306 ............................................................................... 4

Cal. Pen. Code § 30370 ............................................................................... 4

**Other Authorities**

Fed. R. Civ. P. 5.1 ..................................................................................... 13

U.S. Const., amend. I ................................................................................ 15

U.S. Const., amend. II ............................................................................... 11

U.S. Const., amend. XIV ........................................................................ 7, 11

## INTRODUCTION

In its brief, the State either evades or mischaracterizes all the nuance that makes *Rooker-Feldman* such a tricky doctrine. It repeatedly mischaracterizes Appellants Miranda and Richard Wallingford's arguments, and then uses those straw-man mischaracterizations to declare victory over them. It essentially tries to shoehorn this situation into the narrow *Rooker-Feldman* space where it does not belong. But this situation does not align with the State's broad interpretation of *Rooker-Feldman*.

The State's *Younger* abstention arguments fare no better. The State bends over backwards to make this situation a fit for *Younger* abstention, which generally is a very hard abstention standard to meet. But, as the Wallingfords explain, this case satisfies none of the five *Younger* factors, so abstention is no doubt improper here.

Last, the State's argument that leave to amend here would be futile because there is no plausible way for the Wallingfords to plead a general constitutional challenge is meritless. *Feldman* itself provides that such a challenge is feasible and permissible.

## ARGUMENT

## I. THE WALLINGFORDS' CLAIMS ARE NOT BARRED BY *ROOKER FELDMAN*; DISMISSING THEM EXTENDS THE DOCTRINE BEYOND ITS NARROW APPLICATION

The Supreme Court has made clear that the *Rooker Feldman* doctrine occupies "narrow ground." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *see also id.* at 287-88 (observing in 2005 that the Supreme Court had not applied the doctrine "to dismiss an action for want of jurisdiction" since *Feldman* itself was decided in 1983). Indeed, it "is confined to cases of the kind from which the doctrine

1

acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* It "does not preclude a plaintiff from bringing an 'independent claim' that, though similar or even identical to issues aired in state court, was not the subject of a previous judgment by the state court." *Cooper v. Ramos*, 704 F.3d 772, 778 (9th Cir. 2012) (quoting *Skinner v. Switzer*, 562 U.S. 521 (2011)).

As described in the Wallingfords' Opening Brief, this Court has developed a two-step *Rooker Feldman* analysis that first asks whether the federal plaintiff is trying to bring a "forbidden de facto appeal." *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013). If the answer is no, the analysis ends. But if the answer is yes, the court may then (and only then) dismiss any claims that are "'inextricably intertwined' with an issue resolved by the state court in its decision." *Doe v. Mann*, 45 F.3d 1038, 1042 (9th Cir. 2005). Because the Wallingfords' claims survive both steps of the analysis, *Rooker Feldman* does not strip the federal court of its jurisdiction to hear them.

### A.   The Wallingfords Do Not Bring a Forbidden De Facto Appeal; the State's Arguments Otherwise Reflect a Misunderstanding of this Court's Precedents and Mischaracterize the Wallingfords' Claims

Under *Rooker-Feldman*, federal courts lack jurisdiction to hear "direct appeal[s] from the final judgment of a state court." *Maldonado v. Harris*, 370 F.3d 945, 949 (2004) (citing *Noel v. Hall*, 341 F.3d 1148, 1163 (9th Cir. 2003)); *Bell*, 709 F.3d at 897 (holding that federal courts may not hear a federal claim that operates as a "forbidden de facto appeal" of a state court ruling). But *Rooker Feldman* does not bar every federal claim that might disturb some aspect of a state court order. Rather, it is well settled in this

circuit that the doctrine applies only when a federal plaintiff "asserts as a legal wrong an *allegedly erroneous decision by a state court <u>and</u> seeks relief from a state court judgment based on that decision*." *Noel*, 341 F.3d at 1154-65 (double emphasis added). So even when a plaintiff seeks relief from a state court judgment, if they are not calling out an alleged error in the state court's decision *and* seeking relief from that judgment based on that error, it is not a "forbidden de facto appeal." *Bell*, 709 F.3d at 897 (citing *Maldonado*, 370 F.3d at 950; *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004)). If it is not a "de facto appeal," *Rooker Feldman* does not apply. *Id.* (citing *Mfrd. Home Cmtys. Inc. v. City of San Jose*, 420 F.3d 1022, 1030 (9th Cir. 2005)).

Because the Wallingfords neither allege a state court error nor seek relief from a state court judgment stemming from that error, their federal lawsuit is not a "direct appeal from the final judgment of a state court." *Maldonado*, 370 F.3d at 949. The district court thus erred when it held that *Rooker Feldman* bars their federal claims. The State's arguments to the contrary mischaracterize the Wallingfords' claims, Answering Br. (A.B.) 13-14, 18, and ignore (or unjustifiably dismiss) binding authorities, *id.* at 28-29. Instead, they rest largely on cherry-picked quotes from a single case that appears to dispose of the requirement that the federal plaintiff allege a state court error—the hallmark of *Rooker Feldman* barred claims. *Id.* at 12, 19, 27-28 (quoting *Bianchi v. Rylarsdaam*, 334 F.3d 895 (9th Cir. 2003)).

