Case No. 21-56292

In the United States Court of Appeals
for the Ninth Circuit

MIRANDA WALLINGFORD, et al.,
*Plaintiffs-Appellants,*

v.

ROBERT BONTA, et al.,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the Central District of California
(CV 8:21-01412 DOC (KESx))

**APPELLANTS' PETITION FOR PANEL REHEARING
OR REHEARING EN BANC**

C. D. Michel
Sean A. Brady
Anna M. Barvir
Alexander A. Frank
Matthew D. Cubeiro
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: (562) 216-4444
Facsimile: (562) 216-4445
Email: abarvir@michellawyers.com

*Counsel for Plaintiffs-Appellants*

November 20, 2023

# TABLE OF CONTENTS

**Page**

Table of Contents ............................................................................................ i

Table of Authorities ....................................................................................... ii

Introduction and Rule 35 Statement ........................................................... 1

Statement of the Case ................................................................................... 2

I.    California's Civil Harassment Order Regime ................................... 2

II.   History of the Dispute ...................................................................... 3

III.  Procedural Background ...................................................................... 6

Reasons for Rehearing ................................................................................. 7

I.    The Panel's Flawed Mootness Analysis Conflicts with Supreme Court and Circuit Precedent .................................................................................. 7

    A.   It Is Reasonable to Expect That the Wallingfords Will be Subject to the Challenged Action in the Future ............................................ 8

    B.   Restraining Orders Issued Under the Challenged Statutes Are Regularly Too Brief To Be Fully Litigated Before They Expire ............ 13

II.   This Appeal Involves Important Procedural Issues That This Court Should Also Decide ...................................................................................... 15

Conclusion .................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aronson v. Resol. Trust Corp.*,
  38 F.3d 1110 (9th Cir. 1994) ...............................................................15

*Brach v. Newsom*,
  38 F.4th 6 (9th Cir. 2022) ...................................................................10

*Cnty. of Los Angeles v. Davis*,
  440 U.S. 625 (1979)...............................................................................7

*Dep't of Fish & Game v. Fed. Subsistence Bd.*,
  62 F.4th 1177 (9th Cir. 2023) ...............................................................8

*Doe v. Reed*,
  697 F.3d 1235 (9th Cir. 2012) .............................................................14

*Fed. Election Comm'n v. Wisc. Right to Life, Inc.*,
  551 U.S. 449 (2007)................................................................. 2, 11, 12

*Friends of the Earth v. Laidlaw*,
  528 U.S. 167 (2000)...................................................................... 1, 7, 8

*Hooks ex rel. NLRB v. Nexstar Broad., Inc.*,
  54 F.4th 1101 (9th Cir. 2022) ..................................................... 2, 8, 11

*Lindquist v. Idaho State Bd. of Corr.*,
  776 F.2d 851 (9th Cir. 1985) .................................................................7

*Murphy v. Hunt*,
  455 U.S. 478 (1982)................................................................................8

*Native Vill. of Noatak v. Blatchford*,
  38 F.3d 1505 (9th Cir. 1994) .................................................................8

*Native Vill. of Nuiqsut v. Bur. of Land Mgmt.*,
  9 F.4th 1201 (9th Cir. 2021) ...............................................................14

*United States v. Claiborne*,
  781 F.2d 1325 (9th Cir. 1985) ...............................................................7

*United States v. Conc. Phosphate Export Ass'n, Inc.*,
  393 U.S. 199 (1968).................................................................................1, 7

*Wallingford v. Bonta*,
  No. 21-1412 (C.D. Cal. Oct. 4, 2021)....................................................6

**Statutes**

Cal. Civ. Proc. Code § 527.6 ......................................... 1, 2, 3, 6, 9, 14

Cal. Penal Code § 29830.........................................................................3

Cal. Penal Code § 27500.........................................................................3

Cal. Penal Code § 27540.........................................................................3

Cal. Penal Code § 29825.........................................................................3

Cal. Penal Code § 30305.........................................................................3

Cal. Penal Code § 30306.........................................................................3

Cal. Penal Code § 30370.........................................................................3

## INTRODUCTION AND RULE 35 STATEMENT

Appellants Richard and Miranda Wallingford lived peacefully in their California home for over 50 years until 2013, when Jessica Ngyuen moved in next door. By late 2019, both Nguyen and the Wallingfords had obtained restraining orders against each other under Code of Civil Procedure section 527.6. By law, this triggered the loss of Second Amendment rights for the orders' duration—even though the state court made no finding that the Wallingfords posed a threat to anyone.