First, the Wallingfords do *not* allege that the state court erred. Indeed, contrary to the State's claims, the Wallingfords do not challenge any of "the state court's fact-specific determinations in federal court." *See* A.B. 13. Nor do they argue "that the state court made a legal error when it imposed the restraining orders because … the facts in

their case did not warrant a firearm prohibition." *Id.* at 23. Quite the opposite. The Wallingfords concede that *the state court likely made no error* when it issued restraining orders against them. Appellants' Opening Br. (A.O.B.) 12-13. That is because California law requires only that the court find "by clear and convincing evidence that unlawful harassment exists." Cal. Civ. Proc. Code § 527.6(i). "Harassment" is defined to include, among other things, any "willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person." *Id.* § 527.6 (b)(3). Once the court holds that "unlawful harassment" exists, "an order *shall* issue prohibiting the harassment." *Id.* § 527.6(i) (emphasis added). Under the Challenged Statutes,[1] *every person* subject to a section 527.6 restraining order is *automatically* barred from acquiring, owning, or possessing firearms or ammunition. Cal. Penal Code §§ 29825, 30305. The court *must* thus order persons subject to such orders to relinquish any firearms they own or possess. Cal. Civ. Proc. Code § 527.9(b),(c); Cal. Penal Code § 29830(a),(b).

The Wallingfords do not allege that the state court made an "erroneous decision" at any step of this analysis. *Noel*, 341 F.3d at 1164. They do not, as the State claims, allege that the state court erred because "the facts in their case did not warrant a firearm prohibition." A.B. 23. Nor do they "assert that the state court did not make findings to support its determination that the firearm prohibition was appropriately imposed." *Id.* at 14. No matter how many times the State repeats the claim that the Wallingfords allege that the state court failed to make findings to justify its "decision" to impose the firearm restriction, it is simply not an accurate characterization of the

---

[1] Recall, the "Challenged Statutes" are Code of Civil Procedure sections 527.6(u) and 527.9, and Penal Code sections 27500, 27540, 29825, 30305-30306, and 30370.

Wallingfords' claims. The only justification the restraining order court needed under state law was its finding that the Wallingfords engaged in "unlawful harassment" of their neighbor. Cal. Civ. Proc. Code § 527.6(i). The state court lacks authority to determine independently whether "the firearm prohibition was appropriately imposed as part of" those orders. A.B. 14. The statutory ban attaches regardless. Cal. Penal Code §§ 29825, 30305. Instead, the Wallingfords claim that, even when accepted as true, the court's factual findings of "harassment" are not enough for the State defendants to justify their enforcement of the Challenged Statutes against the Wallingfords under any level of heightened scrutiny—a subtle, but vital, distinction. "Without a direct challenge to a state court's factual or legal conclusion[s], [the Wallingfords'] suit is not a forbidden de facto appeal, and *Rooker-Feldman* is inapplicable." *Bell*, 709 F.3d at 897.

Even if this Court finds that the Wallingfords do allege a state court error, their claims are not *Rooker Feldman* barred because they do *not* seek relief from the state court judgment entered against them. *See Noel*, 341 F.3d at 1163. Again, under the Challenged Statutes, the restraining order court lacks discretion to weigh whether the facts in any given case warrant a firearm restriction. It is limited to deciding whether the evidence shows that "unlawful harassment" has occurred. Cal. Civ. Proc. Code § 527.6(i). Any analysis of whether application of a firearm prohibition is independently justified is simply not part of the equation. To the contrary, it would violate state law for the court to find that "unlawful harassment" has occurred, but then deny the restraining order or excise the firearm restriction just because the court finds that the harassment complained of was not severe enough to justify a firearm ban. *Id.*

Consequently, the constitutional conflict is not with any particular state-court restraining order, but with the State defendants' enforcement of a statutory scheme that would mechanically impose a firearm prohibition on *all* restraining orders regardless of the justifications for it. This case is a permissible challenge to how the Challenged Statutes operate, not a forbidden challenge to the state court's particular ruling. *Dubinka v. Judges of the Super. Ct.*, 23 F.3d 218, 221 (9th Cir. 1994). It is a challenge to the "validity" of the state law, not the "application" of it. *Noel*, 341 F.3d at 1157. To be sure, recalling the specific facts of the Wallingfords' case reveals that the automatic firearm prohibition cannot pass constitutional muster, but it is not *necessary* to analyze their particular circumstances to weigh the constitutionality of the Challenged Statutes. *See Dubinka*, 23 F.3d at 221 (district courts have "jurisdiction over … general constitutional challenge[s] that do[] not require review of a final state court decision in a particular case"). Indeed, the court need not "go beyond mere review of the state rule [statute] as promulgated" to see that it is unconstitutional. A.B. 20 (quoting *Worldwide Church of God v. McNair*, 805 F.2d 888, 892 (9th Cir. 1986)).