The Wallingfords sued in federal court to have the firearm restriction declared unconstitutional. Because California automatically strips a person subject to a restraining order of their Second Amendment rights without requiring any showing of dangerousness, they alleged the law violates the Second and Fourteenth Amendments. The district court dismissed the complaint with prejudice under *Rooker-Feldman*, and the Wallingfords appealed. Although the restraining orders were in place when the panel heard oral argument in June 2022—and remained in place for another seven months—the panel dismissed the appeal for mootness in September 2023. The Wallingfords now request panel rehearing or en banc rehearing.

The panel's dismissal of the appeal as moot and its refusal to apply the "capable of repetition yet evading review" exception was improper under binding precedents. Indeed, the decision conflicts with Supreme Court authorities placing the burden of proof on the party claiming the action is moot. *See, e.g.*, *Friends of the Earth v. Laidlaw*, 528 U.S. 167, 189 (2000). Rather than require that the State show "it [is] absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," *United States v. Conc. Phosphate Export Ass'n, Inc.*, 393 U.S. 199, 203 (1968), the panel

1

effectively required the Wallingfords to show it was "absolutely clear" that it would. Misapplying the "capable of repetition" exception, the panel demanded an extremely strong showing that the Wallingfords would be subject to another three-year restraining order issued under nearly identical circumstances. This was error. *See, e.g.*, *Hooks ex rel. NLRB v. Nexstar Broad., Inc.*, 54 F.4th 1101, 1113 (9th Cir. 2022); *Fed. Election Comm'n v. Wisc. Right to Life, Inc.*, 551 U.S. 449, 462-63 (2007). What's more, the underlying case involves three exceptionally important issues, including (1) the correct application of the often-misunderstood *Rooker-Feldman* doctrine, (2) when federal courts must abstain under *Younger*, and (3) whether section 527.6's firearm restriction violates the Second Amendment.

In the district court and on appeal, procedural doctrines have prevented a critical Second Amendment issue from being resolved. The district court misapplied *Rooker-Feldman* to kick the Wallingfords out of court with prejudice. Then, a divided panel deemed the case moot despite it being live for seven months after submission and despite it qualifying under the exception for cases "capable of repetition yet evading review." Both rulings were incorrect, and the merits issues are too important to pass over. This Court should grant rehearing.

## STATEMENT OF THE CASE

## I.   CALIFORNIA'S CIVIL HARASSMENT ORDER REGIME

California law allows any person who has suffered "harassment" to petition the state court for an order prohibiting the persons causing the "harassment" from continuing to do so. Cal. Civ. Proc. Code § 527.6(a), (g), (i). "If the judge finds by clear and convincing evidence that unlawful harassment exists, an order *shall* issue

prohibiting the harassment." *Id.* § 527.6(i) (emphasis added). "Harassment" includes "a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." *Id.* § 527.6(b)(3). In short, there need not be any finding that the person subject to the order engaged in an act of violence or even made a threat of such. They need only have "annoyed" the applicant, reasonably causing her emotional distress. *Id.*

California bars any person subject to a section 527.6 order from acquiring or possessing firearms or ammunition. Cal. Penal Code §§ 27500, 27540, 29825, 30305-30306, 30370. Courts must thus order persons subject to such orders to relinquish any firearms they possess. Cal. Civ. Proc. Code § 527.9(b),(c); Cal. Penal Code § 29830(a),(b).

## II.    HISTORY OF THE DISPUTE

The Wallingfords have lived at their Huntington Beach home for over 50 years. 4-ER-651, 659, 667, 673. In 2013, Nguyen moved in next-door. 4-ER-651. She soon began complaining about the Wallingfords' decades-old Melaleuca tree. 4-ER-651, 659, 673. At first, the Wallingfords tried to appease their neighbor by regularly trimming the tree. 2-ER-73-74. But these efforts proved futile; Nguyen ultimately demanded the tree's removal, and the Wallingfords refused. 4-ER 651, 673. Nguyen soon launched two unsuccessful civil actions against the elderly couple and filed a restraining order petition against Mr. Wallingford, falsely claiming that he assaulted her. 2-ER-73-84; 4-ER-651-52, 660, 673-74. The state court immediately issued a temporary restraining order against Mr. Wallingford under section 527.6. 2-ER-52-62. That order included the required firearms restriction, so Mr. Wallingford transferred

3

his firearms to a licensed firearms retailer. 4-ER-656.