As a result, this case fits snuggly among this Court's authorities finding no "de facto appeal" where the federal plaintiffs challenged the government's enforcement of allegedly unconstitutional laws rather than the court orders entered as a result of those laws. *See, e.g.*, *Maldonado*, 370 F.3d at 950 ("The legal wrong that Maldonado asserts in this action is not an erroneous decision by the state court in the nuisance suit brought … by Caltrans, but the continued enforcement by Caltrans of a statute Maldonado asserts is unconstitutional."); *Bell*, 709 F.3d at 897 (Plaintiffs did not "seek relief from the state court judgment itself. Rather, [they] assert[ed] 'as a legal wrong an allegedly

6

illegal act … by an adverse party'"—the City's allegedly unconstitutional enforcement of the Ordinances"); *Dubinka*, 23 F.3d at 222 (State court criminal defendants' federal complaint did "not require the district court to review a state court decision. In broad language it challenges the general constitutionality of Proposition 115.").

On the other hand, the Wallingfords' case is nothing like *Worldwide Church of God v. McNair*. The *Worldwide Church* plaintiffs were not challenging the constitutionality of the enforcement of any law. Rather, they were directly attacking a jury's defamation verdict against them. 805 F.2d at 890. Worse yet, "*the California Superior Court [had already] considered and rejected the plaintiff's argument that the allegedly defamatory statements constitutionally were protected.*" *Id.* at 892 (emphasis added). Thus, a panel of this Court held "[i]t would be impossible for the federal court to review in the abstract the plaintiffs' constitutional challenge to the defamation verdict." *Id.* For the district court could not weigh the plaintiffs' claims without reconsidering the state court's legal determination that the allegedly defamatory statements were not constitutionally protected. *Id.* at 892-93.

Unlike the plaintiffs in *Worldwide Church*, the Wallingfords do not launch a direct attack against the state court's decision. Instead, they allege as a legal wrong the State's continued unconstitutional enforcement of the Challenged Statutes against them. 4-ER-677-81. What's more, the state court never heard (let alone rejected) the Wallingfords' Second and Fourteenth Amendment claims, and the Wallingfords had no meaningful opportunity to raise them. *See infra* Part I.B. For those opposing a restraining order are expressly limited to raising argument and evidence "that explains, excuses, justifies, or denies the alleged harassment." Cal. Civ. Proc. Code § 527.6(h).

But even if the Wallingfords could have argued the unconstitutionality of the firearm restriction during the restraining order proceedings, the issuing court has no discretion to deny the petition on those grounds, and it cannot remove the mandatory firearm restriction. *Id.* § 527.6(i) ("If the judge finds by clear and convincing evidence that unlawful harassment exists, an order *shall* issue prohibiting the harassment) (emphasis added); *id.* § 527.9(b),(c); Cal. Penal Code § 29830(a),(b). In short, the state court did not (and could not) make any legal determination that inclusion of the firearm restriction would violate the Wallingford's constitutional rights. So, unlike the court in *Worldwide Church*, the federal court would not be "reconsidering the state court's legal determination" on the issue.

The State's retort that "invalidating the portion of the orders containing the firearm prohibition would necessarily be invalidating the court's finding that the restraining orders were justified," A.B. 21, is unpersuasive. It is logically unsound and contradicts the binding precedents the Wallingfords have explained above.

First, just because declaring the Challenged Statutes unconstitutional and enjoining their enforcement would also have the effect of enjoining the firearm restriction in the Wallingfords' restraining orders does not "necessarily" invalidate the state "court's finding that the restraining orders were justified." *Id.* That is because, under California law, the state court's justification for the restraining orders is limited to the finding that the Wallingfords had engaged in "unlawful harassment." The Wallingfords do not contest that finding, and enjoining the Challenged Statutes as unconstitutional does not call it into question.

8

Second, this Court has regularly refused to apply *Rooker Feldman* to bar a federal plaintiff's constitutional claims even though the remedy would enjoin or reverse a state court judgment. For example, in *Maldonado*, this Court held that the doctrine did not apply even though the "complaint [sought] relief from the injunction entered by the state court" as a result of the defendants' enforcement of an allegedly unconstitutional state law. 370 F.3d at 950-51. In *Bell*, this Court refused to apply *Rooker Feldman* to bar a constitutional challenge to the enforcement of local criminal ordinances even though the federal plaintiffs expressly requested an order expunging their convictions under the laws. 709 F.3d at 893-94, 897. Both cases turned on the same fact: Neither federal plaintiff "allege[d] any legal errors by the … state court as a basis for relief." *Maldonado*, 370 F.3d at 951; *Bell*, 709 F.3d at 897.

Essentially asking this Court to ignore that vital consideration, the State leans heavily on a panel decision in *Bianchi v. Rylarsdaam*, 334 F.3d 895, 900 (9th Cir. 2003), that remained almost singularly focused on the "relief being sought." A.B. 27. But the State's citation to *Bianchi* confuses the issue in two ways. First, *Bianchi* held that the federal action was a "de facto appeal" *because* Bianchi's federal claims were "inextricably intertwined" with the state court's judgment. 334 F.3d at 899. But this conflates the "inexplicably intertwined" analysis with the separate "de facto appeal" analysis. As this Court has since repeatedly held:

> [T]he premise for the operation of the 'inextricably intertwined' test … is that the federal plaintiff is seeking to bring a forbidden de facto appeal. **The federal suit is not a forbidden appeal because it is 'inextricably intertwined' with something**. … Only when there is already a de facto appeal in federal court does the 'inextricably intertwined' test come into play.