Ms. Wallingford soon had security cameras installed on their property to record Nguyen's aggressive behavior toward them and to provide proof in case she made new false allegations of violence. 2-ER-74; 4-ER-652, 660, 674. Before the hearing on Nguyen's petition, the security cameras captured images of Nguyen making rude gestures, damaging the Wallingfords' property, and making verbal threats. 2-ER-86-92; 4-ER-652, 660, 674.

The state court heard Nguyen's petition against Mr. Wallingford on August 17, 2018, and held there was no "clear and convincing" evidence that Mr. Wallingford had harassed Nguyen—let alone assaulted her. 2-ER-162-63; 4-ER-660-61, 674. The court denied the petition and dissolved the temporary order. 2-ER-162-63; 4-ER-660-61, 674. Unfortunately, Nguyen's abusive behavior continued.

In January 2019, the Wallingfords' security camera recorded Nguyen yelling racially charged death threats from her yard. 4-ER-652, 661. In May 2019, the Wallingfords' cameras recorded her pouring bleach on the Wallingford's Melaleuca, damaging their property, and making rude gestures. 2-ER-182-83; 4-ER-652-53, 661-62, 674-75. And a least three times, Nguyen made throat-slitting gestures while looking directly at the Wallingfords' security cameras. 2-ER-183; 4-ER-653, 661, 675. Alarmed by the resurgence of Nguyen's increasingly threatening behavior, Ms. Wallingford filed a restraining order petition, seeking protection for her and her husband. 2-ER-176-183; 4-ER-653, 662, 674. As is customary, the court issued a temporary restraining order pending a formal hearing. 4-ER-653, 662, 674.

4

On September 5, 2019, Nguyen filed two new petitions against the Wallingfords. 2-ER-22-63; 4-ER-653, 662, 675. In support of one petition, she alleged that the Wallingfords' cameras intruded upon her privacy. 2-ER-23-24; 4-ER-653-54, 662, 675. In support of the second petition against Mr. Wallingford, she recycled the same false assault allegations she made in August 2018. 2-ER-23-24; 4-ER-653, 662, 675. Still, the court granted a temporary restraining order against Mr. Wallingford pending a formal hearing. 2-ER-52-63; 4-ER-662, 675. Mr. Wallingford again had to transfer his firearms to a licensed firearms dealer for storage. 4-ER-662, 675.

A full hearing was held in October 2019. 4-ER-437, 654, 662-63, 662-63. Ms. Wallingford testified that her cameras continued to capture Nguyen engaging in threatening behavior. 4-ER-488-99, 520-21, 654, 676. She also testified to the steps she took to position her cameras to avoid infringing Nguyen's privacy. 4-ER-499-506, 654, 0676. The state court granted the Wallingfords' petitions, holding that Ms. Wallingford had established by "clear and convincing evidence" that Nguyen was "harassing" her without a legitimate purpose. 4-ER-640-41, 654, 663, 676-77. The court also held that the Wallingfords' cameras *at first* constituted harassment under section 527.6, 4-ER-640-41, 0670, but acknowledged that the cameras had "been repositioned …, which the court finds acceptable." 4-ER-640, 0663, 668. Even so, the court granted Nguyen's petitions against the Wallingfords—despite no other findings of harassing behavior or that either poses a risk of danger. 4-ER-640-41, 654, 673, 677.

The restraining orders took effect on November 1, 2019, and they were set to expire on November 1, 2022. 4-ER-641. In November 2022, Nguyen moved to renew

the orders against the Wallingfords without any allegation of further harassment (as state law allows (Cal. Code. Civ. Proc. § 527.6(j)(1)). Dkt.No. 36 at 5. The state court continued the hearing to January 17, 2023, and summarily extended the restraining order till that time. *Id.* At the January 2023 hearing, the court denied Nguyen's request, and the orders expired. Dissent.Op.36.