*Noel*, 341 F.3d at 1158 (double emphasis added); *see also, e.g.*, *Maldonado*, 370 F.3d at 950; *Bell*, 709 F.3d at 897; *Kougasian*, 359 F.3d at 1142-43.

Second, the *Bianchi* decision never analyzes whether Bianchi's claims alleged any state court error before holding that they constituted a "de facto appeal." 334 F.3d at 898-99. Of course, it was clear from the facts that Bianchi had done just that. *Id.* at 897-98. But the court's failure to expressly conduct this half of the *Rooker Feldman* analysis, while "pay[ing] close attention to the *relief* sought," understandably creates a misconception that allegations of state court error are not required. *Id.* at 900. But, as this Court has since clarified, *Rooker Feldman* only acts to bar federal jurisdiction when the federal plaintiff "seek[s] not only to set aside a state court judgment," but "*also allege[s] a legal error by the state court as the basis for that relief.*" *Maldonado*, 370 F.3d at 350 (quoting *Kougasian*, 359 F.3d at 1140) (emphasis added).

But even if *Bianchi*'s analysis did not conflict with these precedents, the case is easily distinguishable. Unlike the Wallingfords, Bianchi *expressly* sought "an injunction vacating a decision by the" state court. 334 F.3d at 896. The Court denied his request because he had "essentially asked the federal court to review the [state court's judgment] and to afford him the same individual remedy he was denied in state court." *Id.* at 898 (citation and quotation marks omitted). Indeed, Bianchi had appealed his state-court losses up and down the California state court system; his arguments (presumed to have been considered by the reviewing state courts) were rejected at every turn. *Id.* at 896-97, 899. Then, he went into federal court "seek[ing] an order … instructing the state court to do what it refused to do *when he made the identical claim before that court*." *Id.* at 899 (emphasis added).

10

As discussed above, *see supra* pp. 6-8, the Wallingfords do not seek relief directly from the state court restraining order, but the State's enforcement of the Challenged Statutes against them. The Wallingfords did not (and could not) argue in the restraining order proceedings that Challenged Statutes violate the Second and Fourteenth Amendments. And the state court never heard and had no occasion to decide any such claim. The Wallingfords are simply not asking the federal court "to review the [state court's judgment] and to afford [them] the same individual remedy [they were] denied in state court." *Bianchi*, 334 F.3d at 898 (citation and quotation marks omitted).

In sum, the Wallingfords' federal claims do not constitute a "de facto appeal," so the analysis ends. There is no need to consider whether any of the issues are "inextricably intertwined" with the state court judgment. Without a "de facto appeal," the *Rooker Feldman* doctrine does not apply. Even so, the Wallingfords will now respond to the State's "inextricably intertwined" arguments.

## B. The "Inextricably Intertwined" Analysis Does Not Come Into Play Here; Even If It Did, It Would Not Bar the Wallingfords' Claims

### 1. The Wallingfords did not bring a de facto appeal, so the "inextricably intertwined" analysis is a non-sequitur here.

The State argues that any attempt to challenge the results of the state court action is prohibited because such claims are "inextricably intertwined" with the state court judgment. A.B. 24-26. To be sure, *Fontana Empire Ctr., LLC v. City of Fontana*, 307 F.3d 987 (9th Cir. 2002) holds that claims are "inextricably intertwined" if "the relief requested in the federal action would effectively reverse the state court's decision or void its ruling." *Id.* at 24 (citing *Fontana*, 307 F.3d at 992). But it is not a fair reading

11

of the law to then leap to the conclusion that any that federal action that is so "intertwined" is barred by *Rooker Feldman*. To the contrary, it improperly equates the first step of the analysis which asks whether the federal plaintiff is bringing a "de facto appeal," with the separate "inextricably intertwined" analysis. Indeed, this Court has already addressed the confusion generated when *Fontana* is read "out of context" in this way. *Maldonado*, 370 F.3d at 950. The *Maldonado* Court is clear:

> *Only when there is already a de facto appeal in federal court does the 'inextricably intertwined' test come into play*. Once a federal plaintiff seeks to bring a forbidden de facto appeal, as in *Feldman*, the federal plaintiff may not seek to litigate an issue that is 'inextricably intertwined' with the state judicial decision from which the forbidden de facto appeal is brought. In this case, Maldonado is not bringing a forbidden de facto appeal because he is not alleging as a legal wrong an erroneous decision from the state court. [citation] Therefore, the 'inextricably intertwined' test does not come into play.

*Id.* (emphasis added). Because the Wallingfords allege no state court error and do not seek direct relief from the state court's order, they have not brought a "forbidden de facto appeal." The analysis ends there. It does not then matter whether enjoining the enforcement of the Challenged Statutes would have the collateral effect of voiding some part of the restraining order.