## III. PROCEDURAL BACKGROUND

The Wallingfords sued in federal court in August 2021, alleging that the automatic firearm restriction violates the Second and Fourteenth Amendments. 4-ER-677-81. The State moved to dismiss the complaint under rule 12(b)(1), arguing that *Rooker-Feldman* bars the Wallingfords' federal claims or that *Younger* abstention applies. Defs.' Mot. Dismiss at 6-11, *Wallingford v. Bonta*, No. 21-1412 (C.D. Cal. Oct. 4, 2021), ECF No. 16-1. Construing the Wallingfords' claim as an attack on the state court's restraining orders against them, the district court granted the State's motion to dismiss with prejudice pursuant to *Rooker-Feldman*. 1-ER-4-5. It did not address the State's *Younger* defense. 1-ER-4-5.

The Wallingfords appealed. 4-ER-682-84. A three-judge panel of this Court heard arguments on June 15, 2022. But, in late November 2022, the panel requested supplemental briefing addressing whether the restraining orders against Appellants had expired and, if they had, whether this appeal is moot. The parties completed briefing in January 2023. And on September 21, 2023, a divided three-judge panel dismissed the appeal as moot. Judge Collins dissented.

# REASONS FOR REHEARING

The panel majority never reached the merits of this appeal. Instead, it resolved it on mootness grounds because the restraining orders against the Wallingfords expired in January 2023. Op.7. In so holding, the majority misapplied binding precedents governing issues that are "capable of repetition yet evading review." And it did so in a case raising critical constitutional law questions to the detriment of the Wallingfords' fundamental liberty interests. *See United States v. Claiborne*, 781 F.2d 1325 (9th Cir. 1985) ("We must uphold our responsibility to remedy violations of constitutional rights, and I dissent from the court's refusal to hear this case en banc.") (Ferguson, J., dissenting from order denying en banc review). Rehearing is necessary to review the panel's decision to ensure uniformity of this Circuit's application of the mootness doctrine and to allow this Court to address the exceptionally important issues underlying this appeal.

## I. THE PANEL'S FLAWED MOOTNESS ANALYSIS CONFLICTS WITH SUPREME COURT AND CIRCUIT PRECEDENT

A case may become moot if "(1) it can be said with assurance that 'there is no reasonable expectation . . .' that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Lindquist v. Idaho State Bd. of Corr.*, 776 F.2d 851, 854 (9th Cir. 1985) (quoting *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). In short, a case is not moot unless "it [is] absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Conc. Phosphate*, 393 U.S. at 203. This is a "heavy burden" that "lies with the party asserting mootness." *Laidlaw*, 528 U.S. at 189.

Because mootness requires a showing that the challenged conduct "could not reasonably be expected to recur," this Court has long held that courts may decide cases that might otherwise be moot where the challenged conduct constitutes a wrong "capable of repetition yet evading review." *Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505, 1509 (9th Cir. 1994). To come within that exception, there must be a "reasonable expectation that the same complaining party will be subject to the same action again," and "the challenged action is … too short to be fully litigated prior to cessation or expiration." *Id.* Here, both elements are undeniably met. But rather than hold the State to its clearly established burden, *see Friends of the Earth*, 528 U.S. at 189, the majority turned the entire analysis on its head, requiring the *Wallingfords* to show with near certainty that they would be subject to a nearly identical restraining order.

## A. It Is Reasonable to Expect That the Wallingfords Will be Subject to the Challenged Action in the Future

Under the first prong of the "capable of repetition" exception, there must be "more than a 'mere physical or theoretical possibility,'" that the complaining party will again be subject to the same or materially similar action. *Dep't of Fish & Game v. Fed. Subsistence Bd.*, 62 F.4th 1177, 1182 (9th Cir. 2023) (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)). This does not mean there must be "a demonstrated probability that the dispute will recur." *Hooks*, 54 F.4th at 1113. Rather, there need only be a "reasonable expectation that the same complaining party will be subject to the same action again." *Native Vill. of Noatak*, 38 F.3d at 1509. The Wallingfords complain that, under the Challenged Statutes, "they were subjected to a statutorily automatic prohibition on firearms possession without any predicate finding that they had 'posed

a danger to any person or the public.'" Dissent.Op.38. Given the acrimonious history between Nguyen and the Wallingfords and the fact that California courts regularly issue temporary orders subject to the automatic firearms restriction under section 527.6, the expectation that the Wallingfords will suffer the very same injury is more than reasonable. It is likely.