### 2. Assuming this case is a "de facto appeal," *Rooker Feldman* still would not bar the Wallingfords' claims because the state court proceedings did not provide a full and fair opportunity to litigate them.

Even if the Wallingfords had brought a "de facto appeal," because their constitutional claims were not raised, considered, or decided in state court, "it is unlikely that the issues presented to the state high court and to the federal court are so 'inextricably intertwined' that the federal court cannot take jurisdiction." A.O.B. 18-19 (discussing *Robinson v. Ariyoshi*, 753 F.2d 1468, 1472 (9th Cir. 1985), *judgment vacated and*

*remanded on other grounds*, 477 U.S. 902 (1986)). The Wallingfords simply did not have a "full and fair opportunity to litigate" the constitutionality of the Challenged Statutes as applied to them (or anyone else) in the restraining order proceedings. *Robinson*, 753 F.2d at 1472. The State brushes aside this argument, arguing that the Wallingfords should have stayed in state court because, in a handful of marginally relevant unpublished (and wholly irrelevant published) California state cases, appellants made constitutional rights arguments. A.B. 30. The argument is unpersuasive.

Recall, the Wallingfords did not (and could not) raise their constitutional arguments in the state court because section 527.6(h) expressly limits the scope of any restraining order opposition. The statute leaves no room to balance the hardships, contemplate the equities, or argue whether attaching the firearm prohibition would violate the restrained party's constitutional rights. Nor do the practical realities of the restraining order process. Restraining order petitions are most often litigated by pro per litigants seeking immediate relief through a battle of Judicial Counsel forms that themselves limit the parties to argument and evidence about whether "unlawful harassment" occurred. It is hardly a process that affords the parties a fair opportunity to present (and the state court to consider) complex arguments about the constitutionality of the underlying statutes.[2] And of course, it is axiomatic that a party

---

[2] Not to mention the fact that, unlike criminal cases in which the government is the party prosecuting the action, the State is not a party to these proceedings at all. It thus has no way to defend its restraining order statutes (including the firearm restriction) from constitutional attack in the context of those proceedings. As a matter of policy, it would thus seem that an independent claim brought in federal court, where the State is a named defendant or at least must be notified of the constitutional claim and be given an opportunity to appear, Fed. R. Civ. P. 5.1, would be necessary.

may not raise an argument on appeal that they did not raise in the trial court. *Hepner v. Franchise Tax Bd.*, 52 Cal.App.4th 1475, 1486 (1997).

But even if the Wallingfords had raised their constitutional law arguments in the state court proceeding in violation of section 527.6(h), the state court could not have considered such claims in deciding whether to issue the restraining order without violating section 527.6(i) and committing reversible error. "If the court finds that by clear and convincing evidence that unlawful harassment exists," it has no discretion to deny the order and no discretion to eliminate the mandatory firearm restriction. Cal. Civ. Proc. Code §§ 527.6(i), 527.9(b),(c); Cal. Penal Code § 29830(a),(b); *see also supra* Part I.A. The arguments are thus irrelevant, and the court has no obligation to entertain them.

So if the trial court made no legal or factual error in granting the restraining order, the Wallingfords do not seek to overturn it, and they were legally and practically barred from raising their constitutional claims in the trial court, it is hard to see how they would have any grounds on which to base an appeal. In short, they had no meaningful opportunity to litigate their constitutional claims in state court. Under *Robinson*, "it is [thus] unlikely that the issues presented … are so 'inextricably intertwined' that the federal court cannot take jurisdiction." *Robinson*, 753 F.2d at 1472.

None of the California cases the State cites to support its claim that the state court may consider constitutional arguments in a section 527.6 proceeding (despite clear statutory language to the contrary) change this conclusion.[3] They do not examine

---

[3] A.B. 30 (citing *Mitchell v. Mitchell*, No. A131632, 2012 WL 2510051 (Cal. Ct. App. 2012); *Diaz-Stellwagen v. White*, No. A126747, 2010 WL 4816156 (Cal. Ct. App. 2010); *R.D. v. P.M*, 202 Cal.App.4th 181 (2011); *Parisi v. Mazzaferro*, 5 Cal.App.5th

what section 527.6(h) requires or allows. Moreover, appellate discussion of the constitutional implications of the firearm prohibition attendant to a restraining order does not necessarily mean that those arguments were properly raised in the trial court. It could simply reflect that neither the court nor any party argued they were being improperly raised. Accordingly, these cases do not expressly support the State's contention that the Wallingfords had a fair opportunity to litigate their constitutional claims in the state court. To the contrary, California has effectively insulated their restraining order regime from constitutional challenge in the state court forum, and now asks this Court to extend that immunity to the federal courts as well.

The State then tries to distance itself from *Robinson*, arguing that this Court reached its conclusion on res judicata principles, not *Rooker Feldman*. A.B. 28 (citing *Robinson*, 753 F.2d at 1473). The argument is not well taken. The *Robinson* Court expressly held that the res judicata "requirement of full and fair opportunity to litigate" and the *Feldman* "inextricably intertwined barrier to federal jurisdiction" are "*two sides of the same coin*." 753 F.2d at 1472 (emphasis added). After the Court considered the issue "under the doctrinal umbrella of res judicata," it "turn[ed] to application of the *Feldman* doctrine" and held that federal constitutional issues which the state court refused to

---

1219, 1228 (2016); *People v. Flores,* 169 Cal.App.4th 568 (2008); *People ex rel. Gallo v. Acuna*, 14 Cal.4th 1090 (1997)).