Indeed, as long as Nguyen lives next door, the Wallingfords can reasonably expect that she will obtain (at least) a temporary restraining order against them. Even the majority did not "seriously dispute that it may be reasonably expected that Nguyen will again *file* another petition." Dissent.Op.34. For good reason. The Wallingfords' history with their neighbor more than bears this out. As the dissent observed, "Nguyen has successfully sought and obtained no less than three *temporary* state-court restraining orders against the Wallingfords under § 527.6, which automatically subjected them to a criminal prohibition on firearms possession." Dissent.Op.34.

Nguyen's first petition did not result in a permanent restraining order because the state court found it was based on false allegations that Mr. Wallingford assaulted her. 2-ER-73-74; 4-ER-651-52, 660, 673-74. But the very day Nguyen filed her petition, the court *did* issue a temporary order—with automatic firearms restriction— pending a formal hearing. 2-ER-52-6. After her first failed bid, Nguyen filed two new petitions against the Wallingfords, including one petition that recycled her earlier false assault allegations. 2-ER-22-63; 4-ER-653, 662, 675. In response to that filing, the court again immediately issued a temporary order until a hearing could be held, and the permanent order issued. 2-ER-52-63; 4-ER-662, 675. Then, with the permanent orders lapsing in November 2022, Nguyen moved to renew them without alleging

further harassment. Dkt.No. 46 at 5. And *again*, the court summarily granted temporary relief, extending the orders—and the firearms restriction—for months. *Id.* at 16-17. While the extension was denied, at the January 2023 hearing on that petition, Nguyen promised that the Wallingfords would not "get away with this." *Id.* at 10.

Based on all this, the dissent reasoned that Nguyen's determination to haul the Wallingfords into the restraining-order court leads to a reasonable expectation that she will one day request yet another (baseless) order of protection. Dissent.Op.36. The dissent also correctly noted that her success in exploiting the Challenged Statutes to "obtain[] an immediate temporary order *by re-asserting claims that had already been rejected on the merits*" speaks for itself. Dissent.Op.37. Indeed, the record clearly establishes that "California courts perfunctorily issue temporary orders on the same day that they are requested with only minimal scrutiny and without findings that would be sufficient to support an automatic deprivation of Second Amendment rights." Dissent.Op.37. All this supports the Wallingfords' reasonable fear that they will again be subject to—at least—a temporary restraining order and the automatic firearms restriction that comes with it.

Even so, the panel characterized the Wallingfords' argument as not much more than the assertion that "nothing bars Nguyen" from filing another petition. Op.12-13. The majority reasoned that the Wallingfords' concern is "not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists." Op.13 (quoting *Brach v. Newsom*, 38 F.4th 6, 14 (9th Cir. 2022) (en banc)). In support of its holding, the majority cited the fact that the state court denied the petition to extend the last order and that Nguyen has not filed another petition in the months since then.

Op.34 n.3. It would thus be speculation, according to the majority, to believe the Wallingfords will be subject to even a temporary order in the future—apparently because the courts should "presume that the California courts will only grant temporary restraining orders under [section] 527.6 after first making findings that would support what the Wallingfords contend the Second Amendment requires." Dissent.Op.37 (citing Op.13 n.8).

But the record rebuts any such presumption. Not one of the temporary orders issued against the Wallingfords was based on a finding that they posed a danger to Nguyen (or anyone). Even disregarding the first two orders, which were at least grounded in *allegations* of violence, 2-ER-27, the November 2022 extension was granted even though Nguyen made no new claims, and the underlying order was based on the security cameras, not any finding of dangerousness, Dkt.No. 41 at 9. What's more, the panel's faith in Nguyen's seven-month forbearance in seeking a new order is not well deserved. The record shows that she has instigated an ongoing and recurring dispute with the Wallingfords for years. That dispute has not abated, and there is no reasonable grounds to expect Nguyen to just take her ball and go home.