    *Mitchell* and *Diaz-Stellwagon* involved domestic violence restraining orders issued under a completely unrelated statutory scheme. They include no discussion of section 527.6, and they are uncitable California cases. Even though *R.D.* and *Parisi* do implicate section 527.6, they are inapposite because they simply visit the question of whether the harassing conduct was protected by the First Amendment. This argument may be raised under section 527.6(h) since it would constitute an "excuse" or "justification." What's more, neither case discussed whether the First Amendment objection was raised in the trial court. *Flores* and *Acuna* are manifestly inapposite and do not touch upon any relevant issues here whatsoever.

consider were not "at all, let alone inextricably, intertwined." *Id.* at 1473. They are thus not barred by *Rooker-Feldman. Id.* That is the situation here.

In dicta, the *Bianchi* decision appears to throw this rule into doubt. 334 F.3d at 900-01 (citing *Kenman Eng'g v. City of Union*, 314 F.3d 468, 478-79 (10th Cir. 2002); *GASH Assoc. v. Vill. of Rosemont*, 334 F.3d 895, 728 (7th Cir. 1993)). Having held that the state court had considered and rejected Bianchi's federal claims, *id.* at 904, the panel then observed that "Bianchi's claims would still be barred … even if the state court had not actually decided" them because "'*Rooker-Feldman* bars any suit that seeks to disrupt or 'undo' a prior state-court judgment, regardless of whether the state-court proceeding afforded the federal-court plaintiff a full and fair opportunity to litigate her claims.'" *Id.* at 901 (quoting *Kenman*, 314 F.3d at 478). The Wallingfords have already established that more recent authority holds that *Rooker-Feldman* does not, in fact, "bar[] *any* suit that seeks to disrupt or 'undo' a prior state-court judgment." *Compare Bianchi*, 334 F.3d at 901, *with Maldonado*, 370 F.3d at 950-51; *Bell*, 709 F.3d at 893-94, 897; *see supra* Part I.A.

Moreover, the *Bianchi* concurrence explains why the majority's dicta should not become the rule. 334 F.3d at 905 (Fletcher, J., concurring). As Judge Fletcher observed, "[t]he majority relies almost exclusively on analytically confused authority from other circuits to create a standardless test for improper 'appellate jurisdiction.'" *Id.*; *see id.* (maj. op.) (citing *Kenman*, 314 F.3d at 478-79 (holding that the federal plaintiff need not have had "a full and fair opportunity to litigate" in state court); *GASH*, 334 F.3d at 728 (holding that *Rooker Feldman* and preclusion both define the respect one court owes to an earlier judgment, "[b]ut the two are not co-extensive")). These out-

of-circuit authorities directly conflict with *this Court's* binding precedent in *Robinson*, 753 F.2d at 1472-73. Worse yet, they conflict with the Supreme Court's decision in *Rooker* itself:

> [I]n holding that it is irrelevant whether the state court affords a litigant a full and fair adjudication of federal claims, the majority plainly disregards the Supreme Court's language in *Rooker* that suggests … that the adequacy of the process afforded by state courts plays some role in whether federal court adjudication is barred as an impermissible appeal.

*Bianchi*, 334 F.3d at 905 (Fletcher, J., concurring) (quoting *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 414 (1923) ("It affirmatively appears from the bill that the judgment was rendered in a cause wherein the circuit court had jurisdiction of both the subject-matter and the parties, *that a full hearing was had therein, that the judgment was responsive to the issues*.")). The concurrence continues: "The majority's disquisition does not resolve confusion about the proper application and scope of the *Rooker-Feldman* doctrine, but will leave litigants and our district courts, if anything, more confused." *Id.* It appears Judge Fletcher's fears have come to pass.

This Court can repair the analytical confusion *Bianchi* has sown and, faithful to *Rooker* and *Robinson*, hold that federal courts should exercise jurisdiction unless the federal plaintiff had a "full and fair opportunity to litigate" their claims in state court. *Rooker*, 263 U.S. at 414; *Robinson*, 753 F.2d at 1472-73. Because the Wallingfords did not have that opportunity, this Court should not bar their claims under *Rooker Feldman*.

17

## II.  NONE OF THE *YOUNGER* FACTORS ARE SATISFIED HERE

### A.    The State Restraining Order Proceedings Are Not Ongoing

The Wallingfords' state court proceeding ended when the court issued the restraining orders against them. Unless one of the parties petitions to reopen the action to seek a modification, nothing more will happen in the state court. Cal. Code Civ. Proc. § 527.6(j). In response, the State claims that because the Wallingfords remain "bound by a state court order," the restraining order proceedings are ongoing. A.B. 32. The State then argues that the Wallingfords "were not still bound by state court orders, their alleged grievance would not exist," and their ability to petition the court to reopen the proceedings to request a modification makes them ongoing. *Id.* at 33.