Further, any future restraining order issued against the Wallingfords is likely to be "materially similar" to past orders, thus constituting the same action for purposes of the "capable of repetition" exception. *Wisc. Right to Life*, 551 U.S. at 462-63. The basic requirement is that "the deprivation of … rights that gave rise to" plaintiffs' suit should be roughly the same. *Id.* This "must be judged from the perspective of the 'legal issue' that is the gravamen of the challenge," not the specific facts that sparked it. Dissent.Op.37 (quoting *Hooks*, 54 F.4th at 1114). Indeed, it need not be likely that

all the legally relevant facts that gave rise to the claim will be repeated, or else the exception would be "unavailable for virtually all as-applied challenges." *Wisc. Right to Life*, 551 U.S. at 463.

As even the majority recognized, the gravamen of the Wallingfords' complaint "is that they were subjected to a statutorily automatic prohibition on firearms possession without any predicate finding that they had posed a danger to any person or the public." Op.15 (quoting Dissent.Op.38). "Because the challenged set of statutes that criminally prohibit firearms possession is equally triggered by a temporary order under § 527.6 as by a long-term order," Dissent.Op.38, and because courts routinely grant temporary orders with virtually zero evidentiary showing, "the Wallingfords have adequately shown that there is a reasonable expectation that they will be again subject to the challenged statutory prohibition on firearms possession," Dissent.Op.37-38.

Still, the majority decision went the other way. Op.15. The panel's flawed conclusion on this point is surprising given that it seemed to grasp the essence of the complaint. Although its reasoning is hard to parse, the panel seems to have focused narrowly on the specific language of the complaint. The majority observed that "the injury specified in the Complaint is that the state court made no finding as to the Wallingfords' dangerousness or lawbreaking, not that the state court was *not required to make any* findings as to dangerousness or lawbreaking." "Because a new restraining order could be based on a finding that the Wallingfords posed a danger," "the mere possibility of a new restraining order is not sufficient to constitute a renewed threat of the 'same action.'" Op.17. As the dissent explained, the "capable of repetition"

12

"exception is not defeated simply by showing, as the majority has done, that the reasonably expected recurrence of a violation would arise under 'a different constellation of facts.'" Dissent.Op.39 (quoting *Hooks*, 54 F.4th at 1114). "What matters is whether there is a reasonable expectation that the plaintiff will again be subject to the challenged restrictions." Dissent.Op.39. That reasonable expectation exists here.

The majority's reasoning ignores that the Wallingfords have—at least three times—been subject to temporary restraining orders issued without any evidentiary finding of dangerousness. And it refuses to accept that this is a common-enough practice that is reasonably likely to recur. *See* Dissenting.Op.37 (citing Op.13 n.8). It also ignores the Wallingfords' clarification at oral argument that their harm did, in fact, stem from the statute not requiring a finding of dangerousness and their requests to reverse the dismissal with prejudice so they might amend to add a facial challenge on those grounds. A.O.B. 12, 31. In any event, whether the Wallingfords had complained that no finding of dangerousness was made or that the Challenged Statutes simply do not require such a finding (they complained of both), the panel's unduly narrow interpretation of the complaint was uncharitable—to say the least. The panel accused the dissent of "read[ing] the Complaint broadly," Op.15, but it was the panel that read it far too narrowly.

### B. Restraining Orders Issued Under the Challenged Statutes Are Regularly Too Brief To Be Fully Litigated Before They Expire

Given that appeals take years and that, under the Challenged Statutes, the state court has broad discretion to set the period of restraint, "it is not reasonably

13

foreseeable that plaintiffs can obtain full review before their case becomes moot." *Doe v. Reed*, 697 F.3d 1235, 1240 (9th Cir. 2012) (internal quotation omitted). Separate from the three-year period of restraint that was the panel's exclusive focus, section 527.6 also denies the Second Amendment rights of restrained parties for fleeting periods under temporary orders issued before hearing. Dissent.Op.38. Because a restraining order of any length—*including a temporary order*—carries a total rights restriction, Cal. Code Civ. Proc. § 527.6(u)(1), and because state courts regularly "issue temporary orders on the same day that they are requested with only minimal scrutiny," Dissent.Op.37, the Challenged Statutes consistently produce the sort of brief rights violation guaranteed to evade federal court review. Even "the majority does not dispute[] that the duration of a *temporary* restraining order under § 527.6 is 'too short to allow full litigation.'" Dissent.Op.38 (quoting *Native Vill. of Nuiqsut v. Bur. of Land Mgmt.*, 9 F.4th 1201, 1209 (9th Cir. 2021)).