This argument stretches the definition of "ongoing" too far. If the issuance of an order or judgment that binds a party makes a proceeding ongoing, then essentially all proceedings are ongoing. We know that is just not how it works. The mere possibility that the Wallingfords could technically try to reopen the matter to request a modification under section 527.6(j) is immaterial. Until such a motion is granted—which the state court has broad discretion not to do—the proceeding is over. The mere possibility of reopening the matter, limited to modifying the terms of the order a court already entered, does not establish that the matter is genuinely "ongoing."

### B.    This Case Does Not Implicate an Important State Interest

The State pivots from the interests it alleged in the district court—privacy and the general interest in reducing firearm violence, *see* A.O.B. 24-26—to a nebulous argument about the State's interest in seeing its laws enforced. *Id.* at 33. This argument is unavailing for two reasons. First, the argument is circular. It would essentially require

18

courts applying *Younger* to find there is an important interest at play whenever there is a proceeding arising under state law, which is almost always the case since *Younger* only comes into play when there is a related case already being litigated in state court.

Second, key Supreme Court authorities are clear that the important state interest needed to satisfy this element of *Younger* must involve the administration of the justice system itself, not the mere enforcement of any particular substantive law. For example, in *Juidice v. Vail*, 430 U.S. 327 (1977), the court found that abstention from adjudicating a challenge to a state's contempt process was proper. In *Trainor v. Hernandez*, 431 U.S. 434 (1977), the court held that a civil enforcement action in a public-assistance context, that a state filed and prosecuted in its own capacity, was a sufficiently important interest to justify abstention. In *Middlesex County Ethics Comm. v. Garden State Bar Assn.*, 457 U.S. 423 (1982), the court found that pending state bar disciplinary proceedings were important enough to justify abstention. All three cases involve situations in which the administration of justice itself is the issue, not mere enforcement of some substantive law in the state's courts, which is what the State unpersuasively argues here.

It makes sense that the factor would be so circumscribed. For federal courts are uniquely qualified to decide federal challenges to the enforcement of state laws. *See Columbus Bd. of Educ. v. Penick*, 443 U.S. 449 (1979) (identifying "federal courts as guardians of federal rights"); *Allen v. McCurry*, 449 U.S. 90 (1980) (holding that "federal courts could step in where the state courts were unable or unwilling to protect federal rights"). And states have no legitimate interest in the enforcement of unconstitutional laws. *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006). So when, as here, the federal plaintiff challenges the enforcement of a state law as

19

unconstitutional, it is hard to fathom how the state's purported interest in having its laws enforced would constitute a "public interest" important enough to justify abstention under *Pullman*.

### C. The Wallingfords Did Not Have a Meaningful Opportunity to Litigate Constitutional Issues

The State contends that the Wallingfords had ample opportunity to litigate their constitutional claims in the state court restraining order proceeding and should have appealed rather than file a federal action. A.B. 34-35. For support, it trots out the same irrelevant California state cases to attack the Wallingfords' argument that the scope of the state court restraining order proceeding is limited and so provides inadequate opportunity to raise their constitutional claims. *Id.* 34-35. As explained above, this argument holds little water. *See supra* Part I.B.

In short, the argument fails because state law limits a restraining order respondent to filing a response that "explains, excuses, justifies, or denies the alleged harassment, or [to filing] a cross-petition under this section." Cal. Civ. Proc. Code § 527.6(h). This is clear statutory language expressly restricting the scope of any restraining order response. What's more, the very nature of a restraining order proceeding makes it a poor venue for presenting and deciding complex arguments about the constitutionality of state law. *See supra* Part I.B. But even if the Wallingfords had raised their constitutional law arguments despite the clear guidance in section 527.6(h), the state court could not have denied the restraining order petition on those grounds under section 527.6(i). The arguments are irrelevant to the only question to be answered in a section 527.6 proceeding—whether "unlawful harassment" occurred.

The state court thus need not entertain them. *See* Cal. Civ. Proc. Code § 527.6(i) ("At the hearing, the judge shall receive any testimony that is relevant.")

Thus, the state forum does "not afford adequate protection" to the Wallingfords' interests because they were "barred from raising" their constitutional claims because of the unusual legal and practical limitations of section 527.6 restraining order proceedings. A.B. 35 (quoting *Middlesex Cnty.*, 457 U.S. at 435; *Lebbos v. Judges of Super. Ct.*, 883 F.2d 810, 815 (9th Cir. 1989)).

### D. The State's Interest in Enforcing Court Orders Is Not Enough

Relying on *Pennzoil Co v. Texaco*, 481 U.S. 1 (1987), the State contends that its interest in enforcing the orders and judgments of its courts firmly supports abstention under *Younger*. A.B. 37-38 (discussing *Penzoil*, 481 U.S. at 13-14). But *Pennzoil* was decided on very different facts than those present here. *Pennzoil* involved an Eleventh-Hour attempt to get a federal district court to grant relief *before* a state court entered judgment. 481 U.S. at 6. The principal issue there was "whether a federal district court lawfully may enjoin a plaintiff who has prevailed in a trial in state court from executing the judgment in its favor pending appeal of that judgment to a state appellate court." *Id.* at 3. That is not even close to the situation here. Years have passed since the state court entered its judgment on the restraining orders. The trial court proceedings are over, and there is no state court appeal pending. What the Wallingfords are trying to do here does not "challenge the very process" because it does not interrupt the process at all. A.B. 27 (quoting *Pennzoil*, 481 U.S at 14).