But even assuming the state court would deny a future request for a temporary order, the history of this case shows why three years is not enough time to obtain "full review" of the constitutional claims at issue. This case was filed over two years ago but has not progressed beyond preliminary (but complex) procedural disputes that remain unresolved to this day. If the panel had resolved the procedural issues on appeal, the result would have been remand to litigate the underlying constitutional claims (and any appeal) or petition for en banc or Supreme Court review (and *then* remand and appeal). Dissent.Op.40. Either course would take this case far beyond the three-year mark. So, although the Wallingfords *technically* "had three years *and* two months to fully litigate the constitutionality of the firearms ban they were subject to,"

Op.10, the indisputable fact is that they never got to "litigate the constitutionality" of anything—and they never would have.

Even so, the majority held that three years is more than ample time to decide a case of this nature. Though the majority acknowledged there is no "bright-line rule," it effectively treated two years as the cut-off. Op.10. And it speculated that "if Ms. Nguyen were to receive a similar order in the future and the Wallingfords were to promptly sue, such a proceeding would not evade our review." Op.11. But even if the Wallingfords had filed suit the day their claims became justiciable, *at most*, only the *Rooker-Feldman* issue would have been resolved. Dissent.Op.39-40. The underlying constitutional law questions would have remained unresolved. And "[g]iven their complexity, the type of claims at issue here are not ones that, as a general matter, we can confidently conclude are likely to be fully resolved, including appeals and Supreme Court review, within three years." Dissent.Op.40.

## II. THIS APPEAL INVOLVES IMPORTANT PROCEDURAL ISSUES THAT THIS COURT SHOULD ALSO DECIDE

The panel majority dismissed the Wallingfords' appeal entirely on mootness grounds and never discussed either the district court's dismissal under *Rooker-Feldman* or the State's *Younger* abstention arguments. Should this Court rehear this case to consider whether the panel erred in dismissing this matter as moot, the Court should also decide whether the district court wrongly dismissed this matter under *Rooker-Feldman*. And because a reviewing court may uphold a dismissal on grounds that were not expressly decided by the district court, *Aronson v. Resol. Trust Corp.*, 38 F.3d 1110, 1114 (9th Cir. 1994), the Court should also decide whether *Younger* requires

abstention. These are complex doctrines that district courts often misapply, making it exceptionally important that this Court clarify these issues so that litigants do not continue to see their viable federal claims unjustifiably booted from the courtroom. Further, if the Court reconsiders the mootness issue, it will conserve the resources of both the parties and the courts to decide the underlying procedural issues now.

## CONCLUSION

For these reasons, this Court should grant the Wallingfords' petition for panel rehearing or rehearing en banc.

Dated:  November 20, 2023                    Respectfully submitted,

                                            MICHEL & ASSOCIATES, P.C.

                                            s/ Anna M. Barvir
                                            _____
                                            Anna M. Barvir
                                            *Attorneys for Plaintiffs-Appellants*

16

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** | 21-56292

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for

panel rehearing/petition for rehearing en banc/response to petition is (*select one*):

○ Prepared in a format, typeface, and type style that complies with Fed. R. App.
P. 32(a)(4)-(6) and **contains the following number of words**: | 4,200 |.

*(Petitions and responses must not exceed 4,200 words)*

**OR**

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | s/Anna M. Barvir | **Date** | November 20, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 11** *Rev. 12/01/2021*

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2023, an electronic PDF of

APPELLANTS' PETITION FOR PANEL REHEARING OR REHEARING EN

BANC was uploaded to the Court's CM/ECF system, which will automatically

generate and send by electronic mail a Notice of Docket Activity to all registered

attorneys participating in the case. Such notice constitutes service on those registered

attorneys.

Dated:  November 20, 2023                    Respectfully submitted,

                                             MICHEL & ASSOCIATES, P.C.

                                             s/ Anna M. Barvir
                                             _____
                                             Anna M. Barvir
                                             *Attorneys for Plaintiffs-Appellants*