The State's attempt to defeat the Wallingfords' reliance on *Rynearson v. Ferguson*, 903 F.3d 920 (9th Cir. 2018), is similarly misplaced. Nothing about the relief the

Wallingfords seek jeopardizes any California court's ability to perform its judicial functions. To be sure, enjoining the enforcement of the Challenged Statutes as unconstitutional would likewise enjoin the enforcement of one part of the Wallingfords' restraining orders. But it does not follow that the remedy interferes with the state court's judicial functions. That would be like saying the federal courts are jeopardizing the State's ability to perform its law enforcement functions when they enjoin the enforcement of an unconstitutional criminal statute. Again, the *Rynearson* Court held that "Rynearson's suit did not involve Washington's interest in enforcing the orders and judgments of its courts" because a challenge to a "statute's constitutionality does not bear on the validity of the state's protection orders or the procedures by which the state courts issue or enforce them." 903 F.3d at 927.

### E. Federal Intervention Would Not Enjoin Any State Proceeding Because There Is No Ongoing State Judicial Proceeding

As explained above and in the Wallingfords' Opening Brief, A.O.B. 23, federal intervention here would not enjoin the state proceeding because the state proceeding is over. Because there is no ongoing state court proceeding, there necessarily does not exist any proceeding that could be enjoined. The fifth inquiry for *Younger* abstention thus militates against its application here. *See AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1151 (9th Cir. 2007).

The State, however, once again repeats its most basic thematic argument; that the Wallingfords seek to undo the state court's orders against them. A.B. 39-40. As the Wallingfords have shown, that is simply not true. A.O.B. 12-13; Part I.A. *supra*. The State simply refuses to acknowledge the difference between a claim that the orders

were erroneous and should be undone and a claim that the orders were probably error-free but the state law that justified their issuance is itself unconstitutional.

## III. THE DISTRICT COURT SHOULD HAVE GRANTED LEAVE TO AMEND

The State argues that the district court did not err in dismissing without leave to amend because, the State contends, "there are no circumstances under which the *Rooker-Feldman* and *Younger* doctrines would permit a federal challenge to the firearm prohibition, based on factual allegations specific to Plaintiffs." A.B. 41. But even the State concedes that, in *Feldman*, the "Supreme Court held that the district court *did not* have jurisdiction over plaintiffs' as-applied challenge, but it *did* have jurisdiction over the general constitutional challenge." A.B. 22 (quoting *D.C. Ct. of Apps. v. Feldman*, 460 U.S. 462, 487 (1983)). If *Feldman* itself left room for such a challenge, there is room for one here. Indeed, even if *Rooker-Feldman* does bar the Wallingfords from litigating an as applied challenge, it does not bar them from litigating a broader facial constitutional challenge. *See, e.g.*, *Noel*, 341 F.3d at 1157, n.6; *Feldman*, 460 U.S. at 487. To the contrary, *Rooker Feldman* does not "prohibit a plaintiff from presenting a generally applicable legal challenge to a state statute in federal court, even if that statute has previously been applied against him in state court litigation." *Mothershed v. Justices of Sup. Ct.*, 410 F.3d 602, 606 (9th Cir. 2005); *see Read v. Haley*, 650 F. App'x 492, 494 (9th Cir. 2016) ("Read's second and third non-fraud claims … are not barred by *Rooker Feldman* if we view them as facial, rather than as-applied, challenges….")

## CONCLUSION

For all these reasons, the Wallingfords ask this Court to reverse the district court's order granting the State's motion to dismiss because their federal claims are

23

barred by neither *Rooker Feldman* nor *Younger*. Alternatively, they ask the Court to affirm only to the extent that the district court dismissed their as applied claims, but otherwise reverse the district court's decision to withhold leave to amend.

Dated:  April 20, 2022                    Respectfully submitted,

                                          MICHEL & ASSOCIATES, P.C.

                                          s/ Anna M. Barvir
                                          _____

                                          Anna M. Barvir
                                          *Attorneys for Plaintiffs-Appellants*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 21-56292

I am the attorney or self-represented party.

**This brief contains** | 6,983 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P.
29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because
*(select only one):*

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [           ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Anna M. Barvir | **Date** | April 20, 2022

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**      *Rev. 12/01/2018*

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2022, an electronic PDF of APPELLANTS' REPLY BRIEF was uploaded to the Court's CM/ECF system, which will automatically generate and send by electronic mail a Notice of Docket Activity to all registered attorneys participating in the case. Such notice constitutes service on those registered attorneys.

Dated:  April 20, 2022                    Respectfully submitted,

**MICHEL & ASSOCIATES, P.C.**

s/ Anna M. Barvir
_____

Anna M. Barvir
*Attorneys for Plaintiffs-Appellants*